UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUINCY PITTMAN,

                            Plaintiff,

v.                                                          1:22-CV-1372
                                                            (GTS/ML)
JOANNA JOHNSON, Supervisor B;
LAWRENCE T. DAHLLEE, Lawyer;
CHILD FAMILY SERVICE, Over Seer;
and MARLE W. BLANCHFIELD, Judge,

                            Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

QUINCY PITTMAN
  Plaintiff, *Pro Se*
1471 Glenwood Boulevard
Schenectady, New York 12308

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent a *pro se* complaint in the above captioned action together with an application to proceed *in forma pauperis*, filed by Quincy Pittman ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application, and recommend that Plaintiff's Complaint be dismissed in its entirety without prejudice but without leave to replead. (Dkt. Nos. 1, 2.)

## I.    BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his civil rights were violated by defendants Joanna Johnson, Lawrence T. Dahllee, Child Family Service, and Marle W. Blanchfield (collectively "Defendants"). (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that in October 2022, the mother of his child was found to have neglected their child. (Dkt. No. 1 at 3.) Plaintiff alleges that Defendant Johnson asked Plaintiff to take custody of his child but, at the time, he was unable to. (*Id*.) Plaintiff alleges his child was then placed in a home where Plaintiff was only permitted to text to determine how his child was doing and was not granted any visits. (*Id*. at 4.) Plaintiff alleges that his child was then placed in a second home and he was not permitted to contact his child at all. (*Id*.) Plaintiff alleges that he attempted to contact his child in the second home but did not receive a response. (*Id*.) Plaintiff alleges that his child was then moved to a third home. (*Id*.) Plaintiff alleges that he went to family court and Defendant Johnson lied to Defendant Blanchfield—who was presiding over the family court matter—stating that Plaintiff was doing something he was not supposed to on November 9 (of an unspecified year). (*Id*.) Plaintiff alleges that his rights as a father have been mistreated. (*Id*.)

Plaintiff does not appear to assert any causes of action. (*See generally* Dkt. No. 1.) As relief, Plaintiff requests that Defendants Johnson and Blanchfield "be taken off [his family court] case because they have been mistreating it since Oct[ober 20]22." (Dkt. No. 1 at 5.)

Plaintiff also filed an application to proceed *in forma pauperis*. (Dkt. No. 2.)

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,

---

[2]    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court

must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of

Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal

of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*,

15-CV-5017, 2018 WL 4185705, at \*5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review,

action challenging state court mortgage foreclosure judgment because the court lacked

jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005)

(citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d

Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint

for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter

jurisdiction.").

　　"In reviewing a complaint . . . the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v.

Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

　　Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .

. . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Claims Against Defendant Blanchfield

I recommend that Plaintiff's claims against Defendant Blanchfield be dismissed based on the doctrine of judicial immunity.  "Judicial immunity protects conduct taken as part of all judicial acts except those performed in the clear absence of jurisdiction." *Walker v. Family Ct. Judge Catherine Cholakis*, 19-CV-1288, 2020 WL 3503158, at *6 (N.D.N.Y. June 29, 2020) (Kahn, J.) (quotations and citations omitted).  Plaintiff's claims against Defendant Blanchfield stem from alleged actions taken in connection with the child neglect proceedings.  As a result, Plaintiff's claims against Defendant Blanchfield should be dismissed on this basis. *See Walker*, 2020 WL 3503158, at *7 (explaining that the defendant judge had "absolute judicial immunity for all judicial actions that occurred within her judicial capacity" of determining the proper custody for the plaintiff's children, and noting that immunity applies "even when the judge is accused of acting maliciously and corruptly" (citation omitted)).

### B.    Plaintiff's Claims Regarding the State Court Neglect Proceedings

Plaintiff seeks only injunctive relief in this matter relating to the state family court proceedings, which is barred by the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971).  "*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of

the federal constitutional claims." *Morpurgo v. Incorp. Vill. of Sag Harbor*, 327 F. App'x 284, 285 (2d Cir. 2009) (citation omitted).

As to the first condition, "*Younger* applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *Torres v. Gaines*, 130 F. Supp. 3d 630, 636-37 (D. Conn. 2015) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "Both the Supreme Court and the Second Circuit have observed that a 'state-initiated proceeding to gain custody of children allegedly abused by their parents' falls within the second category." *Torres*, 130 F. Supp. 3d at 636-37. (citing *Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015)). "If the federal action falls into one of these three categories, a Court may then consider . . . whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Turning to the additional conditions for application of the *Younger* abstention doctrine, it is well-settled that "a custody dispute . . . raises important state interests." *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *10 (N.D.N.Y. June 6, 2017) (Baxter, M.J.) (citation and quotations omitted), *report and recommendation adopted by*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *Reinhardt v. Commonwealth of Mass. Dep't of Soc. Servs.*, 715 F. Supp. 1253, 1256 (S.D.N.Y. 1989) (explaining that "there can be no doubt that a custody dispute that involves allegations of sexual abuse raises important state interests," and noting that "[q]uestions of family relations, especially when issues of custody and abuse are involved, are traditionally an area of state concern").

Put simply, Plaintiff appears to ask the Court to recuse Defendants Johnson and Blanchfield from the state family court neglect and custody proceedings because Plaintiff believes that he has been mistreated by them. (*See generally* Dkt. No. 1.) Plaintiff does not allege that he cannot vindicate his claims in state court. As a result, I recommend that his claims be dismissed. *See, e.g.*, *Curcio v. Grossman*, 22-CV-1648, 2022 WL 767167, at *7 (S.D.N.Y. Mar. 14, 2022) ("to the extent that Plaintiff asks this Court to intervene in [her pending state-court child-custody] . . . proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine"); *Walker v. Family Court Judge Catherine Cholakis*, 19-CV-1288, 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (Kahn, J.) (where the plaintiff challenged a temporary order in an ongoing child custody dispute, alleging that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid," finding application of *Younger* abstention barred the plaintiff's federal claims for injunctive relief); *Herbert v. Cattaraugus Cnty.*, 17-CV-248S, 2017 WL 5300009, at *4 (W.D.N.Y. Nov. 13, 2017) (applying *Younger* abstention to the plaintiff's claims arising from ongoing Family Court proceedings, and noting that "[s]everal courts in this Circuit have held that *Younger* abstention applies in similar circumstances").

As a result, I recommend that Plaintiff's claims for relief be dismissed without prejudice—and without leave to replead—because the Court lacks subject matter jurisdiction over the Complaint.[4]

---

[4]    The Court also notes that "[a]lthough a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal . . . department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F.

## V.    OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

---

Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  Thus, Defendant Child Family Service is not a proper party amenable to suit.

In the alternative to the reasons discussed *supra*, I recommend that any claims against Defendant Dahllee be dismissed for failure to state a claim upon which relief may be granted. Defendant Dahllee is listed in the Complaint as a defendant (Dkt. No. 1 at 2) but the body of the Complaint does not contain any factual allegations against him.  *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13, 2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the defendant's "name in the caption, but fails to again name or assert allegations against him."); *Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at *15 (N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994 WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims against two defendants who were listed as parties in the complaint and in the caption, but not elsewhere in the complaint).

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Here, leave to replead would be futile because this Court lacks subject matter jurisdiction

to review Plaintiff's claims.  As a result, I recommend that Plaintiff's claims be dismissed

without leave to replead.  *See Oliver v. Punter*, 22-CV-3580, 2022 WL 3228272, at *4 (E.D.N.Y.

Aug. 10, 2022) (holding that "leave to amend would be futile given that the domestic relations

exception divests this Court of subject matter jurisdiction."); *Henrich v. Fowler*, 20-CV-0021,

2022 WL 2816287, at *2 (W.D.N.Y. July 19, 2022) (dismissing without leave to amend the

plaintiff's claim seeking to revert a custody order to its prior terms, because any amendment

would be futile).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is

**GRANTED only for purposes of filing and any appeal unless the trial court certifies in**

**writing that the appeal is not taken in good faith**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT**

**WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) because the Court lacks

subject matter jurisdiction over the claims asserted therein; and it is further

---

[5]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: March 28 , 2023
Binghamton, New York

Miroslav Lovric
Miroslav Lovric
U.S. Magistrate Judge

---

[6]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 11 of 108

2018 WL 4185705
Only the Westlaw citation is currently available.
<u>For Online Publication Only</u>
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,
v.
LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**
On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**
**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 12 of 108

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🔖RPAPL § 1303 and 🔖§ 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior).

The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C. **The Instant Action**

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 🔖12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 13 of 108

under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to 🏳 Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." 🏳 Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." 🏳 Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. 🏳 Fed. R. Civ. P. 12(b)(1)

🏳 Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." 🏳 Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to 🏳 Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." 🏳 Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see 🏳 Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. 🏳 Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. 🏳 J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under 🏳 Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. 🏳 Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to 🏳 Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." 🏳 Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 🏳 Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing 🏳 Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. 🏳 Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. 🏳 Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under 🏳 Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 14 of 108

v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

## B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment);

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of

the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trankansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids— to overturn the New York Supreme Court judgment of foreclosure. See Trankansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly

discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*. [7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has

Talley v. LoanCare Servicing, Div. of FNP, Not Reported in Fed. Supp. (2018)

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 16 of 108

the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See

Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at

657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have

been, raised in the previous action. Swiatkowski, 745 F.

Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually

raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme

Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court.

See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a

state court foreclosure proceeding"): Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court.");

Swiatkowski, 745 F. Supp. at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings.");

Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by

certain courts as immune from *res judicata*."); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 17 of 108

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

judgment due to lack of standing based on fraud or "fraud in the inducement". (*See* Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc.

v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

## D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 18 of 108

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." 🔖 Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." 🔖 Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at \*5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See 🔖 Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also 🔖 Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at \*9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel. [9]

**E. Sanctions**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," 🔖 Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See 🔖 Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

**F. Leave to Amend**

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." 🔖 Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." 🔖 Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at \*5 (E.D.N.Y. Apr. 17, 2009).

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 19 of 108

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

### Footnotes

1    Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2    Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3    The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4    To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5    According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6    Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7    Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8    "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 20 of 108

an attack on a judgment" previously issued by the state court. ⚠ Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9     Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

---

**End of Document**            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 3503158
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha C. WALKER, Plaintiff,
v.
FAMILY COURT JUDGE CATHERINE
CHOLAKIS, et al., Defendants.

1:19-CV-1288 (LEK/CFH)
|
Signed 06/29/2020

**Attorneys and Law Firms**

Alisha C. Walker, Melrose, NY, pro se.

Denise P. Buckley, New York State Attorney General - Albany, Albany, NY, Mindy Ming-Huai Jeng, State of New York Unified Court System Office of Court Administration, New York, NY, for Defendant Family Court Judge Catherine Cholakis.

James P. Lagios, Rivkin Radler LLP, Albany, NY, for Defendant Joseph Drescher, Esq.

Matthew Foley, Esq., Troy, NY, pro se.

**MEMORANDUM-DECISION AND ORDER**

Lawrence E. Kahn, Senior U.S. District Judge

**I. INTRODUCTION**

*1 This action concerns alleged violations of pro se plaintiff Alisha C. Walker's First, Fifth, and Fourteenth Amendment rights. Dkt. No. 1 ("Complaint"). Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 against the Honorable Catherine Cholakis, a judge of the Family Court of New York, Rensselaer County ("Judge Cholakis"), and attorneys Joseph Drescher ("Drescher") and Matthew Foley ("Foley") (collectively, "Defendants"). Compl. ¶1. Plaintiff seeks damages of at least $1,000,000 against Defendants individually and collectively. Id. ¶¶ 49–52.

Before the Court are three motions to dismiss made pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6): one filed by Foley, Dkt. Nos. 10 ("Foley Motion to Dismiss"); 10-1 ("Foley Memorandum"); 10-24 ("Foley Affidavit");

one filed by Drescher, Dkt. Nos. 13 ("Drescher Motion to Dismiss"); 13-1 ("Drescher Memorandum"); and one filed by Judge Cholakis, Dkt. Nos. 15 ("Cholakis Motion to Dismiss"); 15-1 ("Cholakis Memorandum") (collectively, "Motions to Dismiss"). Plaintiff did not respond to any motion.

For the following reasons, the Court grants Defendants' Motions to Dismiss.

**II. BACKGROUND**

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). Plaintiff's claims stem from a pending custody action in Rensselaer County Family Court ("Family Court"). Plaintiff commenced the action in Family Court on November 15, 2018, against the father of her children, Luke Walker ("Walker") (who is represented by Drescher in the state court proceeding). Id. ¶ 4. Foley was appointed as an attorney for A.W. and T.W. ("Plaintiff's children") by Judge Kehn. Id. ¶ 5. The case was later transferred to Judge Cholakis, who issued orders on May 31, 2019 and August 19, 2019, granting temporary custody of Plaintiff's children to Walker. Id. ¶11. In response to this temporary custody ruling, Plaintiff brought this action against Defendants on October 18, 2019. Id. ¶ 2.

**A. Plaintiff's Factual Allegations and Claims**

Plaintiff alleges that Drescher and Foley conspired with Judge Cholakis to deprive her and her children of their civil and constitutional rights. Compl. ¶¶ 46–47. Judge Cholakis violated her children's due process rights. Id. ¶¶ 42, 45. Foley discriminated against Plaintiff on the basis of her Buddhist religion by informing the court the Plaintiff believed in karma and thus would not provide medical attention to the children. Id. ¶ 17.

Moreover, in the course of the proceeding, Foley and Drescher made "false and misleading statements with no evidentiary support" and "belittled [Plaintiff's] character." Id. ¶¶ 30–31, 37. Drescher and Foley engaged in deceit, "character assassination and perjury." Id. ¶ 27.

Judge Cholakis demonstrated a lack of judicial competence, as she "made numerous improper pejorative and discriminatory statements," did not read the psychological reports verifying Plaintiff's parental fitness, "appeared not to

know the case details," "unduly and unfairly relied on the spin and deceit and character assassination and perjury" made by Drescher and Foley, and exhibited "personal animus and bias" against Plaintiff. Id. ¶¶ 13–41.

**\*2** The temporary custody orders are "suspect, gained under lies and false pretenses, and should therefore be considered invalid." Id. ¶ 40.

As a result of improper conduct by Defendants, Plaintiff has been injured and suffered harm, worry, anxiety, sleeplessness, and a loss of protected family and liberty rights. Id. ¶ 48. Defendants are liable to her in an amount no less than $1,000,000, separately and collectively. Id. ¶¶ 45–48.

The Court construes the following claims: (1) a Fourteenth Amendment equal protection claim under 🔖 § 1983 on behalf of Plaintiff's minor children, against Drescher and Foley; (2) a Fourteenth Amendment due-process claim under 🔖 § 1983 on behalf of Plaintiff's minor children, against Judge Cholakis; (3) a Fourteenth Amendment "equal protection" claim and due-process claim under 🔖 § 1983 and 🔖 § 1985 against Judge Cholakis, Drescher, and Foley; (4) defamation claims against Foley and Drescher; (5) a claim against Judge Cholakis based on her lack of judicial competence; and (6) a claim for declaratory relief, seeking a declaration that the temporary custody order imposed by Judge Cholakis is invalid.

### III. LEGAL STANDARD

"Pursuant to [ 🔖 Rule] 12(b)(1), a party may, prior to serving a responsive pleading, move to dismiss a complaint on the ground the Court lacks subject matter jurisdiction. When a federal court lacks the statutory or constitutional power to adjudicate a case, it must be dismissed irrespective of its merits." McCluskey v. Town of E. Hampton, No. 13-CV-1248, 2014 WL 3921363, at \*2 (E.D.N.Y. Aug. 7, 2014) (citing 🔖 Makarova, 201 F.3d at 113). Thus, "[w]hen defendants move for dismissal on a number of grounds, the 'court should consider the 🔖 Rule 12(b)(1) challenge first since it must dismiss the complaint for lack of subject matter jurisdiction, and the accompanying defenses and objections become moot and do not need to be determined.' " Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132 (S.D.N.Y. 2002) (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

Plaintiff bears the burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. Id.

The Court recognizes that pro se plaintiffs enjoy a more liberal pleading standard. See 🔖 Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "This is particularly so when the pro se plaintiff alleges that her civil rights have been violated." 🔖 Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). But pro se plaintiffs must still "comport with the procedural and substantive rules of law." Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at \*3 (E.D.N.Y. Mar. 4, 2008). To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." 🔖 Bell Atl. Corp. v Twombly, 550 U.S. 544, 545 (2007).

### IV. DISCUSSION

**\*3** The Court grants the Defendants' Motion to Dismiss because there is a lack of subject matter jurisdiction, Plaintiff cannot assert claims on behalf of her minor children, and Defendants are protected by various forms of immunity.

#### A. The Court Lacks Subject Matter Jurisdiction

Drescher and Foley move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and the Younger Abstention doctrine. Foley Mem. at 1, 9; Drescher Mem. at 8, 10. All Defendants move to dismiss for lack of subject matter jurisdiction under the Domestic Relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. The Court analyzes each doctrine in turn.

#### 1. Rooker-Feldman Doctrine

Defendants Foley and Drescher argue that Plaintiff's claims must be dismissed pursuant to the Rooker-Feldman doctrine. Foley Mem. at 1; Drescher Mem. at 8. This doctrine "pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it." 🔖 Vossbrinck v. Accredited HomeLenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014). The Rooker-Feldman doctrine bars "federal courts

from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Sykes v Mel S. Harris and Assoc. LLC, 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

Accordingly, the Rooker Feldman doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment. Hoblock v. Albany County. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The first and second requirements are "loosely termed" procedural, while the third and fourth requirements are substantive. Id.

The Rooker-Feldman doctrine does not bar jurisdiction in this action because the Plaintiff's claims do not meet the first requirement: Plaintiff did not lose in state court. The Rooker-Feldman doctrine does not apply when the state court had not entered a final custody order because the "outcome of the state action is unclear" and the "court proceedings never reached a final outcome that would be appealable in state court". Krowicki v. Sayemour, No. 16-CV-1186, 2016 WL 9227665, at *5 (N.D.N.Y. Oct. 5, 2016) (citing Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009), report and recommendation adopted by No. 16-CV-1186, 2017 WL 2804945 (N.D.N.Y. June 28, 2017)). Plaintiff commenced this action due to a loss in temporary custody of her children pursuant to a court order. Compl. ¶ 10. A final custody order to remove her children has not been issued. Id. ¶ 11. Given these circumstances, Plaintiff has not "lost" in state court. Green, 585 F.3d at 102. Therefore, the Court finds that Rooker-Feldman does not bar Plaintiff's claims.

### 2. Younger Abstention

Drescher and Foley argue that Plaintiff's claims are also barred by the doctrine of Younger abstention. Foley Mem. at 9; Drescher Mem. at 10. There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v Garden State Bar

Ass'n, 457 US 423, 431 (1982). The Younger abstention doctrine "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gains, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing Younger v. Harris, 401 U.S. 37, 43–44 (1971)). "[Younger] abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Morpurgo v Inc. Vil. of Sag Harbor, 327 F. Appx. 284, 285 (2d Cir. 2009) (quoting Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)).

*4 The Court must abstain from exercising jurisdiction over the present case. This suit undoubtedly "raises important state interests," because the Plaintiff has challenged a temporary order in an ongoing child custody dispute. Graham v N.Y. Ctr. for Interpersonal Dev., No. 15-CV-459, 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015) (quoting Reinhardt v. Com. of Mass. Dep't of Social Servs., 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989)). Additionally, "[Plaintiff] is able to raise any potential constitutional claims in the state court system." Graham, 2015 WL 1120120, at *3.[1] Plaintiff stated that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid." Compl. ¶40. Thus, in addition to seeking monetary damages, Plaintiff is seeking declaratory relief. Younger abstention effectively bars a plaintiff's claims for declaratory relief. See Morpurgo, 327 F. Appx. at 285–86 (holding that Younger barred plaintiff's claims for injunctive and declaratory relief). Therefore, Plaintiff's claims for declaratory relief are barred by Younger.

Conversely, the Second Circuit "[has] held that abstention and dismissal are inappropriate when [monetary] damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief." Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000). In Morpurgo, for instance, the Court abstained from exercising jurisdiction over the plaintiff's claims for injunctive relief pursuant to Younger but did not bar the plaintiff's claims for monetary relief. 327 Fed. App'x. at 286. Likewise, Plaintiff's claims for monetary relief are not barred by Younger.

Pursuant to Younger abstention, the Court is barred from exercising subject matter jurisdiction over Plaintiff's claim for declaratory relief. Although Younger does not bar Plaintiff's claims for monetary relief, as discussed above, all of Plaintiff's claims seeking monetary relief are dismissed for a lack of subject matter jurisdiction under the domestic relations exception.

### 3. Domestic Relations Exception

Defendants argue that Plaintiff's claims are barred by the domestic relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. It is well-settled that federal courts generally do not have jurisdiction over domestic relations matters, which include divorce, child custody, child support, and alimony. Marshall v. Marshall, 547 U.S. 293, 294–295 (2006). This policy exception exists because the states have developed competence and expertise in adjudicating marital and custody disputes, a skill that the federal courts traditionally lack. See Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Claims that: (1) attempt to "rewrit[e] a domestic dispute as a tort claim for monetary damages," Schottel v. Kutyba, No. 06-1577-CV, 2009 WL 230106, at *6 (2d Cir. Feb. 2, 2009); or (2) allege constitutional violations but whose injuries "stem directly from the disputed family court decision," Amato v. McGinty, No. 17-CV-593, 2017 WL 4083575, at *5 (N.D.N.Y. Sep. 15, 2017), will be barred under the domestic relations exception.

Here, Plaintiff's claims fail because they stem directly from a child custody decision. Plaintiff commenced a civil rights action and has alleged that the actions and decisions of Judge Cholakis, Foley, and Drescher were unconstitutional. Compl. ¶¶ 45–48. Although she is not directly seeking a rejection of state judgment in her request for relief, the "crux of the argument" arises out of the temporary custody order because the Court would need to "re-examine and reinterpret" the state court order and evidence surrounding the order to effectively address her constitutional claims. Amato, 2017 WL 4083575, at *5; see also Pappas v. Zimmerman, No. 13-CV-4883, 2014 WL 3890149, at *4 (E.D.N.Y. Aug. 6, 2014) (holding that the domestic relations exception barred the plaintiff's claims because she raised constitutional issues that invited the federal court to "re-examine and reinterpret" state court divorce proceedings).

*5 In Amato, although plaintiffs alleged that the "order and processes" of the family court were unconstitutional, the domestic relations exception applied because plaintiff's injuries "stem[med] directly" from the disputed family court custody decision. 2017 WL 4083575, at *5. Likewise, Plaintiff's claims are barred under the domestic relations doctrine, because she invited the Court to re-examine and reinterpret a temporary custody order made in Family Court, and her injuries stem directly from this custody decision.

Additionally, to obtain a review of the state court decision, Plaintiff has rewritten a domestic dispute as a tort claim for monetary damages. This Court recently clarified that state courts are better suited to adjudicate tort claims that "begin and end in a domestic dispute." Dodd v. O'Sullivan, 19-CV-560, 2019 WL 2191749, at *4 (N.D.N.Y. May 21, 2019) (quoting Schottel, 2009 WL 23106, at *1), report and recommendation adopted by 519-CV-560, 2020 WL 204253 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.). Therefore, pursuant to the domestic relations exception, the Court dismisses Plaintiff's claims for monetary relief for lack of subject matter jurisdiction.

### B. Plaintiff Cannot Assert Claims on Behalf of Her Minor Children

Defendants move to dismiss Plaintiff's claims made on behalf of her minor children. Foley Mem. at 8; Drescher Mem. at 9; Cholakis Mem. at 8. "Federal Rule of Civil Procedure 17(c)(1)(A) permits a guardian to bring suit on behalf of a minor." Hagans v Nassau County Dept. of Social Services, 18-CV-1917, 2020 WL 1550577, at *4 (E.D.N.Y. Mar. 31, 2020). However, it is well established that a pro se plaintiff lacks the authority to represent anyone other than herself in a court action, including her child. Cheung v. Youth Orchestra Found of Buffalo Inc., 906 F.2d 59, 61 (2d Cir. 1990); LeClair v. Vinson, 19-CV-28, 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), report and recommendation adopted by 19-CV-28, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). This restriction exists because "the choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions." Cheung, 906 F.3d at 61 (citation omitted).

Plaintiff purports to represent her minor children in this action. Compl. ¶¶ 42, 45–48. Accordingly, Plaintiff's claims alleging constitutional violations of her children's rights should be dismissed.

**C. Defendants Are Entitled to Immunity**

Defendants assert that Plaintiff's claims should be dismissed under 12(b)(6), because even if the case had proper subject matter jurisdiction, Plaintiff fails to state a claim upon which relief can be granted, as Defendants are protected by quasi-judicial immunity, absolute immunity, and sovereign immunity.

### 1. Quasi-Judicial Immunity

Foley argues that as an appointed attorney, his actions are protected by quasi-judicial immunity. Foley Mem. at 6. "Law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court." Amato, 2017 WL 4083575, at *3. Quasi-judicial immunity is absolute and protects court-appointed guardians from civil liability. Lewittes v. Lobis, 4-CV-155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) aff'd., 164 F. Appx, 97 (2d Cir. 2006). Foley was appointed by Judge Kehn to represent Plaintiff's children. Thus, Foley, who is being sued for conduct he engaged in when representing Plaintiff's children, is protected from suit under quasi-judicial immunity.

### 2. Absolute Immunity

**\*6** Drescher argues that he is entitled to absolute immunity from defamation claims for all statements made during the family court proceedings. Drescher Mem. at 11–12. Attorneys have absolute immunity from liability for defamation "when such words and writings [made during a court proceeding] are material and pertinent to the questions involved." Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (quoting Youmans v. Smith, 153 N.Y. 214, 265 (1897)). This immunity allows an attorney to "speak freely to zealously represent their clients without fear of harassment or financial hazard." Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 209 (1983). When there is an absolute privilege, the defendant has immunity from liability regardless of motive. Id.

Plaintiff alleges that Foley and Drescher conspired with Judge Cholakis to deprive her of her constitutional and civil rights. Compl. ¶ 10. Plaintiff further alleges that Drescher and Foley gave "false and misleading statements" to Judge Cholakis that were "full of innuendo and not backed up by any factual evidence." Id. ¶ 13. Plaintiff believes that Drescher's

language was full of "deceit", "character assassination, and perjury." Id. ¶ 27. Given that there are no factual allegations to support any other claim on these facts, [2] the Court has construed Plaintiff's allegations against Drescher as a claim for defamation, for which Drescher has absolute immunity. [3]

### 3. Sovereign Immunity

Judge Cholakis argues that all claims against her are barred by judicial immunity and Eleventh Amendment sovereign immunity. Cholakis Mem. at 2–5. Judicial immunity protects conduct "taken as part of all judicial acts except those performed in the clear absence of jurisdiction." LeClair, 2019 WL 1300547, at *7; see also Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). When determining the limits of judicial action, the judge's jurisdictional scope must be construed broadly. LeClair, 2019 WL 1300547, at *7. This immunity is designed to benefit the public, so that the judge may exercise her functions with "independence and without fear of consequences." Id. Further, the Eleventh Amendment bars a plaintiff from bringing suit in federal court against a state, its agencies, or officials unless the state consents to the suit or there is a statutory waiver of immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465, U.S. 89, 99–101 (1984).

**\*7** Judge Cholakis has absolute judicial immunity for all judicial actions that occurred within her judicial capacity. Accepting Plaintiff's allegations as true, all of Judge Cholakis's actions occurred while she was working within her judicial capacity to determine the proper custody for Plaintiff's children. Plaintiff alleges that Judge Cholakis demonstrated a lack of judicial competence and exhibited "personal animus and bias" against her. Id. ¶¶ 13–41. However, "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly." Amato, 2017 WL 4083575, at *3 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). Accordingly, Judge Cholakis is entitled to judicial immunity.

Judge Cholakis is also protected under sovereign immunity. In Gollomp v. Spitzer, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge Cholakis, a member of the Rensselaer County Family Court,

which is part of the New York Unified Court System. Compl. ¶3; N.Y. Const. Art. VI, §§ 1, 13. All of Judge Cholakis's alleged constitutional violations occurred while she acted within her official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge Cholakis should be dismissed, because "a suit against a state official in [her] official capacity is, in effect, a suit against the state itself, which is barred." Berman Enterprises, Inc. v Jorling, 3 F.3d 602, 606 (2d Cir. 1993) (citing Hafer v. Melo, 502 U.S. 21, 21 (1991)). [4]

**V. CONCLUSION**
Accordingly, it is hereby:

**ORDERED**, that Foley's Motion to Dismiss (Dkt. No. 10), Drescher's Motion to Dismiss (Dkt. No. 13), and Cholakis's Motion to Dismiss (Dkt. No. 15) are **GRANTED**. Plaintiff's claims against Foley, Drescher, and Judge Cholakis are **DISMISSED** with prejudice, and without leave to amend; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 3503158

---

**Footnotes**

1    The appropriate place for a party to appeal a final decision made in Rensselaer County Family Court is the Supreme Court of New York, Appellate Division, Third Department. Family Ct. Act § 1111.

2    Plaintiff alleges that Defendants acted in concert to deprive her of her constitutional and civil rights under § 1983 and § 1985. To state a claim under § 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived them of that right acted under color of state law.'" Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Private individuals who are not state actors (not acting under the color of state law) may be liable under § 1983 "if they have conspired with or engaged in joint activity with state actors." Storck v. Suffolk County Dept. of Social Services, 62 F. Supp. 2d 927, 940 (E.D.N. Y 1999). Allegations of conspiracy cannot be vague nor conclusory but must allege with "some degree of particularity" clear acts that defendants engaged in that were reasonably related to the alleged conspiracy. Id. Plaintiff did not allege any specific acts that Drescher and Foley engaged in that would indicate a conspiracy with Judge Cholakis. Therefore, the allegation should be dismissed under 12(b)(6) because Plaintiff fails to state a claim under § 1983 against Drescher and Foley. Similarly, to state a claim under § 1985, the plaintiff's claim must contain more than conclusory or vague allegations of conspiracy. Storck, 62 F. Supp. 2d at 940. Accordingly, Plaintiff's § 1985 claim should be dismissed under 12(b)(6) as well.

3    An individual can file an attorney misconduct complaint with the Third Judicial Department Attorney Grievance Committee in Albany, NY. New York State Unified Court System, Judicial Conduct, Attorneys, *Grievance Complaints*, http://ww2.nycourts.gov/attorneys/grievance/complaints.shtml (last visited June 26, 2020).

4    A complaint regarding a judge's religious discrimination or bias may be filed with the USC Managing Inspector General for Bias Matters. New York State Unified Court System, *Judicial Conduct*, https://nycourts.gov/ip/

judicialconduct/index.shtml (last visited June 26, 2020). Similarly, if a party believes that a judge violated the Rules of Judicial Conduct, a complaint can be filed against the judge with the New York State Commission of Judicial Conduct. Id.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 28 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,

v.

Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

**Attorneys and Law Firms**

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B. Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

*\*1*  The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adirenne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint. [1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

A complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Preacely v. City of New York*, 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." " *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v. Hornblower New York, LLC*, 243 F.Supp.3d 461, ——, 2017 WL 1078585, at *2 (S.D.N.Y. 2017) (citations omitted).

**I. Complaint**

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer—CB's father [2]—in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

**\*2** Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her. [3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22). [4] Plaintiff Amato states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating **our** due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law.

(Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. <u>Judicial Immunity</u>

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

### B. Application

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970 N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 31 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty "issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and

visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law. (Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring 🔖Sections 236 and 🔖240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity.[5]

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs'[6] complaint must be dismissed as against defendant McGinty.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner,*

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 32 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva,* 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted) ); *Holland v. Morgenstern,* No. 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis,* No. 04 Civ. 155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes,* the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at *12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity.

*Id.* at *11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor,* 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

### III. State Action

#### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk,* 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York,* No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi,* No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson,* 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he

or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

#### B. Application

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office,* No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y,* 367 Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog,* 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

**\*7** Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown,* 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 33 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of 'conspiracy.' " *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (*Id.*)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

## IV. Minor Child Plaintiffs

### A. Legal Standards

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[9]

*Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

### B. Application

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names.[10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is

not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b) ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors,[11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti*, 484 Fed.Appx. 576 (2d Cir. 2012).

**\*8** The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses. The only specific contact information is for plaintiff Amato. The complaint contains a description of the various plaintiffs and generally where they live,[12] but no specific addresses have been provided. (Compl. ¶¶ 3-7). Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney. This includes accepting mail from the court and sending it to the other plaintiffs. In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

## V. Standing

### A. Legal Standards

A plaintiff bears the burden of establishing that he or she has standing to bring an action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.' " *Heath v. Banks*, No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous*, —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2014) ).

### B. Application

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 34 of 108

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

## VI. *Rooker-Feldman*, The Domestic Relations Exception, and *Younger v. Harris*

### A. The Domestic Relations Exception

#### 1. Legal Standards

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993). In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case,[13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected to her "unfounded" charges. *Id.* at *1.

#### 2. Application

**\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge

and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic relations exception. To the extent that the custody case has been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman*[14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the

federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding in "October" notwithstanding that the witnesses were ready to testify.[15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision. Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

### C. *Younger v. Harris* [16]

### 1. Legal Standards

**\*10** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts. [18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court.

*See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis [19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct. at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir 2015) (same).

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 36 of 108

constitutional claims.' " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) ).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " 2015 WL 1120121, at *3, 456 S.W.3d 545 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the future. [20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision. [21] (Compl. ¶ 41).

## VII. Opportunity to Amend

### A. Legal Standards

*11 Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court

also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum. [22]

## VIII. Motion to Obtain ECF Login and Password

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 37 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

challenge, and in the proper forum, as discussed above, and it is

**\*12  ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9487185

---

## Footnotes

1    The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

2    Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

3    The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

4    There appears to be no ¶ 21 in the complaint.

5    Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez,* 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

6    Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 38 of 108

dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

7    As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

8    Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

9    An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See* 🚩*Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). 🚩*Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and the Social Security regulations provided for such representation.

10    One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

11    Fed. R. Civ. P. 17(e)

12    Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" "children" live in Ohio. (Compl. ¶ 7).

13    One of the rulings granted sole custody to the father of the child. 🚩 2017 WL 1592578, at *1.

14    🚩*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and 🚩*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

15    Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

16    🚩401 U.S. 37 (1971).

17    🚩*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

18    🚩*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

19    🚩*Sprint* did not involve custody proceedings.

20    *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger*.

21    The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

22    Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 39 of 108

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 40 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 4083575
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frances AMATO; John Doe, progeny minor child;
Adrienne Auchmoody; Toni Jean Kulpinski;
Vladimir Kulpinski; Michaela Kulpinski; Michelle
Arzola; Jane Doe, minor child; and John Doe,
minor child of Michelle Arzola, Plaintiffs,
v.
Judge Anthony MCGINTY, individually and
as Ulster County Family Court Judge; Attorney
Andrew Gilday, individually and as a public
defender of New York; Amy Ingram, state attorney
for the child; Patrick V. Beesmer, individually;
and Pamela Augustine, individually, Defendants.

1:17-CV-00593 (MAD/ATB)
|
Signed 09/15/2017

**Attorneys and Law Firms**

FRANCES AMATO, P.O. Box 820, Marlboro, New York
12542, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** On May 26, 2017, *pro se* Plaintiff Frances Amato
("Plaintiff Amato") commenced this action pursuant to 42
U.S.C. § 1983 ("Section 1983"). *See* Dkt. No. 1 at
1, 4. Plaintiff Amato is joined in this action with her
son ("Plaintiff CB"); her mother, Adrienne Auchmoody
("Plaintiff Auchmoody"); Plaintiff CB's aunt, Toni Jean
Kulpinski ("Plaintiff TK"); Plaintiff CB's uncle, Vladimir
Kulpinski ("Plaintiff VK"); Plaintiff CB's cousin, Michaela
Kulpinski ("Plaintiff MK"); Plaintiff CB's sister, Michelle
Arzola ("Plaintiff Arzola"); Plaintiff CB's niece ("Plaintiff
Jane Doe"); and Plaintiff CB's nephew ("Plaintiff John
Doe"). *See id.* at 1-2. Plaintiffs have brought this action
against Ulster County Family Court Judge Anthony McGinty
("Defendant McGinty") for his role in a decision dictating

the custody of Plaintiff CB entered on October 24, 2016.
*See* Dkt. No. 17 at 67; Dkt. No. 1 at 3. Plaintiffs
have also sued Plaintiff CB's father, Patrick Beesmer
("Defendant Beesmer"); Plaintiff CB's assigned counsel
for the custody proceedings, Amy Ingram, ("Defendant
Ingram"); Defendant Beesmer's assigned counsel for the
custody proceedings, Attorney Andrew Gilday ("Defendant
Gilday"); and Defendant Beesmer's "paramour" as Plaintiffs
refer to her, Pamela Augustine ("Defendant Augustine"), for
their roles in the custody proceeding. *See* Dkt. No. 1 at 3-4.

Plaintiffs filed a motion for a temporary restraining order
on June 2, 2017, *see* Dkt. No. 8, which the Court denied
that day, *see* Dkt. No. 9. On June 6, 2017, Magistrate
Judge Baxter issued an Order and Report-Recommendation
recommending that Plaintiffs' complaint be dismissed in
its entirety with prejudice as to all named Defendants in
this action. *See* Dkt. No. 11 at 26. Plaintiffs submitted
objections to Magistrate Judge Baxter's Order and Report-
Recommendation on June 19, 2017. *See* Dkt. No. 17.
Currently before the Court is Magistrate Judge Baxter's
Order and Report-Recommendation and Plaintiffs' objections
thereto.

**II. BACKGROUND**

Plaintiff Amato and Defendant Beesmer are the parents of
Plaintiff CB and were involved in custody proceedings over
Plaintiff CB. *See* Dkt. No. 1 at 5. According to the complaint,
Defendant McGinty presided over the custody proceedings
after the originally assigned judge recused herself. *See id.* In
an order dated October 24, 2016, Defendant McGinty granted
Defendant Beesmer primary custody of Plaintiff CB. *See* Dkt.
No. 17 at 64-65, 67.

Upset with the outcome of the custody proceedings, Plaintiff
Amato commenced the instant action against Defendants for
their roles in the proceedings.[1] *See* Dkt. No. 1. Plaintiff
Amato claims that during the custody proceedings, Defendant
McGinty was "[h]ighly abusive" to "all" plaintiffs; violated
Plaintiffs' "constitutional" and "ADA rights;" induced
"[e]xtreme pain and suffering and trauma to all plaintiffs;"
"endanger[ed] the welfare of a child;" and "[i]llegally
extended fictious authority in CLEAR ABSENCE of subject
matter jurisdiction." *Id.* at 6-7. Plaintiff Amato claims that
Defendant McGinty denied her access to "his court," denied
her "rights to proper serving process," and denied the

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 41 of 108

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

admission of "any evidence into the court for purpose of record." *Id.* at 7.

**\*2** Plaintiff Amato claims that Defendant McGinty "co-conspired" with other Defendants in a "mock trial" to punish Plaintiff Amato for her role as an "outspoken community advocate" for human rights and family court reform. *See id.* at 7, 9, 15. Plaintiff Amato alleges that Plaintiff CB's custody proceedings were "plagued by retributions" for Plaintiff Amato's public criticism of Defendant McGinty prior to the custody proceedings. *Id.* at 7.

Plaintiff Amato alleges that Defendant McGinty, with cooperation from Defendants Ingram and Gilday, committed a number of violations resulting in the "kidnaping and endangerment of a minor." *Id.* at 8. Plaintiff Amato claims that Defendants McGinty, Ingram and Gilday committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False [and] unlawful arrest," and "Child Endangerment." *See id.* at 8-9. Plaintiff Amato alleges that Defendant McGinty "[p]re decided [a] trial with no evidence allowed." *Id.* at 8.

Plaintiffs allege "Causes of Action" for "First Amendment," "Parental Impairment," and "Due Process." *Id.* at 14-26. Plaintiffs also allege additional state law claims for "intentional and negligent emotional distress." *Id.* at 24. Plaintiffs request the "immediate return of the child," compensatory damages of $10,000,000 on each cause of action, punitive damages, costs and attorneys' fees, and a "[j]udgment declaring the orders, edicts and processes in th[e] [c]omplaint unconstitutional[,] together with an order permanently enjoining the enforcement of [the family court] orders." *Id.* at 26.

## III. DISCUSSION

### A. Standard of Review

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-

representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Massie v. Ikon Office Solutions, Inc.,* 381 F. Supp. 2d 91, 94 (N.D.N.Y. 2005) (quoting *Clarke v. Bank of New York,* 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey,* 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid,* 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart,* No. 02-CV-1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004).

Although a *pro se* litigant's objections should be accorded leniency, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.,* 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quotation omitted); *see also IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07 Civ. 6865, 2008 WL 4810043, \*1 (S.D.N.Y. Nov. 3, 2008) ("To the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.").

**\*3** As mentioned, Plaintiffs have submitted objections to the Order and Report-Recommendation issued by Magistrate Judge Baxter. *See* Dkt. No. 17. The objections submitted by Plaintiffs are 117 pages long. *See id.* Despite the correct caption at the top of the document, the first 25 pages of the document appear to be an appellate brief to the State of New York Supreme Court, Appellate Division, Third Department.[2] *See id.* at 1-25. The remaining 92 pages include a brief analysis of custody factors, Defendant McGinty's custody decision, court transcripts, testimonial statements, and documents outlining the history of the custody proceedings. *See id.* at 25-117. There is no mention of Magistrate Judge Baxter or the Order and Report-Recommendation in any of these documents. Accordingly,

Plaintiffs have failed to file specific objections. However, regardless of whether the Court reviews the Order and Report-Recommendation *de novo* or for clear error, Plaintiffs' complaint is still subject to dismissal.

## B. Judicial Immunity

Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). A judicial action is "a function normally performed by a judge, and to the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A judge's actions are in "absence of all jurisdiction" when the court has no "statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

Plaintiffs have brought a number of allegations against Defendant McGinty, including that he violated their constitutional rights, co-conspired with the remaining Defendants, endangered the welfare of Plaintiff CB, and retaliated against Plaintiff Amato for being outspoken about Defendant McGinty's purported "abuses and discrimination against mothers and children." Dkt. No. 1 at 5-9. Accepting Plaintiff's claims as true, all claims occurred while Defendant McGinty was working within his judicial capacity to determine the proper custody for Plaintiff CB. Accordingly, Defendant McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13. Magistrate Judge Baxter correctly reasoned that any action Defendant McGinty

committed with malice or in retaliation of Plaintiff Amato's criticisms was still performed within the judicial functions of a family court judge presiding over a custody dispute. Magistrate Judge Baxter also correctly concluded that Plaintiff's arguments with respect to N.Y. Jud. Law § 21 are unavailing, as Defendant McGinty did not violate that provsion, and, even if he did, he would still be entitled to judicial immunity. *See generally Gross*, 585 F.3d at 84.

Furthermore, law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court. *See Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, *11 (S.D.N.Y. Aug. 19, 2004). Therefore, Magistrate Judge Baxter correctly concluded that Defendant Ingram is entitled to quasi-judicial immunity by virtue of her appointment as Plaintiff CB's law guardian. *See* Dkt. No. 11 at 12-13.

## C. State Action

**\*4** To state a claim under Section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 U.S. 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, "private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). The mere conduct of a private party is excluded from the

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 43 of 108

reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Plaintiffs filed suit against Defendant Gilday for his role as Defendant Beesmer's assigned counsel and against Defendant Ingram for her role as Plaintiff CB's assigned attorney. Defendants Gilday and Ingram, even if they were court appointed, cannot be considered state actors. *See Licari*, 374 Fed. Appx. at 231. Furthermore, Defendants Beesmer and Augustine are obvious private parties who are not state actors under Section 1983. Defendants Beesmer and Augustine had no connection to the state beyond their participation in the custody proceedings.

While Plaintiffs have claimed that Defendants Beesmer and Augustine "conspired" with the other Defendants to achieve the custody outcome, as Magistrate Judge Baxter found, there have been no facts to support these conclusory statements.[3] Conspiracy allegations that are wholly conclusory are insufficient to state a claim under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) (citing *Ciambriello*, 292 F.3d at 325); *see also Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) ("Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.") (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Accordingly, this Court agrees with Magistrate Judge Baxter that Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the complaint is dismissed as to each of these Defendants.

### D. Minor Child Plaintiffs

An individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 U.S. 137, 139 (2d Cir. 2007)). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Three minor plaintiffs, Plaintiff CB, Plaintiff John Doe, and Plaintiff Jane Doe, have been listed as *pro se* litigants in this action. *See* Dkt. No. 1 at 1-2; Dkt. No. 11 at 16. While the adult Plaintiffs may bring this lawsuit *pro se*, they may not act as counsel for the minor children without

being a licensed attorney. *See Cheung*, 906 F.2d at 61. Therefore, this Court agrees with Magistrate Judge Baxter's determination that the adult Plaintiffs in this matter may not bring suit on behalf of the minor Plaintiffs.

### E. Standing

**\*5** A plaintiff who wishes to invoke federal jurisdiction bears the burden of establishing that he or she has adequate standing to bring the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (other citation omitted). To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). Moreover, there is a "prudential standing rule" which generally bars litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted).

Here, despite multiple adult Plaintiffs filing suit against Defendants, Plaintiff Amato is the only Plaintiff that was a party to the custody proceedings regarding Plaintiff CB. Plaintiffs Auchmoody, TK, VK, MK, and Arzola only appear to be connected to the custody proceedings by their relationship with Plaintiffs Amato and CB. *See generally* Dkt. No. 1. Pursuant to the prudential standing rule, Plaintiffs Auchmoody, TK, VK, MK, and Arzola cannot assert the rights of Plaintiff Amato or Plaintiff CB. *See Rajamin*, 757 F.3d at 86. Therefore, all Plaintiffs other than Plaintiffs Amato and CB lack standing, and the complaint with respect to these Plaintiffs is dismissed.

### F. Domestic Relations Exception

Magistrate Judge Baxter also noted that the Court lacks subject matter jurisdiction over several of Plaintiffs' claims pursuant to various legal doctrines. Due to the nature of Plaintiffs' complaint, it is difficult to precisely determine exactly which doctrines apply, but the Court will discuss several doctrines which preclude the Court from exercising subject matter jurisdiction over several of Plaintiffs' claims.

The domestic relations exception to federal jurisdiction divests federal courts of jurisdiction in matters involving divorce, alimony, and child custody. *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors").

In *Bukowski v. Spinner*, No. 17-CV-0845, 2017 WL 1592578, *1 (E.D.N.Y. Apr. 28, 2017), the Eastern District of New York dismissed a case with similar allegations as those brought in this case. [4]

Plaintiffs allege that the "orders and processes" of the family court are unconstitutional; however, the crux of their argument arises out of the alleged improper custody determination by Defendant McGinty. *See* Dkt. No. 1 at 14-15, 21, 24, 26. Plaintiffs' alleged injuries stem directly from the disputed family court custody decision. *See id.* at 5-9, 14-16, 21, 24. Additionally, Plaintiffs request that this Court overturn the custody decision and permanently enjoin the enforcement of family court decisions. *See id.* at 26. Accordingly, to the extent that Plaintiffs request that this Court overturn the custody determination, this Court lacks jurisdiction to adjudicate such a case.

### G. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

**\*6** In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. In light of *Exxon Mobile*, the Second Circuit has held that "there

are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Plaintiffs request that this Court overturn and enjoin the unfavorable decisions of the family court. *See* Dkt. No. 1 at 26. Plaintiffs claim that their injuries resulted from the custody determination made by Defendant McGinty prior to the commencement of this action. [5] *See id.* As such, to the extent that Plaintiffs seek to challenge the family court decision, this Court does not have jurisdiction to grant such relief under *Rooker-Feldman*.

### H. *Younger* Abstention [6]

*Younger* abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Id.* at 636 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)). "If the federal action falls into one of these three categories, a [c]ourt may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)." [7] *Id.* Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case. *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*,

No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).

Accordingly, as Magistrate Judge Baxter concluded, to the extent that any issues in this litigation are still pending in family court, this Court is barred from exercising such jurisdiction pursuant to *Younger*.

### I. Opportunity to Amend

 **\*7**  When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Defendants McGinty and Ingram are entitled to immunity, and, thus, better pleading would not be able to cure the defects in Plaintiffs' allegations against them. Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the conspiracy allegations against them are entirely conclusory. Therefore, better pleading would not cure the substantive defects in the complaint. Accordingly, to the extent that Plaintiffs allege constitutional and state law violations that this Court has subject matter jurisdiction over, those claims are dismissed without leave to amend with respect to all named Defendants in this action.

However, Magistrate Judge Baxter recommended that, to the extent Plaintiff Amato challenges the constitutionality of the New York Domestic Relations Law §§ 236 and 240, she may be able to do so in certain circumstances. *See* Dkt. No. 11 at 25-26. The Court agrees, and Plaintiff's complaint is dismissed without prejudice with respect to

a claim challenging the constitutionality of the New York Domestic Relations Law, with only Plaintiff Amato as the named plaintiff, and the complaint must be filed against the proper defendant, at the proper time, and in the appropriate forum, as set forth more fully in the Order and Report-Recommendation. *See id.* at 25-26.

### IV. CONCLUSION

After carefully reviewing the record in this matter, Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED** as against Defendants McGinty, Ingram, Gilday, Beesmer, and Augustine; and the Court further

**ORDERS** that Plaintiff Amato's complaint (Dkt. No. 1) is **DISMISSED without prejudice** with respect to any claim challenging the constitutionality of the New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4083575

### Footnotes

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 46 of 108

1    While all Plaintiffs have submitted claims against Defendants, the narrative in the complaint and objections is written in a singular voice referring to Plaintiff Amato as "I," "me," and "myself." *See generally* Dkt. Nos. 1, 17.

2    The objections make several comments claiming that "this court" "held" or "ruled" and cited case law from the Third Department. *See, e.g.*, Dkt. No. 17 at 23.

3    Similarly, Plaintiffs' purported state law claims are entirely conclusory and do not come close to alleging facts to support a valid cause of action. *See* Dkt. No. 1 at 24-26.

4    The court determined that despite the plaintiff "raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction." *Bukowski*, 2017 WL 1592578, at *3.

5    Plaintiffs filed this action on May 26, 2017 and Defendant McGinty rendered his custody determination on October 24, 2016. *See* Dkt. No. 17 at 4-5, 67.

6    *See Younger v. Harris*, 401 U.S. 37 (1971).

7    The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres*, 130 F. Supp. 3d at 636

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 767167
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rosanna CURCIO, Plaintiff,

v.

County of Putnam Judge Victor GROSSMAN; Donna E. Abrams; Laura Roberts; County of Putnam, Defendants.

22 CV 1648 (VB)
|
Signed 03/14/2022

**Attorneys and Law Firms**

Rosanna Curcio, Mahopac, NY, Pro Se.

## ORDER OF DISMISSAL

Briccetti, United States District Judge.:

**\*1** Plaintiff Rosanna Curcio, proceeding *pro se*, asserts claims under 42 U.S.C. § 1983, seeking damages, and possibly also seeking injunctive relief. She names as defendants (1) Justice Victor Grossman, of the New York State Supreme Court, County of Putnam; (2) Donna E. Abrams, an attorney appointed by the State court to represent Plaintiff's minor children during Plaintiff's divorce and child-custody proceedings; (3) Laura E. Roberts, Plaintiff's ex-husband's attorney, and also a former part-time Putnam County Assistant District Attorney; and (4) the County of Putnam.

Plaintiff has paid the fees to bring this action, and the Clerk of Court has issued summonses. [1] For the reasons discussed below, the Court dismisses this action.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring a federal civil action, if it determines the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court may also dismiss

an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

### A. The present complaint

**\*2** Plaintiff alleges the following in the present complaint: On or about September 22, 2015, following the end of Plaintiff's divorce and child-custody proceedings before Justice Grossman in August 2015, Justice Grossman summoned Plaintiff and her ex-husband to an emergency conference that had been requested by their children's court-appointed attorney, Defendant Abrams. According to Plaintiff: "There was a back room conference that did not involve the parties. Apparently, allegations were made that

the Plaintiff was interrogating [the] children." (ECF 1, at 3.) Following that conference, Justice Grossman ordered the children removed from Plaintiff's home and placed in the custody of Plaintiff's ex-husband's then-girlfriend (now wife). Plaintiff claims she did not have an opportunity to respond to the allegations made against her; she was not granted a hearing or other due process.

Plaintiff further alleges that Defendant Abrams failed to properly represent the children; she "misquoted" a mental-health professional's report to the state court and "overstepped her abilities to psychologically diagnose either parent." (*Id.* at 4.) Abrams also "deflected [Plaintiff's ex-husband's] anger management issue, and continued to make baseless and untrue allegations about Plaintiff to the [state] court." (*Id.*) On October 26, 2015, Plaintiff moved to end Abrams's representation of the children, but Justice Grossman denied that motion.

Justice Grossman granted custody of the children to Plaintiff's ex-husband. But, according to Plaintiff, in an order dated November 25, 2015, Justice Grossman cast doubt on any notion that Plaintiff's ex-husband "is a better parent." (*Id.* at 3.)

Plaintiff alleges that on July 25, 2016, Defendants Abrams and Roberts "had Plaintiff falsely arrested." (*Id.* at 4.) Plaintiff further alleges that at the time of Plaintiff's arrest, Roberts had not informed Plaintiff or Justice Grossman that Roberts was also a part-time Putnam County Assistant District Attorney. Plaintiff claims Roberts "had criminal charges filed against [Plaintiff] in order to harass her and cause the Plaintiff and her children harm" (*id.*), although Plaintiff was never convicted of a crime. Plaintiff says Roberts and Abrams "continued to use [Plaintiff's arrest to] Plaintiff's detriment." (*Id.*) She further claims she filed a complaint against Roberts with the Putnam County District Attorney's Office, and Roberts was fired from her position with that office.

According to plaintiff, during a subsequent state-court "parental alienation trial" that took place in April 2018, Plaintiff's ex-husband's wife "coached" the children to accuse Plaintiff of "touch[ing] ... [them] inappropriately." (*Id.*) Plaintiff alleges Child Protective Services found no basis to substantiate such accusations, but Abrams had Plaintiff's son testify falsely against Plaintiff. Justice Grossman "dismissed the parental alienation trial and instead issued ... a two year order of protection [against Plaintiff]," which was vacated or expired on August 28, 2020. (*Id.* at 5.)

Plaintiff alleges that on September 8, 2020, she successfully sought unspecified immediate injunctive relief from Justice Grossman arising from Plaintiff's ex-husband's failure to comply with a custody and visitation order. (*Id.*) She further alleges that eight days later, on September 16, 2020, Defendant Abrams, the court-appointed attorney for the children, emailed Justice Grossman to request "a continuance to submit ... opposition papers" on behalf of Plaintiff's ex-husband; Plaintiff was not notified of that request. (*Id.*) According to Plaintiff, despite Abrams's misconduct, Justice Grossman reappointed her to represent the children. Abrams has allegedly defrauded the government by submitting false pay vouchers. (*Id.*)

Plaintiff further alleges that in February and March 2021, Plaintiff requested to participate in her daughter's birthday celebration and that Justice Grossman recuse himself. Plaintiff claims Justice Grossman denied Plaintiff's request to recuse himself, and on April 19, 2021, he scheduled a hearing without notifying Plaintiff. According to plaintiff, after another "backroom conference" was held without Plaintiff, in an order prepared by Defendant Roberts (Plaintiff's ex-husband's attorney), Justice Grossman, on June 11, 2021, denied Plaintiff's request to participate in her daughter's birthday celebration due to Plaintiff's failure to appear. (*Id.* at 6.) Justice Grossman stated in that order that he retained jurisdiction over the matter unless another court had acquired jurisdiction. By that date, however, Plaintiff had brought an action against Justice Grossman in federal court. (*Id.* at 7.)

**\*3** Plaintiff then made a second motion for Justice Grossman to recuse himself. Justice Grossman denied that motion, and set a trial date for May 9, 2022. (*Id.*)

### B. Plaintiff's federal-litigation history

On May 17, 2021, while Plaintiff's alleged request to participate in her daughter's birthday celebration was pending before Justice Grossman, Plaintiff filed a *pro se* action in this court under 🚩 Section 1983, in which she named as defendants Justice Grossman, as well as Defendants Roberts and Abrams, and in which she proceeded *in forma pauperis* ("IFP"). *See Curcio v. Grossman*, 21 CV 4452 (LTS) (S.D.N.Y.) ("*Curcio I*").

By order dated June 15, 2021, Chief Judge Swain dismissed *Curcio I sua sponte*, but granted Plaintiff leave to replead her claims of malicious prosecution under 🚩 Section 1983.

(ECF 21 CV 4452, 6.) But because Plaintiff failed to file an amended complaint in response to that order, Chief Judge Swain issued a Judgment dismissing *Curcio I* on August 4, 2021. (ECF 21 CV 4452, 7.) Plaintiff did not appeal.

Plaintiff filed her complaint commencing this action on February 28, 2022.

## DISCUSSION

Plaintiff asserts claims in this action that she either raised, or could have raised, in *Curcio I*, and there are issues in this action that the court has previously adjudicated in *Curcio I*. The Court will therefore explain why many of Plaintiff's claims must be dismissed under the doctrine of claim preclusion or issue preclusion. The Court will also explain why Plaintiff's claims must be dismissed for other reasons.

### A. Claim preclusion

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new claim in a new civil action that was or could have been raised in an earlier civil action in which the same parties were involved, if the original claim resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising [claims] that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020). If a litigant files a new civil action and "advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* at 1594-95 (quoting *Brown*, 442 U.S. at 131). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees*, 140 S. Ct. at 1595 (citations and internal quotation marks omitted)), *cert. denied*, 142 S. Ct. 775 (2022).

Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction,

and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted). A "dismissal for failure to state a claim operates as 'a final judgment on the merits and thus has [claim preclusion] effects.'" *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)).

**\*4** To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *see NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect of [claim preclusion] by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted). Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise that defense, *see Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 191 (2d Cir. 2017).

In *Curcio I*, Plaintiff asserted claims for damages under Section 1983 against Justice Grossman, as well as against Defendants Abrams and Roberts, arising from events that occurred during Plaintiff's divorce and child-custody proceedings between 2013 and March 8, 2021. (ECF 21 CV 4452, 6.) In her June 15, 2021, order, Chief Judge Swain dismissed Plaintiff's: (1) claims against Justice Grossman under the doctrine of judicial immunity as frivolous; (2) claims against Defendant Abrams for failure to state a claim because Abrams is not a state actor; (3) claims against Defendant Roberts for the same reason, and to the extent that Plaintiff sued Roberts in Roberts's role as a prosecutor, under the doctrine of prosecutorial immunity and as frivolous; (4) claims arising from Plaintiff's state-court proceedings under the *Rooker Feldman* doctrine; (5) claims of false arrest under Section 1983 as time-barred; and (6) claims of malicious prosecution under Section 1983 with leave to replead. (*Id.*) But because Plaintiff failed to file an amended complaint in response to that order, Chief Judge Swain issued a judgment

dismissing *Curcio I* on August 4, 2021. (ECF 21 CV 4452, 7.) Plaintiff did not appeal.

In the present action, the Court must dismiss, under the doctrine of claim preclusion, Plaintiff's claims under Section 1983 that Plaintiff either previously raised or could have raised in *Curcio I*, against Defendants Abrams and Roberts, that arise from those defendants' representation of Plaintiff's children or ex-husband, or from their causing Plaintiff's arrest, during the events alleged in *Curcio I*. The relevant claims in *Curcio I* against those defendants were dismissed on the merits for failure to state a claim. (*Id.* at 5-6, 7-8.) Accordingly, the Court dismisses, for failure to state a claim, any of Plaintiff's claims raised in the present action against Abrams and Roberts arising from those defendants' representation of Plaintiff's children or ex-husband, or from their causing Plaintiff's arrest, that arise from events alleged in *Curcio I*. [2] *See Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (a dismissal for claim preclusion is a dismissal for failure to state a claim).

**B. Issue preclusion**

The doctrine of issue preclusion, also known as "collateral estoppel," bars relitigation of a specific legal or factual issue in a second proceeding "where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (citation and internal quotation marks omitted, alteration in original). This doctrine " 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.' " *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (citation omitted); *Fresh Del Monte Produce Inc. v. Del Monte Foods, Inc.*, 2016 WL 236249, at *5 (S.D.N.Y. Jan. 20, 2016) ("It is *issue preclusion*, not claim preclusion, which permits 'an issue of fact or law [ ] actually litigated and determined by a valid and final judgment, and ... essential to the judgment' to be 'conclusive in a subsequent action between the parties, whether on the same or a different claim.' " (quoting Restatement (Second) of Judgments § 27, p. 250 (1980))) (emphasis in original). [3] A previous dismissal for failure to state a claim is a decision made on the merits for the

purpose of future applications of issue preclusion. *See Nealy v. Berger*, 2009 WL 704804, at *10 (E.D.N.Y. Mar. 16, 2009). And a previous dismissal of claims because of an immunity defense can be the basis for a subsequent dismissal of claims under the doctrine of issue preclusion. *See Mir v. Kirchmeyer*, 2021 WL 4484916, at *2 (2d Cir. Oct. 1, 2021) (summary order). As with claim preclusion, the Court may, on its own initiative, raise the defense of issue preclusion. *See Thai-Lao Lignite (Thailand) Co., Ltd.*, 864 F.3d at 191.

**\*5**  In the June 15, 2021, order in *Curcio I*, Chief Judge Swain dismissed Plaintiff's claims for damages under Section 1983 against: (1) Justice Grossman, which arose from his actions while presiding over Plaintiff's state-court divorce and child-custody proceedings, under the doctrine of judicial immunity; (2) Defendant Roberts, in her role as a prosecutor, under the doctrine of prosecutorial immunity; and (3) Defendants Abrams and Roberts, in their roles as attorneys representing Plaintiff's children or her ex-husband, and for their causing Plaintiff's arrest, for failure to state a claim because those defendants are not state actors and because her claims of false arrest were untimely. (ECF 21 CV 4452, 6, at 5-6, 7-8.) Plaintiff had a full and fair opportunity to litigate those claims; she had an opportunity to appeal the dismissal of that action, but did not do so.

In the present action, Plaintiff asserts claims against: (1) Justice Grossman, arising from his ongoing presiding over Plaintiff's state-court child-custody proceeding; (2) Defendant Roberts, arising from her role as a former prosecutor; and (3) Defendants Abrams and Roberts, arising from their ongoing roles in representing Plaintiff's children or her ex-husband. But under the doctrine of issue preclusion, the Court must dismiss these claims because the following issues have already been adjudicated on the merits: (1) Justice Grossman's immunity from suit; (2) Defendant Roberts's immunity from suit, in her role as a prosecutor; and (3) Plaintiff's failure to show that Abrams and Roberts, in their roles as attorneys for Plaintiff's children or ex-husband, are state actors. Accordingly, the Court dismisses Plaintiff's claims against Justice Grossman, and against Defendants Abrams and Roberts, arising from these already adjudicated issues (those claims not previously dismissed because of claim preclusion) for failure to state a claim. [4] *See Wachtmeister v. Swiesz*, 59 F. App'x 428, 429 (2d Cir. 2003) (summary order) (a dismissal for issue preclusion is a dismissal for failure to state a claim).

## C. County of Putnam

The Court must also dismiss Plaintiff's claims under Section 1983 against the County of Putnam. When a plaintiff sues a municipality under Section 1983, such as the County of Putnam, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See* Connick v. Thompson, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978))); Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012); *see* Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (internal citations omitted).

**\*6** Plaintiff alleges no facts showing that a policy, custom, or practice of the County of Putnam caused a violation of her federal constitutional rights. [5] The Court therefore dismisses Plaintiff's claims under Section 1983 against the County of Putnam for failure to state a claim.

## D. Additional claims for relief

While Plaintiff's complaint ostensibly seeks only damages, the Court liberally construes the complaint as also asking this Court to intervene in Plaintiff's pending state-court child-custody proceeding; the Court understands Plaintiff's complaint as requesting that this Court stay that proceeding and order the return of Plaintiff's children to Plaintiff's custody. The Court must dismiss such claims under the domestic-relations abstention doctrine, the *Younger* abstention doctrine, and the Anti-Injunction Act.

### 1. Domestic-relations abstention doctrine

Federal district courts must abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims may be fully and fairly determined in the state courts. *See* Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court must abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted) *see also* Deem v. DiMella-Deem, 941 F.3d 618, 621 (2d Cir. 2019) ("[T]he domestic relations *abstention* doctrine articulated in *American Airlines* [applies in federal-question cases]. And ... *American Airlines* remains good law in this Circuit.") (emphasis in original), *cert. denied*, 140 S. Ct. 2763 (2020).

Plaintiff has alleged no facts showing that she cannot fully and fairly litigate the issue of the custody of her children in the state courts. Thus, to the extent that Plaintiff asks this Court to order the return of her children to her custody, the Court dismisses such claims under the domestic-relations abstention doctrine.

### 2. *Younger* abstention doctrine

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See* Gibson v. Berryhill, 411 U.S. 564, 573-74 (1973) (citing Younger, 404 U.S. 37). *Younger* abstention is appropriate in only three categories of state-court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Commc'n, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013). Courts have held that a pending state-court child-custody proceeding falls within either the second or third category of state-court proceedings to which the *Younger* abstention doctrine applies. *See, e.g.,* Burke v. Reid-Cherry, 2021 WL 2092669, at \*4-5 (S.D.N.Y. May 24, 2021) (third category), *report & recommendation adopted,* 2021 WL 4272350 (S.D.N.Y. Sept. 20, 2021); *Perso v. Perso,* 2019 WL 4415399, at \*3 (E.D.N.Y. Sept. 13, 2019) (same); *Torres v. Gaines,* 130 F. Supp.3d 630, 635-36 (D. Conn. 2015) (second category).

**\*7**  Plaintiff fails to allege any facts showing that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect to her pending state-court child-custody proceeding. Thus, to the extent that Plaintiff asks this Court to intervene in that proceeding, the Court also dismisses those claims under the *Younger* abstention doctrine.

### 3. Anti-Injunction Act

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Thus, "any injunction against state court proceedings otherwise proper ... must be based on one of the specific statutory exceptions [in the Act] if it is to be upheld." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). State-court proceedings "should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately" the Supreme Court of the United States. *Id.* The Act "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977).

Plaintiff has alleged nothing to suggest that any of the exceptions to the Anti-Injunction Act's prohibition against federal-court intervention into state-court proceedings applies. The Court therefore additionally dismisses any of Plaintiff's claims in which she asks this Court to stay, or otherwise intervene in, her pending state-court child-custody proceeding under the Anti-Injunction Act.

### E. Leave to amend is denied

District courts generally grant *a pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Because the defects in Plaintiff's complaint (those mentioned in this order's Discussion, Sections "A" through "D") cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend her complaint. *See Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's

causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

The Court does not discount the seriousness of Plaintiff's allegations or the significant injury that Plaintiff may have experienced due to losing custody of her children. But if Plaintiff is to pursue any relief with regard to the custody of her children, she must seek such relief in the state courts.

### F. Warning

In light of Chief Judge Swain's June 15, 2021, order in *Curcio I*, this Court finds that Plaintiff is or should have been aware that her claims for damages in this action against Justice Grossman and Defendants Abrams and Roberts, arising from those defendants' actions associated with Plaintiff's previous and pending state-court divorce and child-custody proceedings, are nonmeritorious. *See Sledge v. Kooi*, 564 F.3d 105, 109-10 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements).

**\*8**  Accordingly, and because of this Order of Dismissal, the Court warns Plaintiff that if she brings further nonmeritorious litigation in this court against Justice Grossman, Defendant Abrams, or Defendant Roberts, arising from any of those defendants' actions associated with Plaintiff's previous or pending state-court divorce or child-custody proceedings, the Court may bar Plaintiff from filing any new civil action against any of those defendants in this Court, arising from those events, without first obtaining the Court's leave to file. *See* 28 U.S.C. § 1651.

### CONCLUSION

This action is DISMISSED for the reasons set forth above.

Chambers will mail a copy of this Order of Dismissal to plaintiff at the address on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of

an appeal. *See* ⚑ *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**All Citations**

Slip Copy, 2022 WL 767167

## Footnotes

1    In her complaint, Plaintiff reveals the full names and dates of birth of her minor children. Under Rule 5.2(a)(2) and (3) of the Federal Rules of Civil Procedure, however, references in court submissions to a minor child's full name may be made only by mentioning the child's initials, and references to a person's date of birth may be made only by mentioning the person's birth year. Accordingly, in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to the complaint to a "case-participant only" basis.

2    The Court also dismisses those claims, for failure to state a claim, for the same reasons that Chief Judge Swain dismissed them in her June 15, 2021, order in *Curcio I*. (*See* ECF 21 CV 4452, 6, at 5-6, 7-8).

3    Plaintiff will be provided copies of all unpublished opinions cited in this decision. See ⚑ *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

4    The Court also dismisses the following claims for the reasons articulated in Chief Judge Swain's June 15, 2021, order in *Curcio I*: (1) The Court dismisses Plaintiff's claims for damages under ⚑ Section 1983 against Justice Grossman, arising from his ongoing presiding over Plaintiff's child-custody proceeding, under the doctrine of judicial immunity and as frivolous; and (2) the Court dismisses Plaintiff's claims for damages under ⚑ Section 1983 against Defendants Abrams and Roberts, arising from their ongoing representation of Plaintiff's children or her ex-husband, for failure to state a claim because neither Abrams nor Roberts is a state actor when representing the children or Plaintiff's ex-husband. (*See* 21 CV 4452, 6, at 4-6.)

In addition, though not specifically asserted, to the extent that Plaintiff seeks injunctive relief against Justice Grossman, such claims must also be dismissed. Plaintiff cannot properly seek injunctive relief against Justice Grossman under ⚑ Section 1983 because that statute permits injunctive relief against a judge only if a declaratory decree was violated or declaratory relief is unavailable. ⚑ 42 U.S.C. § 1983. Here, Plaintiff may appeal Justice Grossman's decisions to the New York Supreme Court, Appellate Division, Second Department, and to the New York Court of Appeals. *See generally Berlin v. Meijias*, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

5    Plaintiff mistakenly asserts that the County of Putnam, a municipality, should be liable for the actions of Justice Grossman, a state-court judge. (ECF 1, at 2.)

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 54 of 108

Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)

2017 WL 5300009

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

Allen HERBERT, Plaintiff,

v.

CATTARAUGUS COUNTY, et al., Defendants.

17-CV-248S

|

Signed 11/13/2017

**Attorneys and Law Firms**

Christopher A. Spence, Olean, NY, for Plaintiff.

Sean William Costello, Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, Christopher L. Boyd, NYS Attorney General's Office, Buffalo, NY, for Defendants.

Donna Holiday, Franklinville, NY, pro se.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, United States District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Allen Herbert brings this suit seeking damages and injunctive relief under 42 U.S.C. § 1983, for alleged deprivations of his constitutional rights. Presently before this Court are Defendants' motions to dismiss, in which they argue that this Court lacks subject matter jurisdiction under Rule 12(b)(1), and that Plaintiff has failed to state a claim under Rule 12(b)(6). For the following reasons, Defendants' motions are granted and the Complaint is dismissed.

**II. BACKGROUND** [1]

Plaintiff, who is "of African and European descent" (Compl. ¶ 20), brings this civil suit against Defendants Cattaraugus County, Michael Nenno (retired Cattaraugus County Family Court Judge), Schavon Morgan (Support Magistrate for Cattaraugus County), Steven Miller (Assistant County Attorney for Cattaraugus County), and Donna Holiday (an employee of Cattaraugus County, who is also Plaintiff's

mother-in-law and the foster parent to Plaintiff's minor son). (Id. ¶¶ 5-10, 25.) Plaintiff alleges that Defendants incarcerated him and denied him access to his son due to racial animus.

Specifically, Plaintiff alleges that, although he was authorized visitation with his son by an order from the Cattaraugus County Family Court, Defendants have blocked visitation through his son's foster care placement. (Id. ¶¶ 25-26.) Plaintiff further alleges that the denial of visitation is a result of Defendants' racial animus, and that his incarceration was ordered in retaliation for his attempts to visit his son. (Id. ¶ 27.) Plaintiff does not make specific allegations of racism against any Defendant except Holiday, [2] but alleges generally that there is a history of discrimination against Americans of African descent, including separating African Americans from their children. (Id. ¶¶ 18-19.)

Although the timeline and procedural history are not clear from the Complaint, it appears that Defendant Morgan initially recommended Plaintiff be incarcerated for overdue child support payments at a hearing on June 1, 2015. (Id. ¶ 29.) Judge Ploetz of the Cattaraugus County Family Court (who is not named as a Defendant here) sentenced Plaintiff to six months incarceration on August 7, 2015, but stayed enforcement of the sentence for one year. (Id. ¶ 29.) Plaintiff alleges that, on December 10, 2015, [3] Defendants Holiday, Miller, and Cattaraugus County moved to re-open his case, seeking to impose incarceration and $50,293.84 [4] in arrears. (Id. ¶ 33.) Around the same time, "the parties"—presumably Plaintiff and Holiday—also consented to a new visitation order. (Id. ¶ 32.) Following a hearing on March 22, 2016, Judge Nenno sentenced Plaintiff to six-months incarceration, but found that the amount of unpaid child support was $320, not the larger amount allegedly demanded by Defendants. (Id. ¶ 35.) Plaintiff alleges that, although Judge Nenno signed the visitation order agreed by the parties in December 2015, that order was frustrated due to his incarceration. (Id. ¶¶ 35.) Plaintiff further alleges that Support Magistrate Morgan denied the petition to assess $50,293.84 in arrears and dismissed the petition under which he was incarcerated at the end of March 2016. (Id. ¶¶ 36-37.)

**\*2** Plaintiff completed his sentence on July 22, 2016, and contacted Holiday to visit his son per the controlling Family Court visitation order. (Id. ¶ 40.) Plaintiff alleges that Defendants "determined to recommence proceedings to incarcerate" him after he attempted to contact his son and, on September 2, 2016, petitioned for Plaintiff's reincarceration for failure to pay child support during the period of his

**Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)**

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 55 of 108

confinement. (Id. ¶¶ 41-42.) At a hearing on February 22, 2017, Defendant Miller, on behalf of defendants Cattaraugus County and Holiday, allegedly stated that Plaintiff should be incarcerated for failure to pay child support. (Id. ¶ 43.)

Finally, Plaintiff alleges that "Defendants were and are paid wages and employment benefits ... from United States Grants to New York State to fund public assistance to those unable to support their minor children." (Id. ¶ 44.) Plaintiff contends that Defendants have refused to assist him and denied him his constitutional rights, despite their obligation to assist non-custodial parents in visiting their children under the terms of the grants. (Id. ¶¶ 45-46.)

The Complaint names five causes of action: (1) that Plaintiff's First and Fourteenth Amendment rights to associate with his son were violated through Defendants' actions including prosecution and incarceration; (2) that his Fifth and Fourteenth Amendment rights to liberty were violated when he was incarcerated; (3) that his Fifth, Fourteenth, and Fifteenth Amendment rights to liberty were violated due to his race; (4) that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was denied liberty and access to his son; and (5), that Defendants' current prosecutions have denied him his Fifth and Fourteenth Amendment rights to be free from double jeopardy. The Complaint seeks compensatory damages, attorneys' fees, and equitable and declaratory relief against Defendants Cattaraugus County, Miller, and Holiday.

## III. DISCUSSION

Plaintiff's claims are brought under 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)). Defendants seek dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6), as well as sanctions and legal fees.

### A. Subject Matter Jurisdiction

To defeat a motion to dismiss brought under Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject

matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Where subject matter jurisdiction is lacking, the suit must be dismissed. Id. "Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on a challenge to a district court's subject matter jurisdiction, the court may also resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." Licci v. Lebanese Canadian Bank, SAL, 834 F.3d 201, 211 (2d Cir. 2016).

### 1. Rooker-Feldman

Defendants contend that the Complaint must be dismissed under the Rooker-Feldman doctrine, [5] which precludes district court review of state court judgments due to a lack of subject matter jurisdiction. Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir. 2004); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83-84 (2d Cir. 2005) ("Where a federal suit follows a state suit, the former may be prohibited by the so-called Rooker-Feldman doctrine in certain circumstances."). Named for two Supreme Court cases—Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983)—the doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." See Hoblock, 422 F.3d at 84. Because a federal statute, 28 U.S.C. § 1257, "vests authority to review a state court's judgment solely in th[e] [Supreme] Court," Rooker and Feldman held that district courts "lacked subject-matter jurisdiction" to hear cases seeking to "overturn an injurious state-court judgment." See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92, 125 S. Ct. 1517, 1526, 161 L.Ed. 2d 454 (2005).

**\*3** The Rooker-Feldman doctrine has four requirements: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites the federal court to review and reject that judgment; and (4) the state court judgment was rendered prior to the commencement of proceedings in the district court." Brodsky v. Carter, 673 Fed.Appx. 42, 43 (2d Cir. 2016). "Under Rooker-Feldman, a district court may not review a claim that is 'inextricably intertwined' with a state

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 56 of 108

Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)

court's judgment." Simpson v. Putnam Cty. Nat'l Bank of Carmel, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (quoting Feldman, 460 U.S. at 483 n.16); see also Dye v. Virts, No. 03-CV-6273L, 2004 WL 2202638, at *3 (W.D.N.Y. Sept. 28, 2004) ("[W]here a claim is so 'inextricably intertwined' with a state court judgment that 'federal relief can only be predicated upon a conviction that the state court was wrong' the Rooker-Feldman doctrine will defeat the court's jurisdiction over the claim.") (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L.Ed. 2d 1 (1987)).

"[I]n determining whether the doctrine applies, the key inquiry is whether the complaint alleges an injury caused by a state court judgment." Brodsky, 673 Fed.Appx. at 43. Here, the alleged injuries in Counts One, Two, and Four flow from orders entered in the Cattaraugus County Family Court, specifically the orders of incarceration. Although Plaintiff does not challenge the orders themselves, to address his claims and find that constitutional violations had been committed, this Court would be required to review and reject the Family Court's decision to incarcerate the Plaintiff. With respect to timing, the two orders of incarceration, which are dated August 7, 2015 and March 22, 2016, significantly precede the filing of this action on March 21, 2017. (See Compl. ¶¶ 26, 31, 33-38.)

Plaintiff argues that the Rooker-Feldman doctrine is inapplicable because "his prosecution itself is a violation of federal law." (Pl. Opp. at 7.) Plaintiff cites no precedent in support of this position, and the doctrine extends to bar § 1983 claims that are framed to, or in effect do, challenge the validity of a state court judgment. Brodsky, 673 Fed.Appx. at 43; Segreto v. Islip, No. 12-CV-1961(JS)(WDW), 2013 WL 572435 (E.D.N.Y. Feb. 12, 2013) (holding that recasting a complaint in the form of a civil rights action pursuant to § 1983 does not avoid the Rooker-Feldman bar). A federal plaintiff cannot "avoid Rooker-Feldman by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself." See Hoblock, 422 F.3d 77 at 87-88. Further, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." Gonzalez v. Ocwen Home Loan Servicing, 74 F. Supp. 3d 504, 517 (D. Conn.

2015), aff'd 632 Fed.Appx. 32 (2d Cir. 2016) (internal quotation marks omitted).

This Court finds that the requirements of the Rooker-Feldman doctrine are met as to Counts One, Two, and Four, and that Plaintiff's "clever pleading" cannot overcome that. Accordingly, because there is no subject matter jurisdiction over those claims, they must be dismissed. [6]

### 2. Younger Abstention

**\*4** The alleged constitutional violations in Count Five arise from ongoing Family Court proceedings and Defendants' alleged continued attempt to incarcerate Plaintiff. This Court finds that, although Count Five does not meet the Rooker-Feldman requirements because the Family Court proceedings are not yet final, this claim is nevertheless barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed. 2d 669 (1971). Younger abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gaines, 130 F. Supp. 3d 630, 635 (D. Conn. 2015). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " Id. at 636 (quoting Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588, 187 L.Ed. 2d 505 (2013)).

Several courts in this Circuit have held that Younger abstention applies in similar circumstances as this case. See id.; see also Graham v. N.Y. Ctr. for Interpersonal Dev., No. 15-CV-00459, 2015 WL 1120120, *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by Younger where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son); Moore v. Sims, 442 U.S. 415, 435, 99 S. Ct. 2371, 60 L.Ed. 2d 994 (1979) (family relations are a traditional area of state concern).

Because the issues in Count Five are still pending in the Family Court, this Court abstains from exercising jurisdiction pursuant to Younger. Accordingly, Count Five is also dismissed.

## B. Failure to State a Claim

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 57 of 108

Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)

Defendants have also moved for dismissal under Rule 12(b)(6). On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. 🚩 Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " 🚩 Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting 🚩 Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Count Three of Plaintiff's Complaint alleges that Plaintiff was unconstitutionally deprived of his right to liberty based upon Defendants' racial hatred. This alleged deprivation of liberty may be construed as independent from the challenges to Family Court's orders incarcerating Plaintiff, therefore, this claim may survive Rooker-Feldman. See In re Dayton, 786 F. Supp. 2d 809, 817 (S.D.N.Y. 2011) (finding that claims arising from actions that were not done pursuant to the final court order survived Rooker-Feldman).

### 1. Defendant Holiday

Holiday, proceeding *pro se*, has moved for dismissal of all the claims against her and for "sanctions and costs and fees associated" with her defense of the action. "It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." 🚩 Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation omitted). Here, Holiday contends that all of her interactions with Plaintiff have been on a "personal level" and that there are no allegations related to her work as an employee of the state.

Plaintiff alleges that he was incarcerated on the demand of defendant Holiday and that she blocked access to his son (see Compl. ¶¶ 25, 27), yet fails set forth any allegation that these actions were carried out under the color of state law or in Holiday's official capacity as an employee of the Department of Social Services Public Assistance Unit. Conclusory allegations that a defendant acted in concert with state officials do not suffice to state a 🚩 § 1983 claim against

a private actor. 🚩 Finnan v. Ryan, 357 Fed.Appx. 331, 333 (2d. Cir. 2009), *cert. denied*, 562 U.S. 952 (2011).

**\*5** Accordingly, because Plaintiff has not alleged that Holiday was acting under color of state law, see 🚩 Whalen, 126 F.3d at 405, the claims against her are dismissed. [7]

### 2. Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller

Defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller move for dismissal on the grounds of judicial and prosecutorial immunity. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." 🚩 Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Therefore, a judge is immune from all forms of suit unless he or she has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." 🚩 Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (quoting 🚩 Mireles v. Waco, 502 U.S. 9, 12, 112 S. Ct. 286, 288, 116 L.Ed. 2d 9 (1991)). In determining whether or not a judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.' " 🚩 Ceparano v. Southampton Justice Court, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting 🚩 Maestri v. Jutkofsky, 860 F.2d 50, 52 (2d Cir. 1998)).

"Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.' " Id. (quoting 🚩 Stump v. Sparkman, 435 U.S. 349, 362, 98 S. Ct. 1099, 1107, 55 L.Ed. 2d 331 (1978)). "Further, if the judge is performing in his judicial capacity, the judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. (quotations omitted). The doctrine of judicial immunity is applicable to actions brought pursuant to 🚩 42 U.S.C. § 1983. ⚠️ Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L.Ed. 2d 288 (1967).

Prosecutors are also immune from § 1983 actions arising from conduct that was an exercise prosecutorial functions. See, e.g., Imbler v. Patchman, 424 U.S. 409, 423, 96 S. Ct. 984, 991, 47 L.Ed. 2d 128 (1976). For such immunity to apply, the prosecutor must have been functioning as an advocate when he or she engaged in the challenged conduct, meaning that immunity attaches only as to actions within the scope of the judicial phase, and not to actions taken as an administrator or investigative officer that falls outside that scope. Warney v. Monroe County, 587 F.3d 113, 120-122 (2d. Cir. 2009) (citing Imbler, 424 U.S. at 430). Prosecutors are also immune from liability for their decision to prosecute. See Anilao v. Spota, 774 F. Supp. 2d 457, 480 (E.D.N.Y. 2011) (citing Hartman v. Moore, 547 U.S. 250, 261-62, 126 S. Ct. 1695, 164 L.Ed. 2d 441 (2006)). Further, "absolute immunity still applies where a prosecutor brought a case in violation of a defendant's constitutional rights but was otherwise acting within his role as an advocate." Id. at 488.

**\*6** Here, Plaintiff's claims against Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller arise solely from their conduct within their judicial and prosecutorial roles. Plaintiff alleges injuries arising from the Findings and Fact and Orders by Judge Nenno and Support Magistrate Morgan, as well as from the prosecutorial actions taken by Assistant County Attorney Miller. Plaintiff's argument that Support Magistrate Morgan is not eligible for judicial immunity is without merit. See Parent v. New York, 786 F. Supp. 2d 516, 533-34 (S.D.N.Y. 2011) (dismissing claims brought against both a judge and Support Magistrate as both parties had judicial immunity). His contentions of wrongdoing are also insufficient to defeat the motions to dismiss, as judicial immunity protects judges and prosecutors even from claims of malfeasance as long as they are acting within their jurisdiction. See Teichmann v. New York, 769 F.3d 821, 826 (2d Cir. 2014) (holding that the Plaintiff failed to state a claim to relief because the judge and district attorney whom Plaintiff asserted violated his constitutional rights were entitled to absolute immunity).

Accordingly, the claims against defendants Judge Nenno, Support Magistrate Morgan, and Assistant County Attorney Miller are dismissed.

### 3. Defendant Cattaraugus County

Finally, Defendant Cattaraugus County moves for dismissal pursuant to Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978). Under the standards set forth in Monell, a municipality can be held liable under § 1983 if a plaintiff can plead and prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); see also Connick v. Thompson, 563 U.S. 51, 60-61 (2011). Monell does not provide an independent separate cause of action against a municipality; rather, "it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006). A municipality can be held liable for actions taken pursuant to its policies, pursuant to custom, or for "practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d. Cir. 2012) (citing Monell, 436 U.S. at 691).

To successfully state a claim for municipal liability under Monell, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Barnes v. Cty. of Monroe, 85 F. Supp. 3d 696, 718 (W.D.N.Y. 2015). Here, the only policy or custom identified by Plaintiff is a passing reference to the state of New York and Cattaraugus County's receipt of funding under 42 U.S.C. § 607 (Grants to States with Child Welfare Services ("GSGC")), and an allegation that Defendants have failed to assist him as a non-custodial parent, despite their obligations to do so under the GSGC. [8] (Compl. ¶¶ 44-46.) Plaintiff therefore fails to make factual allegations that his constitutional rights were violated pursuant to an official course of action in the form of a policy or custom, or even that Cattaraugus County maintains a policy or custom based upon receipt of GSCS funds. See Finnan, 357 Fed.Appx. at 333 (finding that plaintiff failed to allege a governmental custom or policy sufficient to make the defendant County liable, therefore, the claims against the County were properly dismissed for failing to state a claim). Further, Plaintiff fails

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 59 of 108

Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)

to put forth facts sufficient to create a plausible inference that Cattaraugus County's receipt of GSCS funding defendant did, or would, create a policy or custom that could injure Plaintiff and deny him his constitutional rights. See Montalvo v. Lamy, 139 F. Supp. 3d 597, 609 (W.D.N.Y. 2015) (finding the policy identified by Plaintiff did not violate a constitutional right and, therefore, held that Plaintiff's Monell claim must be dismissed for failure to allege an underlying constitutional violation).

 **\*7**  Accordingly, because the allegations in the Complaint are not sufficient to state a claim under Monell, the claim against Cattaraugus County must be dismissed.

### C. **Defendants' Requests for Fees**

Defendants Holiday, Judge Nenno, and Support Magistrate Morgan have requested attorneys' fees under 42 U.S.C. § 1988(b); Holiday also requests sanctions. Section 1988 states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." When the prevailing party is the defendant, as here, attorneys' fees may be recovered if the underlying action was "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." Davidson v. Keenan, 740 F.2d 129, 132 (2d Cir. 1984) (quotation omitted). The Second Circuit has found denial of fees appropriate where a "plaintiff[ ] had some foundation, albeit a weak one, to bring [the] claim." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004). Here, although this Court has found no jurisdiction or merit in these causes of action, it finds that they are not entirely frivolous or unreasonable.

Moreover, the request is premature and fails to comply with the relevant rules. See Bartels v. Inc. Vill. of Lloyd Harbor, No. 10 CV 5076 PKC, 2015 WL 4459403, at *1 (E.D.N.Y. July 21, 2015) (denying award of fees because, inter alia, prevailing defendant had failed to comply with Fed. R. Civ. P. 54(d)(2)(B)). Accordingly, this Court exercises its discretion to deny Defendants' requests for fees and sanctions.

### IV. CONCLUSION

For the reasons stated above, Defendants' motions are granted and the Complaint is dismissed. Counts One, Two, and Four are dismissed for lack of subject-matter jurisdiction under Rooker-Feldman. Count Five is dismissed under the Younger abstention doctrine. Count Three is dismissed for failure to state a claim. To the extent that Defendants seek other remedies, including sanctions and attorneys' fees, their motions are denied.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendants Schavon Morgan and Michael Nenno's motion to dismiss (Docket No. 7) is GRANTED;

FURTHER, that Defendants Cattaraugus County and Steven Miller's motion to dismiss (Docket No. 8) is GRANTED;

FURTHER, Donna Holiday's motion to dismiss (Docket No. 10) is GRANTED;

FURTHER, that all requests for fees or sanctions are DENIED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5300009

---

### Footnotes

1        For the sake of brevity and clarity, this Court recites only those facts pertinent to the pending motions.

Herbert v. Cattaraugus County, Not Reported in Fed. Supp. (2017)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 60 of 108

2  Plaintiff alleges that Holiday referred to her own daughter—Plaintiff's estranged wife, who is also "of African and European descent"—by a racially disparaging term. (Id. ¶¶ 22-23.)

3  The Complaint states that this took place in December 2016, but context suggests that this took place in 2015, prior to Plaintiff's initial incarceration in March 2016. (Compare Compl. ¶ 33 and ¶ 35.)

4  Plaintiffs alleges that he owed only $320. (Id. ¶ 27.)

5  "Because the Rooker-Feldman doctrine implicates the subject matter jurisdiction of the District Court, the doctrine's application" should be analyzed first. 🚩Fraccola v. Grow, 670 Fed.Appx. 34, 35 n. 1 (2d Cir. 2016) (internal citation omitted).

6  This Court notes that Rooker-Feldman "does not bar federal adjudication of a general constitutional challenge to a state law or rule." 🔺Dubin v. Cty. of Nassau, No. 16CV4209JFBAKT, 2017 WL 4286613, at *6 (E.D.N.Y. Sept. 27, 2017) (citing 🚩Feldman, 460 U.S. at 482-85) (distinguishing "between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission" and holding that a federal district court has jurisdiction over the former claim); Feng Li v. Rabner, 643 Fed.Appx. 57, 59 (2d Cir. 2016) ("As to the court's Rooker-Feldman ruling, this doctrine does not apply to Li's challenge to the constitutionality of the state court rule."). However, in Counts One, Two, and Four, the challenge is specifically aimed at how the law was applied to the Plaintiff, and not at the law itself.

7  Further, Plaintiff made no argument opposing Holiday's motion. This Court therefore deems the claims against Holiday to be abandoned. See 🚩Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); Bonilla v. Smithfield Assoc. LLC, 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims).

8  Plaintiff presents additional theories and allegations in his Opposition to the Motions to dismiss. However, these new allegations cannot be considered because "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." 🚩Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.  7

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 61 of 108

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 **\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint;

(5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 63 of 108

**Brown v. Peters, Not Reported in F.Supp. (1997)**

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 64 of 108

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. See LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing Ortiz v. Cornette, 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. See Christopher v. Laidlaw Transit, Inc. 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. Id., (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. Id. Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under 🚩 Rule 12(b)(6), 🚩 *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩 *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩 § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩 *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996);  🚩 *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) ( 🚩 section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩 § 1983. 🚩 *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩 § 1983. 🚩 *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 66 of 108

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3228272

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Albert OLIVER, Plaintiff,

v.

Ayesha PUNTER, Meridith Lafler, Support Magistrate; Harmon Lutzer, Attorney; Steve Bellone, Suffolk County Executive; SCCSEB, Defendants.

22-CV-3580(GRB)(LGD)

|

Signed August 10, 2022

**Attorneys and Law Firms**

Albert Oliver, Huntington Sta., NY, Pro Se.

## ORDER

GARY R. BROWN, United States District Judge:

**\*1** On June 16, 2022, *pro se* plaintiff Albert Oliver ("plaintiff") filed a complaint in this Court against Ayesha Punter ("Punter"), Meridith Lafler ("Lafler"), Harmon Lutzer ("Lutzer"), Suffolk County Executive "Steve Bellone" ("Bellone"), and "SCCSEB" [1] (collectively, "defendants") using the Court's form for civil rights actions brought pursuant to 42 U.S.C. § 1983. *See* Docket Entry "DE" 1. Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") together with the complaint. DE 2.

Upon review, the Court finds that plaintiff is qualified by his financial status to commence this action without prepayment of the filing fee. Accordingly, plaintiff's application to proceed IFP is granted. However, for the reasons that follow, the complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) and 28 U.S.C. §§ 1915(e)(2)(B).

## BACKGROUND

**1. Summary of the Complaint** [2]

*Pro se* plaintiff's brief submission seeks to challenge an underlying state court child support proceeding. According to

the complaint, at the Family Court building located in Central Islip, New York:

> On April 26, 2022 both Support Magistrate Meridith Lafler and Attorney Harmon Lutzer held a support hearing without following the rules of Due Process. On May 25, 2022, Support Magistrate Meridith Lafler disregarded Due Process by not following the rules of Due Process.

DE 1 at 5, ¶ III. Although plaintiff left the space on the form complaint that calls for a description of any injuries suffered as a result of the challenged conduct blank, he seeks to recover a monetary damages award in the sum of $240,222.00 as well as an order terminating any debts or arrears owed and the return of funds he already paid together with 6% interest. *Id.* at 6, ¶¶ IV-V. Plaintiff also requests that the defendants "[l]eave me alone from this forthwith." *Id.* at ¶ V.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether plaintiff qualifies for *in forma pauperis* status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### 1. *In Forma Pauperis*

Upon review of the IFP application, the Court finds that plaintiff is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the application to proceed IFP (DE 2) is granted.

### 2. Sufficiency of the Pleadings

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

**\*2** It is axiomatic that district courts are required to read *pro se* complaints liberally, *see* Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them " 'to raise the strongest arguments that [they] suggest [ ].' " Chavis, 618 F.3d at 170 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 123 (2d Cir. 2010), *aff'd,* —— U.S. ——, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord* Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests,"

Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

Patrick v. Bronx Care, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id.* The Court analyzes plaintiff's Section 1983 claims below.

### I. Lack of State Action

"[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013). Although plaintiff names Punter and Lutzer as defendants, he has not alleged that either defendant is a state actor or has otherwise acted under color of state law. *See* DE 1, *in toto.* Accordingly, plaintiff has not plausibly alleged a

Section 1983 claim against Punter and Lutzer and these claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### II. Lack of Personal Involvement

 **\*3**  Plaintiff's sparse complaint does not include any factual allegations of conduct or inaction attributable to any of the defendants. Indeed, apart from the caption and "Parties" section of the complaint, Punter, Bellone, and SCCSEB are not again mentioned. *See* DE 1, *in toto*. Moreover, plaintiff has alleged only that Lafler and Lutzer "held a Support Hearing without following the rules of Due Process." *Id.* at 5, ¶ III.C.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Rather, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d. 609, 620 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Here, as is readily apparent, Plaintiff has omitted any factual allegations of conduct or inaction attributable to any defendant and his "bald assertions and conclusions of law" do not suffice. Thus, in the absence of any alleged personal involvement by any defendant, plaintiff has not set forth a plausible Section 1983 claim against them. Thus, plaintiff's Section 1983 claims are not plausible and are thus dismissed without prejudice for failure to state a claim

upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### III. The Domestic Relations Exception

Even if Plaintiff had alleged the personal involvement of each defendant, this Court could not adjudicate his claims challenging an underlying state court child support proceeding. The domestic relations exception to federal jurisdiction " 'divests the federal courts of power to issue divorce, alimony and child custody decrees.' " *Stumpf v. Maywalt*, No. 21-CV-06248(EAW), 2022 WL 2062613, at \*4 (W.D.N.Y. June 6, 2022) (quoting *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (citation omitted)). This exception also extends to child support determinations and the enforcement thereof. *See*, *e.g.*, *Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau*, 07-CV-03755(JFB)(AKT), 2009 WL 580426, at \*6-7 (E.D.N.Y. Mar. 5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment"); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) (plaintiff's constitutional claims, which were directly related to an underlying child support determination, were barred by the domestic relations exception because "to decide the instant case, this Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings," which "is the role of the Appellate Division ... not the role of this Court."). Thus, the domestic relations exception divests the Court of subject matter jurisdiction to adjudicate plaintiff's Section 1983 claims. Accordingly, they are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3). [3]

### IV. Leave to Amend

 **\*4**  The Second Circuit has held that "[d]istrict courts should generally not dismiss a *pro se* complaint without permitting at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Where a complaint has been dismissed for lack of subject matter jurisdiction, denial of leave to amend on the basis of futility may be appropriate. *Rahim v. Secretary, Establishment Div.*,

*Gov't of People's Republic of Bangl.*, 481 F. App'x 18, 19 (2d Cir. 2012) (affirming district court's dismissal of *pro se* plaintiff's complaint without leave to amend where complaint was dismissed for lack of subject matter jurisdiction).

Here, leave to amend would be futile given that the domestic relations exception divests this Court of subject matter jurisdiction. Accordingly, leave to amend the complaint is denied.

## CONCLUSION

Based on the foregoing, plaintiff's application to proceed IFP is granted. The complaint is dismissed without prejudice pursuant to 🚩 Federal Rule of Civil Procedure 12(h)(3) and 🚩 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Leave to further amend the complaint is denied. The Court certifies pursuant to 🚩 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See* 🚩 *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

**All Citations**

Slip Copy, 2022 WL 3228272

## Footnotes

1    The Court understands this to reference the Suffolk County Child Support Enforcement Bureau.

2    Excerpts from the complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

3    It also appears that plaintiff is challenging state court judgments rendered in April and May 2022, well before the complaint was filed in this Court on June 16, 2022. Thus, the *Rooker-Feldman* doctrine would also require this Court to decline plaintiff's invitation to review and reject those state court judgments. *Stumpf*, 2022 WL 2062613, at 4 n. 4 ("The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (internal quotation marks omitted)); *Fernandez v. Turetsky*, No. 12-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases).

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2816287
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

John HEDRICH, Plaintiff,

v.

Amanda FOWLER, et al., Defendants.

20-CV-21-LJV-LGF
|
Signed July 19, 2022

**Attorneys and Law Firms**

John Hedrich, Machias, NY, Pro Se.

Sean William Costello, Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, Buffalo, NY, for Defendants.

DECISION & ORDER

LAWRENCE J. VILARDO, UNITED STATES DISTRICT JUDGE

**\*1** On January 8, 2020, the *pro se* plaintiff, John Hedrich, filed this action alleging "multiple violations of [his] rights under the Fourth, Fifth[,] and Fourteenth Amendments"; 18 U.S.C. § 1509; New York State Penal Law § 215.50; and "[section] 1026[ ] of the [New York] Family Court Act." Docket Item 1 at 3, 9. On April 10, 2020, the defendants moved to dismiss Hedrich's claims. Docket Item 12. On May 28, 2020, Hedrich responded to that motion, Docket Item 15, and on June 5, 2020, the defendants replied, Docket Item 16.

In the meantime, on April 14, 2020, this Court referred this case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 13. On June 9, 2022, Judge Foschio issued a Report and Recommendation ("R&R") finding that the defendants' motion should be granted. Docket Item 17. The parties did not object to the R&R, and the time to do so now has expired. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). But neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised. *See* *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).

Although not required to do so in light of the above, this Court nevertheless has reviewed Judge Foschio's R&R as well as the parties' submissions to him. Based on that review and the absence of any objections, the Court accepts and adopts Judge Foschio's recommendation to grant the defendants' motion to dismiss.

As Judge Foschio explained, this Court cannot order the defendants to "revert[ ]" Hedrich's custody order to its prior terms, nor can this Court award damages "for days [Hedrich] loses with his daughters under the modified order." Docket Item 1 at 11. By asking for such relief, Hedrich invites this Court to review and reject a state court judgment. And for the reasons outlined in the R&R, the *Rooker-Feldman* doctrine precludes this Court from doing exactly that. *See* Docket Item 17 at 7-10; *see also* *Stumpf v. Maywalt*, 2022 WL 2062613, at \*4 n.4 (W.D.N.Y. June 6, 2022) ("The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (internal quotation marks omitted)).

Hedrich's remaining claims are subject to dismissal as well. [1] To the extent that Hedrich "requests that the [d]efendants be charged and prosecuted" under 18 U.S.C. § 1509 and New York Penal Law § 215.50, *see* Docket Item 1 at 11, he seeks relief that this Court cannot order. *See* Docket Item 17 at 20 (noting that generally "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another" (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))). Nor has Hedrich explained how he can sue the defendants directly under section 1026(c) of the New York Family Court Act. *See id.* at 21.

**\*2** Moreover, as Judge Foschio explained, any alleged Fourth Amendment claim belongs to Hedrich's children, not

to him. *See* *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent...."). And because Hedrich is proceeding *pro se*, he cannot assert that claim on behalf of his children. *See* *Johnson v. City of New York*, 2021 WL 4479384, at *3 (S.D.N.Y. Sept. 30, 2021) ("[S]ince Fourth Amendment rights are personal rights, a parent proceeding *pro se* [may] not vicariously assert a Fourth Amendment-based claim....").

Hedrich's *Monell* claims, *see* *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), fare no better. As Judge Foschio correctly concluded, Hedrich's claims cannot proceed against Cattaraugus County Child Protective Services. *See* Docket Item 17 at 21-22. And in addition, Hedrich has not alleged any facts demonstrating how "policies or customs that were sanctioned by [Cattaraugus County] led to the alleged constitutional violation[s]" of the complaint. *See* *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (alterations and internal quotation marks omitted).

Finally, Hedrich has failed to state a procedural or substantive due process claim.[2] The basis of Hedrich's procedural due process claim appears to be that the defendants should have obtained judicial approval under New York Family Court Act § 1026(c) when Hedrich's children were placed with their mother in January and April 2019. *See* Docket Item 1 at 9 ("Yet in neither case did CPS take this necessary step that would have resulted in their actions being brought in front of a judge."); *see also id.* (citing N.Y. Family Court Act § 1026(c)). But section 1026(c) apparently did not apply when those decisions were made because Hedrich's children were not taken into state custody. *See* N.Y. Family Court Act § 1024 ("[A] designated employee of a city or county department of social services shall take all necessary measures to protect a child's life or health including, when appropriate, taking or keeping a child in protective custody[ ]...."); *id.* § 1026(c) (outlining procedures that apply to "emergency removal pursuant to section one thousand twenty-four"); *cf.* *Gottlieb v. County of Orange*, 84 F.3d 511, 522 (2d Cir. 1996) (noting that an agency "must promptly seek court approval" when it "takes the child into its own custody" but

that "[t]here are sound policy reasons for not imposing such a requirement automatically" in other circumstances). And while the relocation of Hedrich's children undoubtedly caused him distress, this Court accepts and adopts Judge Foschio's conclusion that Hedrich has not alleged state action that was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Southerland*, 680 F.3d at 152.

For all those reasons, all of Hedrich's claims are subject to dismissal.[3] Nevertheless, this Court grants him leave to amend his *Monell* and Fourteenth Amendment due process claims. *See* *Shibeshi v. City Univ. of N.Y.*, 531 F. App'x 135, 136 (2d Cir. 2013) (summary order) ("[D]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend...."). Hedrich also may amend his complaint to assert a Fourth Amendment claim on behalf of his children, but he must retain an attorney if he wants to bring that claim. Hedrich's remaining claims are dismissed without leave to amend because any amendment would be "futile." *See* *Cuoco*, 222 F.3d at 112.

**\*3** For the reasons stated above and in the R&R, the defendants' motion to dismiss, Docket Item 12, is GRANTED in part, and the remainder of the defendants' motion to dismiss will be granted unless Hedrich files an amended complaint correcting the deficiencies noted above within 45 days of the date of this order. The defendants may answer, move against, or otherwise respond to any amended complaint within 30 days of its filing. If Hedrich does not file an amended complaint within 45 days, then his complaint will be dismissed, and the Clerk of the Court shall close this case without further order. If Hedrich's complaint is dismissed, the Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 2816287

## Footnotes

1   Because this Court agrees with Judge Foschio that Hedrich's remaining claims are subject to dismissal, it does not address whether those claims are barred by *Rooker-Feldman*, *Younger*, or the domestic-relations exception. And because none of those grounds for dismissal implicate this Court's jurisdiction under Article III, this Court need not pass on those questions. *See Butcher v. Wendt*, 975 F.3d 236, 244 (2d Cir. 2020) ("[T]he *Rooker-Feldman* doctrine does not implicate Article III jurisdiction."); *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (nor does *Younger*); *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995) (nor does the domestic-relations exception); *see generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

2   Hedrich's due process claims arise under the Fourteenth Amendment. For the reasons stated in the R&R, Hedrich's Fifth Amendment claims are dismissed without leave to amend because any amendment would be "futile." *See* Docket Item 17 at 18; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

3   Because Hedrich's claims are subject to dismissal for the reasons stated above, this Court does not pass on whether his claims also would be barred by qualified immunity.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 74 of 108

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

2019 WL 981850
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,
v.
SYRACUSE POLICE
DEPARTMENT, et al., Defendants.

Civil Action No. 5:18-CV-1471 (GTS/DEP)
|
Signed 01/07/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: Jeramie White, Pro se, 18-B-0311, Cayuga Correctional Facility, P.O. Box 1186, Moravia, NY 13118.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1**  This is a civil rights action brought by *pro se* plaintiff Jeramie White, a New York State prison inmate, pursuant to 42 U.S.C. § 1983, against the Syracuse Police Department ("SPD") and five of its officers. In his complaint, plaintiff alleges that defendants violated his constitutional rights during the course of his arrest on February 13, 2017. Plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP") have been referred to me for review. Based upon my consideration of those materials, I will (1) grant plaintiff's amended IFP application, (2) recommend dismissal of his claim against the SPD with leave to replead, and (3) recommend that his complaint otherwise be accepted for filing.

I. BACKGROUND

Plaintiff commenced this action on or about December 20, 2018. Dkt. No. 1. According to plaintiff, he and two friends were on their way to play indoor basketball when their vehicle was pulled over for a traffic infraction. *Id.* at 4; Dkt. No. 1-1 at 4. Plaintiff alleges that after the stop, defendant William Kittle forcibly removed White from the vehicle and that Kittle, in addition to defendants Abraham Mamoun and Shawn Hauck, proceeded to use excessive force against him during the course of his arrest. Dkt. No. 1 at 4-5, 6-7; *see also* Dkt. No. 1-1 at 4, 8. Plaintiff further alleges that defendants Altimonda

and Fiorini were present and had an obligation to intervene and prevent the unlawful use of force, but failed to do so. *Id.* at 5, 7.

Plaintiff was ultimately arrested and charged with resisting arrest, in violation of N.Y. Penal Law § 205.30, and second-degree obstruction of governmental administration, in violation of N.Y. Penal Law § 195.05. Dkt. No. 1-1 at 4. As relief, plaintiff seeks compensatory and punitive damages in the amount of $1,000,000. Dkt. No. 1 at 8.

A. Plaintiff's Amended IFP Application [1]
When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [2] Because I conclude that plaintiff meets the requirements for IFP status, his amended application for leave to proceed without prepayment of fees is granted. [3]

B. Sufficiency of Plaintiff's Complaint

1. Governing Legal Standard

 **\*2**  Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, 28 U.S.C. § 1915A(b) directs a court to review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("We

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 75 of 108

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

have found both sections [1915 and 1915A] applicable to prisoner proceedings *in forma pauperis*.").

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' "

*Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

## 2. Analysis of Plaintiff's Claims

**\*3** Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.*, 879 F. Supp. 148 (S.D.N.Y. 1995) ); *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *see also Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department."). Although I would ordinarily recommend that, for the sake of judicial efficiency, the court substitute the City of Syracuse in place of the SPD, plaintiff's complaint contains no factual allegations that would support a *Monell* claim against the City of Syracuse. Accordingly, I recommend dismissal of plaintiff's claims asserted against the SPD.

With respect to his remaining claims, although plaintiff makes passing reference to his rights arising under the Eighth and

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 76 of 108

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Fourth Amendments, *see* Dkt. No. 1 at 6, it is clear from the factual allegations that he is asserting claims for excessive force and the failure to intervene arising under the Fourth Amendment. *See generally* Dkt. No. 1; *see also* Edrei v. Maguire, 892 F.3d 525, 533 (2d Cir. 2018) ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures."). In light of the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and the individual officer defendants should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure.[4]

### C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branman v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also* Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); *see also* Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, while I recommend dismissal of plaintiff's claim against the SPD, plaintiff could potentially amend his complaint to assert a cognizable cause of action against a defendant, such as the City of Syracuse, which is amenable to suit. Accordingly, I recommend that plaintiff be granted leave to amend his complaint. If plaintiff chooses to file an amended complaint, he must clearly and concisely set forth the facts

that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See* Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

## II. SUMMARY, ORDER, AND RECOMMENDATION

**\*4** Having reviewed plaintiff's amended application for leave to proceed in this action IFP, I conclude that he has met the applicable requirements for leave to proceed without prepayment of fees, and will therefore grant his application. Turning to the merits of his complaint, to the extent that it names five police officers and alleges a violation of 42 U.S.C. § 1983, I conclude that those claims are not subject to dismissal at this procedural juncture. I recommend a finding, however, that plaintiff's claim against the SPD is legally deficient and subject to dismissal, but that plaintiff should be afforded an opportunity to amend with respect to that claim. Accordingly, it is hereby

ORDERED that plaintiff's amended application for leave to proceed in this action without prepayment of fees (Dkt. No. 6) is GRANTED; and it is further

ORDERED that plaintiff's original application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is DENIED as moot; and it is further

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be accepted for filing with respect to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini; and it is further

RECOMMENDED that plaintiff's remaining cause of action against the Syracuse Police Department be otherwise DISMISSED with leave to replead within thirty days of the issuance of an order adopting this recommendation; and it is further

RECOMMENDED that, in the event plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 77 of 108

to plaintiff's Fourth Amendment cause of action against defendants Mamoun, Kittle, Hauck, Altimonda, and Fiorini.

NOTICE: Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 🚩 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; 🚩 *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 981850

## Footnotes

1    Plaintiff filed both an original and amended motion to proceed in this action IFP. Dkt. Nos. 2, 6. While the two motions contain slightly different information concerning plaintiff's financial status, only the amended motion contains the required certification from an official at the correctional facility in which plaintiff is confined. *Compare* Dkt. No. 3 *with* Dkt. No. 7. Accordingly, plaintiff's original IFP application is denied as incomplete.

2    The total cost for filing a civil action in this court is $400.00, consisting of the civil filing fee of $350.00, *see* 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate granted IFP status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. *See* 🚩 28 U.S.C. § 1915(b)(3).

3    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

4    The court expresses no opinion concerning whether plaintiff's claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.

5    If you are proceeding *pro se* and are served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 6685476
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kylie Ann TURCZYN, Deceased, by and through
Barbara McGREGOR, as Administratrix of
the Estate of Kylie Ann Turczyn, Plaintiff,

v.

CITY OF UTICA et al., Defendants.

No. 6:13–cv–1357 (GLS/ATB).
|
Signed Nov. 26, 2014.

**Attorneys and Law Firms**

Office of Frank Policelli, Frank Policelli, Esq., of Counsel,
Utica, NY, for the Plaintiff.

City of Utica—Corporation Counsel, Mark C. Curley, Esq.,
Merima Smajic, Esq., Zachary C. Oren, Esq., of Counsel,
Utica, NY, for the Defendants.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff Kylie Ann Turczyn, deceased, by and through
Barbara McGregor, as administratrix of the estate of Kylie
Ann Turczyn, commenced this action against defendants
City of Utica, City of Utica Police Dept., and Elizabeth
Shanley alleging substantive due process claims pursuant to
42 U.S.C. § 1983 and separate state law causes of action.
(Am.Compl., Dkt. No. 12.) Pending is defendants' motion
to dismiss for failure to state a claim. (Dkt. No. 19.) For the
reasons that follow, the motion is granted in part and denied
in part.

### II. *Background*

#### A. *Facts* [1]

Shanley, an Oneida County domestic violence investigator,
was at all relevant times assigned by the Police Department to

accomplish the goals of reducing "occurrence[s] of domestic
violence by increasing reporting and by identifying and
tracking repeat victims and/or offenders," and "increas[ing]
victims' access to supportive services by encouraging [them]
to report their abuse, thereby increasing arrest rates for
domestic offenders." (Am.Compl.¶ 10.) On June 22, 2012,
Thomas Anderson, Turczyn's former boyfriend and the father
of her daughter, broke into Turczyn's home armed with a 9
mm rifle. (*Id.* ¶ 11) Anderson repeatedly shot Turczyn, taking
her life in view of their four-year-old daughter, G.T. (*Id.*)
Anderson then dispatched himself. (*Id.*)

In the twelve months preceding this horrific event, Turczyn
made between five and ten complaints to Utica police
officers, "including informing them of a specific threat by
Anderson to kill her." (*Id.* ¶ 12.) Turczyn specifically told
Shanley "that Anderson was armed and had threatened to
kill her." (*Id.* ¶ 12(d).) Despite their knowledge of domestic
violence between Turczyn and Anderson, neither Shanley,
New York State Police, nor Utica Police took any steps to
arrest Anderson, investigate Turczyn's complaints, or follow-
up with Anderson "as is the policy and protocol of the
domestic violence unit." (*Id.* ¶ 14.)

On June 18, 2012, Shanley told Turczyn to seek an order of
protection, which she attempted to do, but was told by an
unknown person at the Oneida County Family Court to return
the following day because the court was " 'too busy.' " (*Id.*
¶¶ 15–16.) The following day, Turczyn left a voice message
for Shanley, explaining that she was unable to obtain an order
of protection and that Anderson had a gun and planned to
kill her that week. (*Id.* ¶¶ 16–18.) Despite her knowledge,
"Shanley took no action." (*Id.* ¶ 17.) Shanley also mistakenly
believed that Turczyn's issues with Anderson were outside of
the purview of Utica Police and should, instead, be dealt with
by New York State Police; however, "she did not inform any
other police agency or take any action herself." (*Id.* ¶¶ 18, 19,
20.)

#### B. *Procedural History*

Turczyn commenced this action by filing a complaint on
October 31, 2013. (Dkt. No. 1.) Defendants thereafter moved
to dismiss, (Dkt. No. 10.) In response, Turczyn filed an
amended complaint as of right, which is now the operative
pleading. (*See generally* Am. Compl.) In her amended
complaint, Turczyn alleges the following causes of action:
(1) a denial of substantive due process rights under the Fifth
and Fourteenth Amendments due to deliberate indifference;

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 79 of 108

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

(2) a *Monell* [2] claim against the City; (3) negligence; (4) a "derivative action" on behalf of G.T.; and (5) negligent infliction of emotional distress. (*Id.* ¶¶ 37–74.) Defendants now move to dismiss the amended pleading pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 19.)

### III. *Standard of Review*

**\*2**  The standard of review under Fed.R.Civ.P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N.D.N.Y.2010).

### IV. *Discussion*

#### A. *Preliminary Matters*

At the outset, it is noted that some of Turczyn's claims are deemed abandoned by her failure to oppose their dismissal. *See Barmore v. Aidala,* 419 F.Supp.2d 193, 201–02 (N.D.N.Y.2005) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (internal citations omitted)); *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F.Supp.2d 710, 723 (S.D.N.Y.2005) ("[B]ecause [the] plaintiff did not address [the] defendant's motion to dismiss with regard to [a particular] claim, it [wa]s deemed abandoned and ... dismissed."). In particular, Turczyn squarely opposed dismissal of her substantive due process claim as against Shanley, (Dkt. No. 20 at 8–12), and scarcely, but sufficiently to save the claim from dismissal for abandonment, offered reasons why her substantive due process claim as against the City should survive defendants' motion, (*id.* at 5–7). Aside from the substantive due process claim, Turczyn failed to offer any opposition to defendants' motion, which also sought dismissal of her pendant causes of action. (Dkt. No. 19, Attach. 6 at 31–40 & n. 15.) Accordingly, Turczyn's pendant state law claims, (Am.Compl.¶¶ 59–74), are dismissed.

Additionally, it is clear that the Police Department must be dismissed as urged by defendants, (Dkt. No. 19, Attach. 6 at 2 n. 2), because "a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence." *Varela v. City of Troy,* No. 1:10–cv–1390, 2014 WL 2176148, at \*6 (N.D.N.Y. May 22, 2014) (internal quotation marks omitted). As such, all claims as against the Police Department are dismissed.

The court also notes that both parties have submitted certain evidence that is outside of the pleadings (Dkt. No. 19, Attachs. 3, 4; Dkt. No. 20, Attachs. 1, 2.) Beginning with defendants, they submitted a January 2, 2013 stipulation of discontinuance, which, on its face, purports to memorialize McGregor's agreement to withdraw the notice of claim filed on behalf of Turczyn and to discontinue with prejudice, (Dkt. No. 19, Attach.3), and a December 28, 2012 letter, which appears to memorialize a conversation regarding the discontinuation of legal action and execution of a stipulation, (Dkt. No. 19, Attach.4). Relying on a single out-of-Circuit decision, *see Raines v. Haverford Coll.,* 849 F.Supp. 1009, 1010 (E.D.Pa.1994), which does not appear directly to support their position nor does it give this court confidence that the kinds of documents at issue here were contemplated by that decision, defendants assert that the documents may be considered on their motion to dismiss as "part of the record of this case." (Dkt. No. 19, Attach. 6 at 25 n. 11.) Turczyn argues that defendants' reliance on the stipulation is inappropriate at this juncture, yet she offers the affidavit of McGregor, submitted to dispute the validity of the stipulation, (Dkt. No. 20, Attach.1), without any explanation as to why the court should or may consider it. (Dkt. No. 20 at 12–13.)

**\*3**  The court has excluded from its consideration of this motion to dismiss the exhibits offered by defendants as well as the McGregor affidavit. *See* Fed.R.Civ.P. 12(d). The existence of some document or documents that may extinguish a plaintiff's claims, such as a release or stipulation of discontinuance, is an affirmative defense, *see Beede v. Stiefel Labs., Inc.,* No. 1:13–cv–120, 2014 WL 896725, at \*3 (N.D.N.Y. Mar.6, 2014), and " '[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) ... if the defense appears on the face of the complaint,' " *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.,* 620 F.3d 137, 145 (2d Cir.2010) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)).

Here, the stipulation defense is not apparent from the face of the amended complaint. Moreover, the court refuses to consider the documents in question as part of the record of this case, a proposition for which no in-Circuit authority has

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 80 of 108

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

been offered nor has any been discovered by this court. As such, the documents offered by defendants, (Dkt. No. 19, Attachs.3, 4), are not properly before the court, and their argument that Turczyn's claims must be dismissed because of those documents is rejected. McGregor's affidavit, (Dkt. No. 20, Attach.1), which was also improvidently submitted for consideration, is likewise excluded. The court now turns to the merits of defendants' arguments regarding the substantive due process and *Monell* claims.

**B.** *Rule 8*

First, defendants argue that Turczyn's § 1983 due process claim is subject to dismissal under the Rule 8 plausibility analysis—specifically because of Turczyn's failure to allege facts supportive of a sufficient nexus between Shanley's omissions and Turczyn's death. (Dkt. No. 19, Attach. 6 at 23–24.) The court disagrees. The amended complaint plausibly alleges a causal connection between the conduct of defendants—their alleged conscience-shocking failure to protect Turczyn, (Am.Compl.¶ 49)—and her injuries, *i.e.,* the allegations plausibly suggest that defendants' acts were a substantial factor in bringing about Turczyn's injuries. *See* Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir.1998) ("[I]n all § 1983 cases[ ] the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."). Accordingly, this argument is rejected.

**C.** *Rule 12(b)(6)*

Defendants argue that Turczyn has failed to state a substantive due process claim as against Shanley or the City. (Dkt. No. 19, Attach. 6 at 220, 26–31.) Defendants contend that Turczyn alleges only passive conduct on the part of Shanley that does not give rise to a substantive due process violation. (*Id.* at 10–12.) More generally, defendants assert that Turczyn has failed to plead facts to show "implicit prior assurances through repeated sustained inaction," and that, even if she did, the state action alleged does not rise to the level of conscience-shocking behavior. (*Id.* at 15–20.) Alternatively, defendants argue that Shanley is entitled to qualified immunity. (*Id.* at 20–23.) With respect to the City, defendants contend that Turczyn has failed to allege facts that support a claim of municipal liability. (*Id.* at 26–31.) For reasons explained below, defendants' motion is denied with respect to Turczyn's substantive due process claim against Shanley, but granted with respect to her *Monell* claim against the City.

**\*4** Only one relevant exception to the general rule that no substantive due process claim lies for a state's failure to protect an individual from private violence, *see* DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), potentially applies in this case. That exception imposes liability for failure to protect where state actors in some way affirmatively assist "in creating or increasing the danger to the victim." Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir.2009) (internal quotation marks and citation omitted); *see* Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir.2005). "[R]epeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute 'prior assurances,' rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." Okin, 577 F.3d at 428 (quoting Dwares v. City of N.Y., 985 F.2d 94, 99 (2d Cir.1993)). Moreover, when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" "even though none of the defendants [is] alleged to have communicated the approval explicitly." *Id.* at 428–29 (quoting Pena, 432 F.3d at 111)). In a nutshell, "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates, explicitly or implicitly, official sanction of private violence." *Id.* at 429.

A successful substantive due process claim also requires that the plaintiff show "that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Id.* at 431 (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). A hierarchy of intent provides guidance on the likelihood that a particular harm rises to the necessary level. Intentionally inflicted harms are most likely to meet the standard, while reckless and negligent inflictions of harm are each less likely, in graduated downward steps, to show conscience-shocking state action. *Id.* As for recklessly inflicted injuries, " '[d]eliberate indifference that shocks in one environment may not be so patently egregious in another.' " *Id.* (quoting Lewis, 523 U.S. at 850). Accordingly, the inquiry is highly fact specific.

Unlike *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), or *Neal v. Lee County,* Civil Action No. 1:08CV262, 2010 WL 582437 (N.D.Miss. Feb.12, 2010)—cases in which police had limited interaction with either the victim or killer prior to the victim's demise, and upon which defendants rely for dismissal of the claim against Shanley, (Dkt. No. 19, Attach. 6 at 3–5, 7–8)—the allegations here go substantially farther. Turczyn alleges several occasions [3] when Shanley knew of Anderson's threatening acts and did nothing, which arguably communicated to him prior assurances that there would be no penalty to pay for his conduct. (Am.Compl.¶¶ 12–13.) "This is so even though none of the defendants are alleged to have communicated the approval explicitly." *Pena,* 432 F.3d at 111. *Okin* has specifically recognized the liability that may arise under these circumstances. *See* 577 F.3d at 428–29 (explaining that liability under § 1983 attaches when "state officials communicate to a private person that he ... will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others" (quoting *Pena,* 432 F.3d at 111)).

**\*5** The amended complaint also pleads facts that demonstrate, at this juncture, egregious behavior that shocks the contemporary conscience. As in *Okin,* the allegations here tend to show that Shanley, who was tasked with accomplishing certain goals related to curbing domestic violence, was deliberately indifferent as to whether or not Anderson would make good on his multiple threats against Turczyn's life over a twelve-month-period. (Am.Compl.¶ ¶ 10, 12.) These allegations sufficiently support that Shanley's affirmative conduct was the product of deliberate indifference that shocks the conscience, and would provide a reasonable jury with a valid basis to so find. *See Conradt v. NBC Universal, Inc.,* 536 F.Supp.2d 380, 394–95 (S.D.N.Y.2008).

Finally, Shanley is not entitled to qualified immunity at this juncture. Her argument on this issue is two-fold. First, Shanley asserts that no constitutional violation occurred, and, second, she claims that, even if a constitutional violation occurred, the right was not clearly established. (Dkt. No. 19, Attach. 6 at 20–23.) The first prong of the argument is easily swept aside by reference to the preceding paragraphs that explain that the amended complaint alleges a cognizable substantive due process violation. As for whether or not the right was clearly established, which is a prerequisite to qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this question has been resolved by the Second Circuit. On the issue, the court has explained that it is "clearly established," under the state-created danger theory, "that police officers are prohibited from affirmatively contributing to the vulnerability of a known victim by engaging in conduct, whether explicit or implicit, that encourages *intentional* violence against the victim, and as that is the substantive due process violation alleged here, qualified immunity does not apply." *Okin,* 577 F.3d at 434. Accordingly, Shanley is not entitled to qualified immunity at this time.

As for the City, defendants assert that Turczyn has failed to plead a *Monell* claim because the amended complaint merely alleges legal conclusions. (Dkt. No. 19, Attach. 6 at 26–31.) With respect to Turczyn's allegation that the City failed to properly train or supervise its employees, defendants contend that the amended complaint is too conclusory, but that, even if adequately pleaded, Turczyn's municipal liability claim must nonetheless fail because she has not alleged deliberate indifference. (*Id.* at 29–31.)

It is well settled that "the inadequacy of police training may serve as the basis for § 1983 liability ... where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Oh. v. Harris,* 489 U.S. 378, 380, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The deliberate indifference standard is "stringent" and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks and citation omitted). A showing of deliberate indifference requires that: (1) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.,* 974 F.2d 293, 297–98 (2d Cir.1992) (quoting *City of Canton,* 489 U.S. at 390 n. 10).

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 82 of 108

Turczyn ex rel. McGregor v. City of Utica, Not Reported in F.Supp.3d (2014)

**\*6** Here, because Turczyn has failed to adequately plead that the City's failure to train and supervise amounted to deliberate indifference, she has failed to state a claim of municipal liability. The amended complaint uses the label "deliberate indifference" in reference to Turczyn's municipal liability claim and generically references the City's failure to properly train and supervise, but it fails to allege facts that support either conclusory notion. (Am.Compl.¶¶ 45, 52.) Turczyn's pleading failure mandates dismissal of her *Monell* claim against the City. *See* ⚠ *Gauthier v. Kirkpatrick,* Civil Action No. 2:13–cv–187, 2013 WL 6407716, at *10 (D.Vt. Dec.9, 2013) (dismissing failure to train *Monell* claim because the plaintiff failed to plead facts that supported the deliberate difference elements); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y.2012); *see also Worrell v. City of N.Y.,* No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014).

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims alleged as against the City of Utica Police Dept. and the Clerk is directed to terminate the City of Utica Police Dept. from this action; and

**GRANTED** with respect to Turczyn's *Monell* claim against the City (Am.Compl.¶ ¶ 51–58), which is hereby **DISMISSED WITHOUT PREJUDICE,** and the Clerk is directed to terminate the City of Utica from this action; and

**GRANTED** with respect to all of Turczyn's pendant state law claims, (Am.Compl.¶ ¶ 59–74), which are hereby **DISMISSED;** and **DENIED** in all other respects; and it is further

**ORDERED** that the sole remaining defendant, Shanley, shall file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter in order to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6685476

---

### Footnotes

1    The facts are presented in the light most favorable to plaintiff.

2    *See* ⚑ *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

3    In fact, Turczyn claims that she lodged five to ten complaints—of which Shanley was aware—with the Utica Police within the twelve months preceding the murder. (Am.Compl.¶¶ 12, 13.) So many occurrences may amount to "repeated [and] sustained inaction ... in the face of potential acts of violence." ⚑ *Okin,* 577 F.3d at 428.

---

2019 WL 974824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeramie WHITE, Plaintiff,

v.

SYRACUSE POLICE DEPARTMENT; Abraham
Mamoun, Syracuse Police Dept.; William Kittle,
Syracuse Police Dept.; Shawn Hauck, Syracuse
Police Dept.; Altimonda, Syracuse Police Dept.;
and Fiorini, Syracuse Police Dept., Defendants.

5:18-CV-1471 (GTS/DEP)
|
Signed 02/28/2019

**Attorneys and Law Firms**

JERAMIE WHITE, 18-B-0311, Plaintiff, Pro Se, Cayuga Correctional Facility, P.O. Box 1186, Moravia, New York 13118.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Jeramie White ("Plaintiff") against the Syracuse Police Department and five of its employees ("Defendants"), is United States Magistrate Judge David E. Peebles' Report-Recommendation recommending that (1) Plaintiff's Complaint be accepted for filing by the Court with respect to Plaintiff's Fourth Amendment cause of action against Defendants Mamoun, Kittle, Hauck, Altimonda and Fiorini, and (2) Plaintiff's remaining cause of action against the Syracuse Police Department be dismissed with leave to replead within thirty days of the issuance of an Order adopting the Report-Recommendation. (Dkt. No. 9.) Plaintiff did not submit an objection to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) [1]

Based upon a review of this matter, the Court can find no clear error in the Report-Recommendation: [2] Magistrate Judge Peebles employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein; Plaintiff's Complaint is accepted for filing with respect to his Fourth Amendment cause of action against Defendants Mamoun, Kittle, Hauck, Altimonda and Fiorini; and Plaintiff's remaining cause of action against the Syracuse Police Department is dismissed with leave to replead within thirty days of the issuance of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Peebles' Report-Recommendation (Dkt. No. 9) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint is accepted for filing with respect to Plaintiff's Fourth Amendment cause of action against Defendants Mamoun, Kittle, Hauck, Altimonda and Fiorini; and it is further

**\*2** **ORDERED** that Plaintiff's remaining cause of action against the Syracuse Police Department is **DISMISSED with leave to replead within THIRTY (30) DAYS** of the issuance of this Decision and Order.

**ORDERED** that, in the event Plaintiff files an Amended Complaint within the above-referenced thirty-day period, it shall be referred to Magistrate Judge Peebles for review; and it is further

**ORDERED** that, in the event Plaintiff does not file an Amended Complaint within the above-referenced thirty-day period, this action shall move forward with respect to his Fourth Amendment cause of action against Defendants Mamoun, Kittle, Hauck, Altimonda and Fiorini, and the Clerk of the Court is directed to issue summonses and USM-285 forms at that time for service by the U.S. Marshal Service.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 974824

White v. Syracuse Police Department, Not Reported in Fed. Supp. (2019)

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 84 of 108

### Footnotes

1    The Court notes that, on January 11, 2019, Plaintiff filed a letter from the City of Syracuse Citizen Review Board dated December 31, 2018, outlining its findings with respect to this matter. (Dkt. No. 10.) In its letter, the Citizen Review Board upheld Plaintiff's claim for excessive force against "Det. One," recommended a written reprimand against that individual, and absolved "Det. Two," "Sgt. One," and "Lt. One" from wrongdoing regarding the use of excessive force. (*Id.*) The Court does not liberally construe this letter as any sort of Objection to the Report-Recommendation.

2    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1179384
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Johnathan JOHNSON, Plaintiff,

v.

William GONZALEZ, et al., Defendants.

No. 9:14–CV–0745 (LEK/CFH).
|
Signed March 13, 2015.

**Attorneys and Law Firms**

Jonathan Johnson, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, David J. Sleight, Assistant Attorney General, Of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

 **\*1** This civil rights action comes before the Court following a Report–Recommendation filed on February 20, 2015, by United States Magistrate Judge Christian F. Hummel, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Dkt. No. 23 ("Report–Recommendation"). *Pro se* Plaintiff Johnathan Johnson ("Plaintiff") timely filed Objections. Dkt. No. 24 ("Objections"). For the following reasons, the Report–Recommendation is adopted in its entirety.

**II. STANDARD OF REVIEW**

When a party makes a timely objection to a Report–Recommendation, it is the duty of the Court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Farid v. Bouey, 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting McAllan v. Von Essen, 517 F.Supp.2d 672, 679

(S.D.N.Y.2007)) (citations omitted); *see also* Brown v. Peters, No. 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept. 22, 1997). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

**III. DISCUSSION**

Plaintiff first argues that Defendants' Motion for judgment on the pleadings was improperly filed, and thus Judge Hummel erred in considering the merits of the Motion. Objs. ¶¶ 9–12; *see also* Dkt. No. 11. Specifically, Plaintiff argues that Defendants waived their "defense of Rule 12(c)" by failing to include such request for relief in their Answer. Objs. ¶¶ 9–12. However, Plaintiff is misguided. Federal Rule of Civil Procedure 12(c) explicitly provides that *"after the pleadings are closed* ... a party may move for judgment on the pleadings."* FED. R. CIV. P. 12(c) (emphasis added). Rule 12(c) does not require a defendant to move for judgment on the pleadings in her answer. *See id.* Accordingly, Plaintiff's first objection is without merit.

Plaintiff next objects to Judge Hummel's finding that Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983 for Defendants' refusal to file Plaintiff's grievances and appeals. Objs. ¶¶ 13–20. In support, Plaintiff cites numerous cases where inmates brought First Amendment claims related to issues with the Inmate Grievance Program ("IGP"). *See id.* However, the cases on which Plaintiff relies all involve First Amendment *retaliation* claims. *See* Gayle v. Gonyea, 313 F.3d 677 (2d Cir.2002); Graham v. Henderson, 89 F.3d 75 (2d Cir.1996); Scott v. Coughlin, 344 F.3d 282 (2d Cir.2003); Morales v. Mackalm, 278 F.3d 126 (2d Cir.2002). Here, Plaintiff is alleging an entirely different cause of action—denial of access to the courts. Therefore, these cases cited in support of Plaintiff's argument are irrelevant.

 **\*2** In further support, Plaintiff cites Govan v. Campbell, 289 F.Supp.2d 289, 297 (N.D.N.Y.2003), in which the Court held that "[p]risoners retain the constitutional right to petition the government for the redress of grievances." (citing Overton v. Bazzetta, 539 U.S. 126, 137 (2003)). However, a careful reading of *Overton* reveals that the Supreme Court was referring to "grievances" only in a broad sense; the Court

was not referring to the Inmate "Grievance" Program. *Id. at* 137. Moreover, it is well-settled in the Second Circuit that allegations that prison officials failed to comply with the IGP do not state a viable claim under § 1983. *See Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) ("Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, 'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [ Section] 1983 claim.' " (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)); *see also Mimms v. Carr,* No. 09–CV–5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("The First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures."). Accordingly, Plaintiffs second objection is also without merit.

Plaintiff's third objection is that Judge Hummel erroneously combined Plaintiff's allegations concerning filing of his grievances with his separate allegations concerning denial of access to evidence. Objs. ¶¶ 21–26. However, a careful reading of the Report–Recommendation reveals that Judge Hummel did not conflate Plaintiff's allegations. Rather, Judge Hummel considered each allegation as a separate claim of denial of access to the courts. *See* Report–Rec. at 7–8. Thus, Plaintiff's third objection is also without merit.

Finally, Plaintiff argues that his Complaint should not be dismissed because, even if his § 1983 claims are dismissed, he has also alleged violations of the New York Constitution. Objs. ¶¶ 27–36. Plaintiff's argument must be rejected for two reasons. First, even liberally construed, Plaintiff has not asserted any claims under the New York Constitution in his Complaint. *See generally* Dkt. No. 4 ("Complaint"). Second, even if Plaintiff's claims were construed to allege violations of the New York Constitution, it would not be proper for the Court to exercise supplemental jurisdiction in light of dismissal of all of Plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, dismissal of Plaintiff s Complaint is warranted.

## IV. CONCLUSION
Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 23) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Defendants' Motion (Dkt. No. 11) for judgment on the pleadings is **GRANTED;** and it is further

**\*3 ORDERED,** that Judgment be entered in favor of Defendants on all claims; and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 19) to compel is **DENIED as moot;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

JONATHAN JOHNSON,

Plaintiff,

v.

WILLIAM GONZALEZ, Deputy Commissioner, DOCCS; SCOTT WOODWARD, Grievance Supervisor, Upstate Correctional Facility; BRANDI WHITE, Grievance Supervisor, Upstate Correctional Facility; DAVID ROCK, (Former) Superintendent, Upstate Correctional Facility; BRIAN FISCHER, Commissioner, DOCCS; JOSEPH BELLNIER, Deputy Commissioner, DOCCS; GAYLE HAPONIK, Deputy Commissioner, DOCCS; DANIEL MARTUSCELLO, Deputy Commissioner, DOCCS; ANTHONY J. ANNUCCI, Acting Deputy Commissioner, DOCCS; KAREN BELLAMY, Director of Inmate Grievances, DOCCS; MIKE LIRA, Deputy Superintendent, Upstate Correctional Facility; MAUREEN BOLL, Deputy Commissioner, DOCCS; DR. CARL KOENIGSMANN, Deputy Commissioner, DOCCS; DONITA E. MCINTOSH, Deputy Superintendent, Upstate Correctional Facility; JEFF MCKOY, Deputy Commissioner, DOCCS; GEORGE GLASSANOS, Deputy Counsel, DOCCS,

Defendants.

**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Jonathan Johnson ("Johnson"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, sixteen current and former DOCCS employees and employees of Upstate Correctional Facility, violated his constitutional rights under the First Amendment. Compl. (Dkt. No. 4). Presently pending is defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Dkts. No. 10, 11. Plaintiff was directed to respond to this motion by September 2, 2014, but has failed to do so. Dkt. No. 10. For the following reasons, it is recommended that defendants' motion for judgment on the pleadings be granted.

### I. **Background** [2]

The facts are related herein in the light most favorable to Johnson as the non-moving party. *See* subsection II(A) *infra*. At all relevant times, Johnson was confined to Upstate Correctional Facility ("Upstate"). Compl. ¶ 3.

From 2011 to 2013, Johnson had filed or attempted to file a number of inmate grievances [3] for improper conduct by various staff members at Upstate. Compl. ¶ 4. Although unclear from the complaint, Johnson appears to contend he gave these grievances directly to defendants Woodward and White, both grievance supervisors at Upstate. *Id.* ¶ 5. Johnson alleges that defendants Woodward and White refused to properly file or process numerous grievances, as well as properly and timely submit appeals to the Central Office Review Committee ("CORC") and the Superintendent. *Id.* ¶¶ 3–5. When grievances were properly filed by defendants Woodward and White, Johnson alleges that they refused to allow him to obtain certain documents and denied him access to witnesses and videotaped footage relevant to the investigation of his grievances. *Id.* ¶ 7.

**\*4** Johnson also alleges that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh failed to supervise defendants Woodward and White to ensure the proper handling of his grievances and appeals. Compl. ¶ 10. Johnson also alleges that these defendants denied him access to, or failed to obtain, evidence relevant to his grievances. *Id.* ¶ 7. Johnson seeks compensatory and punitive damages. *Id.* ¶ 11.

### II. **Discussion** [4]

Johnson contends that defendants Woodward and White violated his First Amendment right of access to the courts by failing to submit in the proper manner and follow through with his grievances and appeals at Upstate. Compl. ¶¶ 3–6. Johnson also contends that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his First Amendment right of access to the courts by failing to supervise defendants Woodward and White to ensure proper handling of his grievances and appeals. He also alleges that all defendants denied him access to certain evidence relevant to his grievances. *Id.* ¶ 7, 10. Finally, affording Johnson special solicitude, [5] his complaint may be read to suggest that all named defendants violated his procedural due process rights by failing to properly investigate his grievances. Compl. ¶¶ 7, 11.

As relevant here, defendants request judgment on the pleadings because (1) defendants' failure to follow the inmate grievance procedures does not give rise to a cognizable claim against defendants under § 1983; and (2) there are no factual allegations in the complaint against defendant Fischer. [6]

### A. **Legal Standard**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw,* 448 F.3d 518, 521 (2d Cir.2006) (citing *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 113 (2d Cir.2005)). The Court is required to "accept[ ] as true the complaint's factual allegations and draw[ ] all inferences in the plaintiff's favor." *Id.* However, this "tenet ... is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (holding that "entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ... [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility ... that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct] .")); *see also Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible ....") (citations omitted).

**\*5** Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly,* 550 U.S. at 555 (citations omitted). While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id* . (citations omitted).

## B. Analysis

### 1. First Amendment Access to the Courts

Johnson contends that defendants Woodward and White denied him his right of access to the courts under the First Amendment by interfering with his right to file grievances and appeals and denying him access to certain relevant evidence. Johnson also claims that defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh violated his right of access to the courts based upon their failure to supervise and ensure that defendants Woodward and White properly handled grievances and appeals. *Id.* ¶ 10.

The prisoner's right of access to the court system has been anchored by the United States Supreme Court in a variety of sources including "the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." *Christopher v. Harbury,* 536 U.S. 403, 414–15 & n. 12 (2002); *see Lewis v. Casey,* 518 U.S. 343, 346 (1996). However, because the IGPs are created under state law, and, thus, not required by the Constitution, allegations against prison officials for violation of, or interference with, those procedures cannot give rise to a cognizable claim under § 1983. *Alvarado v. Westchester Cnty.,* 22 F.Supp.3d 208, 214 (S.D.N.Y.2014) (quoting *Shell v. Brzezniak,* 365 F.Supp.2d 362, 369–70 (W.D.N.Y.2005)). It has also been established that the "First Amendment is not implicated ... where prison officials deny an inmate access to grievance procedures." *Mimms v. Carr,* No. 13–CV–2515 (VB), 2011 WL 2360059, at \*10 (E.D.N.Y. June 9, 2011); *see also Brown v. Graham,* 470 F. App'x 11, 13 (2d Cir.2012) (holding that a prisoner litigant's claim that he has a "federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."). [7]

Johnson seeks relief based upon a denial of his right of access to the courts by the defendants' failure to properly submit and timely follow through with his grievance complaints and appeals made while at Upstate. Compl. ¶ 5. Additionally, Johnson alleges that when these complaints were properly filed, defendants Woodward and White did not allow him to obtain any documentary evidence or videotaped footage. *Id.* ¶ 7. It is clear, as discussed *supra,* defendants Woodward and White's apparent refusal or subsequent failure to file, provide evidence for, or follow through with the processing of grievances or appeals does not create a claim under § 1983 as there is no constitutional right to access to an inmate grievance program. *See Brzeniak,* 365 F.Supp.2d at 370. Similarly, the remaining defendants' failure to properly supervise the filing or appeal of these grievances does not amount to a constitutional violation as there is no underlying denial of access to the courts. *Id.*

**\*6** Insofar as Johnson's complaint may suggest that any of the named defendants failed to properly investigate grievances or instances of wrongdoing against him (Compl.¶¶

7, 11) in violation of the Due Process Clause, the Court notes that inmates do not have a due process right to a thorough investigation of grievances. *See Torres v. Mazzurca,* 246 F.Supp.2d 334, 341–42 (S.D.N.Y.2003).

Accordingly, it is recommended that defendants' motion on this ground be granted.

### C. **Failure to State a Claim Against Defendant Fischer**

The standard set forth in *Twombly* and affirmed in *Iqbal* requires more than mere conclusory statements; rather, it demands sufficient factual allegations against a defendant to reasonably lead to the discovery of illegal conduct. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555–56. "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (quoting *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

In this case, the verified complaint lists defendant Fischer's name in the caption, but fails to again name or assert allegations against him. Compl. ¶ 1. Without any specific factual allegations asserted against defendant Fischer, he cannot be deemed a party in this action. *See Dove,* 56 F.Supp.2d at 335.

Accordingly, it is recommended that defendants' motion on this ground be granted.

### III. **Motion to Compel**

Because the undersigned recommends granting defendants' motion for judgment on the pleadings on all grounds against all defendants, it is also recommended that Johnson's motion to compel discovery (Dkt. No. 19) be dismissed as moot.

### IV. **Conclusion**

For the reasons stated above, it is hereby

1.  **RECOMMENDED** that defendants' motion for judgment on the pleadings (Dkt.Nos.10, 11) be **GRANTED** and that judgment be entered for all defendants on all claims;

2.  **RECOMMENDED** that plaintiffs motion to compel discovery (Dkt. No. 19) be **DISMISSED** as moot.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Filed Feb. 20, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1179384

---

## Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    Johnson filed a notice to remand and to impose sanctions on defendants pursuant to Fed.R.Civ.P. 11 (Dkt. No. 6) which was denied by District Court Judge Lawrence Kahn because (1) Johnson's complaint, on its face, asserts a federal constitutional claim, i.e. the § 1983 claim; (2) Johnson points to nothing that would

defeat the requisite subject matter jurisdiction (Dkt. No. 21); and (3) defendants' notice of removal was timely. Dkt. No. 21.

3     The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." *Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir.2004) (internal quotations omitted).

4     All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

5     When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the nonmovant special solicitude. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, ... that a *pro se* litigant's submissions must be construed liberally, ... and that such submissions must be read to raise the strongest arguments that they suggest .... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not suggest, ... that we should not excuse frivolous or vexatious filings by *pro se* litigants ... and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Id.* (citations and footnote omitted) (internal quotations omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro* se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

6     Defendants Bellnier, Haponik, Martuscello, Annucci, Bellamy, Boll, Koenigsmann, McKoy, Gonzales, Glassanos, Lira, and Mcintosh also argue that Johnson inadequately alleged their personal involvement in the alleged constitutional violations (Dkt. No. 11) which is a "prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). Because this Court finds, as discussed *infra*, that no constitutional violation has been alleged, it does not reach that issue.

7     Under the PLRA, a plaintiff whose access to the grievance process has been hindered by actions of prison officials is excused from the exhaustion requirement and can file suit without having completed that process. *Hemphill v. New York*, 380 F.3d 680, 686–92 (2d Cir.2004). Thus, an inmate who is denied access to an IGP may directly commence an action to seek redress for the alleged constitutional violations.

---

End of Document                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 91 of 108

2013 WL 6816787
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alelie SERRANO, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION; Commissioner
Joe Martens; Major Steven Gerould; Peter Fanelli,
Director, Division of Law Enforcement; Eric Tupaj,
Lieutenant, Division of Law Enforcement, Defendants.

No. 12–CV–1592 (MAD/CFH).
|
Dec. 20, 2013.

**Attorneys and Law Firms**

Office of Lowell R. Siegel, Lowell R. Siegel, Esq., of Counsel, Altamont, NY, for Plaintiff.

Office of the New York State Attorney General, James Seaman, AAG, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff, Alelie Serano, commenced this suit against her employer, New York State Department Environmental Conservation ("DEC"), and various DEC employees on October 24, 2012. Plaintiff was terminated from her position on January 25, 2013 and she filed an amended complaint on February 13, 2013. Pending before this Court is Defendants' motion to dismiss Plaintiff's amended complaint.

**II. BACKGROUND**

Plaintiff was employed at the DEC as a dispatcher from October 2006 until January 2013. See Dkt. No. 9 at 4. During this time, Plaintiff was the only dispatcher at the DEC of Puerto Rican/Hispanic descent. See id. at 5. One of the main reasons Plaintiff was hired was because of her fluency in

Spanish. See id. Plaintiff worked in the Ray Brook office from October 2006 until February 2010, when she was transferred to Albany. See id. at 4. In 2007, Defendant Tupaj replaced Lieutenant Stabak as Plaintiff's main supervisor. See id. at 5. Defendant Gerould supervised the Central Dispatch Unit in the Central Office in Albany from May 2007 to April 2011. See Dkt. No. 11–12 at 1. He has had no supervisory control over the Central Dispatch Unit since his relocation in April 2011. See id.

On March 4, 2008, Plaintiff filed a charge of discrimination with the Affirmative Action Office of the DEC. See Dkt. No. 11–5 at 7. The Affirmative Action Office issued a finding of discriminatory behavior and recommended remedial action to ensure an end of such behavior. See id. at 9. On August 26, 2008, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") alleging retaliation for filing her previous Affirmative Action complaint. See id. at 1. On October 8, 2008, Plaintiff filed another charge with the DHR alleging discrimination and harassment. See Dkt. No. 11–6 at 1. On March 23, 2009, the DHR issued a statement that "there is probable cause that Complainant may have been subjected to discriminatory treatment, including retaliation, and said treatment may be ongoing." See Dkt. No. 11–7 at 6. On March 30, 2010, Plaintiff filed another charge of discrimination with the DHR. See Dkt. No. 11–10 at 1. The DHR determined that this charge showed no probable cause of discrimination because, inter alia, the "allegations regarding ridiculing behavior from coworkers were already litigated during the December 2009 Division hearing." See Dkt. No. 11–11 at 2.

On or about May 18, 2012, Plaintiff filed a charge of discrimination and retaliation based on her race/national origin with the Equal Employment Opportunity Commission ("EEOC"). See Dkt. No. 11–3 at 2. The EEOC determined that it did "not seem that [they] would find a violation of the law" because "most of [Plaintiff's] allegations are untimely (beyond 300 days) or have already been investigated by the NYSDHR." See Dkt. No. 11–2 at 2. On July 26, 2012, the EEOC issued a right to sue letter, allowing Plaintiff ninety days to file a suit against the DEC. See id. at 3. Plaintiff commenced this action on the ninetieth day, October 24, 2012. See Dkt. No. 1.

**\*2** On January 4, 2013, Plaintiff filed another hostile work environment and discrimination complaint with the Affirmative Action Bureau of the DEC. See Dkt. No. 11–13 at 6. Plaintiff was then terminated on January 25, 2013, by a

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 92 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

letter stating in part, "[t]he reasons for this decision include your persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15–3 at 2.

Several alleged instances of workplace conduct are relevant to this case. These instances include: (A) alleged conduct which has been previously adjudicated by the DHR, (B) undated allegations of conduct that have not been previously adjudicated, and (C) facts surrounding the service of Defendant Gerould.

## A. Allegations of conduct adjudicated by the DHR

Plaintiff alleged that a co-worker, Angela Reynolds, complained about Plaintiff speaking Spanish in the workplace and Sergeant Cranker advised Plaintiff to consider relocating to Puerto Rico. *See* Dkt. No. 9 at 5–6. Plaintiff alleged several offensive items had been placed in her vicinity after filing a discrimination complaint at Ray Brook including: a can with "bullshit" written on the label, a set of "eyeballs," a Mr. Bill doll, a bull's eye target, and a hangman's noose placed near Plaintiff's locker. *See id.* at 6. Defendant Gerould allegedly minimized the Affirmative Action Office's determination of a hostile work environment by calling the report "embellished." *See id.* Similarly, Defendant Tupaj allegedly minimized the counseling memoranda in relation to the Affirmative Action determination, calling them a "slap on the hand." *See id.* Plaintiff claims that Defendants were permitted access to her work e-mail so that her activities could be closely monitored and that Defendants engaged in "hyper-supervision" of Plaintiff. *See id.* at 6–7. Plaintiff was excluded from training given to other dispatchers at Ray Brook and Defendants allegedly failed to allow Plaintiff to engage in diversity training. *See id.* Plaintiff claims that she was required to provide a doctor's note when she missed work, and overtime was allegedly limited to her and given to others with less seniority. *See id.* at 7. Plaintiff alleges that she was struck in the head by Angela MacBride with a binder and that her car was vandalized by co-workers. *See id.* at 6–7.

## B. Undated allegations of conduct that have not been previously adjudicated

Plaintiff alleged that co-workers Laurenzo and Nightengale referred to Plaintiff as a "spic" in the presence of other employees and that she was also referred to as "wildlife." *See id.* at 5–6. Similar to the objects placed near Plaintiff at Ray Brook, a can with "bullshit" on the label, a Mr. Bill

doll, and a pair of eye balls were placed near Plaintiff in Albany after she had made known that these items offended her at Ray Brook. *See id.* at 7. In the Albany office, Plaintiff's co-workers allegedly discarded her personal items and Christopher Laurenzo and Jennifer Quade barricaded Plaintiff in her workstation. *See id.* Defendants allegedly excluded Plaintiff from training opportunities provided to others while she was in Albany. *See id.* at 7–8. Defendant Tupaj allegedly criticized Plaintiff for providing early sick leave notification and refused to address her seniority after her transfer to Albany. *See id.*

## C. Facts surrounding service of Defendant Gerould

 **\*3** Defendant Gerould's business address is at the Avon regional office and he does not regularly receive business correspondence from the Albany office. *See* Dkt. No. 11–12 at 1. In November 2012, Defendant Gerould was handed a summons with his name on it and a copy of the complaint filed in this case. *See id.* at 2. The envelope containing the summons was addressed to the Albany office, delivered to the Avon office through intra-agency mail, and handed to Defendant Gerould by a member of the Avon support staff. *See id.* A professional process server served a summons and amended complaint on Defendant Gerould at his home on May 28, 2013. *See* Dkt. No. 15–4 at 2.

## D. Pending before the Court

Plaintiff's amended complaint asserts (1) Title VII discrimination, retaliation, and hostile work environment claims on the basis of her race/color and ancestry/national origin, (2) 🔖 New York Executive Law § 290 ("HRL") discrimination and retaliation claims, and (3) a 🔖 42 U.S.C. § 1983 equal protection violation. *See* Dkt. No. 9 at 12–15. Plaintiff has requested that, if any of her claims are ruled deficient, this Court grant leave to re-plead such claims. *See* Dkt. No. 15–5 at 30.

Defendants have filed a motion to dismiss Plaintiff's amended complaint arguing dismissal on seventeen different grounds. *See* Dkt. No. 11–13. Generally, Defendants contend as follows: (1) individuals are not subject to Title VII liability; (2) Plaintiff has failed to exhaust her administrative remedies; (3) Plaintiff has failed to state a claim upon which relief may be granted; (4) the statute of limitations bars certain aspects Plaintiff's claims; (5) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities; (6) Plaintiff has failed to allege Defendants'

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 93 of 108

personal involvement; (7) Plaintiff's equal protection claim is duplicative of her Title VII allegations; (8) Plaintiff's HRL claims are barred by the election of remedies doctrine; (9) personal jurisdiction over Defendant Gerould has not been obtained; and (10) the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.*

### III. DISCUSSION

**A. Individual Liability under Title VII**

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000). Plaintiff has conceded this and has withdrawn her Title VII claims against the individual Defendants. *See* Dkt. No. 15–5 at 25 n. 5.

Based on the foregoing, the Court grants Defendants' motion to dismiss on this ground and the Title VII claims asserted against Defendants in their individual capacity are dismissed.

**B. Exhaustion**

Filing a charge with the EEOC is "an essential element" of a Title VII claim and a prerequisite to bringing suit in federal court. *See* Butts v. City of N.Y. Dep't of Hous., 990 F.2d 1397, 1402 (2d Cir.1993), *abrogated by statute on other grounds as stated in* Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir.1998); *see also* Francis v. City of N.Y., 235 F.3d 763, 767–68 (2d Cir.2000); 42 U.S.C. § 2000e–5(e). Jurisdiction is conferred if a claim was previously raised in an EEOC charge or if the federal claim is "reasonably related" to such a claim. *See* Butts, 990 F.2d at 1401–02. A claim is "reasonably related" to one raised in an EEOC charge (1) when it falls within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge;" (2) where the claim alleges retaliation for filing the EEOC charge, and it would likely be discovered during the EEOC investigation; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. at 1402–03 (citations omitted).

**\*4** "In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, '[w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination.' " Gomes v. Avco Corp., 964 F.2d 1330, 1334 (2d Cir.1992) (quotation omitted). This loose pleading standard has subsequently been limited to instances where the facts stated in the EEOC claim could have reasonably been expected to alert the EEOC to an additional, unstated claim. *See* McKinney v. Eastman Kodak Co., 975 F.Supp. 462, 467 (W.D.N.Y.1997) (failing to find reasonable relatedness between disparate impact and retaliation claims when the employee claimed she was discharged in retaliation for previous complaints but did not allege any facts describing the process that employer implemented in deciding to terminate its employees. The focus is not necessarily on the specific claims charged with the EEOC, but rather " 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.' " Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir.2003) (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir.2002)). While EEOC claims need not be artfully pleaded, they must state more than "vague, general allegations" to satisfy the EEOC exhaustion requirement. Butts, 990 F.2d at 1403.

In this case, Plaintiff filed an EEOC charge on March 16, 2012 [1] alleging discrimination based on national origin and retaliation. *See* Dkt. No. 11–3 at 2. Plaintiff's EEOC charge states:

> I am a Hispanic female. I have worked for Respondent since 2006. I have filed multiple national origin discrimination charges with the New York State Division of Human Rights against Respondent. In retaliation for having filed multiple discrimination charges against Respondent, I have been subjected to harassment and different terms and conditions of employment. Some of the most recent incidents occurred since Autum[n][sic] 2011. My Supervisors continue to treat me unequally. My coworkers, Angela Reynolds, Alicia Bormer and Ann Mcbride are always being granted all sorts of training outside the Region with lodgin[g][sic], food and accommodations being paid for[ ], but I have not received the same training opportunity.
> *See id.*

***1. Race Discrimination***

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 94 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

The Second Circuit has held that, because " '[a]n assertion of racial bias is conceptually distinct from a claim of discrimination on the basis of national origin,' raising a national origin claim before the EEOC does not automatically suffice to alert the agency to investigate incidences of racial discrimination." *Deravin,* 335 F.3d at 201 (quoting *Sinai v. New England Tel. & Tel. Co.,* 3 F.3d 471, 475 (1st Cir.1993)). While national origin and race are often distinct identities, "the term 'Hispanic' may trigger the concept of race." *Alonzo v. Chase Manhattan Bank, N.A.,* 25 F.Supp.2d 455, 459 (S.D.N.Y.1998) (finding "reasonable relation" between race and national origin when an employee described as Hispanic only checked the "national origin" box, and not the "race" box, in an EEOC charge).

**\*5** In the present matter, the Court finds that, since Plaintiff asserted an EEOC national origin charge and described herself as Hispanic, the national origin charges are reasonably related to racial claims; and, therefore, Plaintiff has sufficiently exhausted her administrative remedies in regards to her claims of race discrimination. *See Alonzo,* 25 F.Supp.2d at 459. Defendants' motion to dismiss Plaintiff's Title VII race discrimination claims for failure to exhaust administrative remedies is denied.

### 2. Retaliation

In her EEOC charge, Plaintiff asserted that she had been "subjected to harassment and different terms and conditions of employment" in retaliation for filing discrimination charges against Defendants. *See* Dkt. No. 11–3. Defendants admit that Plaintiff satisfactorily exhausted her retaliation claim, but contend that the Title VII claim should be limited to the specific instance of retaliation—lack of training opportunities—that Plaintiff stated in her EEOC charge. *See* Dkt. No. 16 at 5.

The exhaustion requirement does not require a recital of each factual instance relied upon in a Title VII claim; rather, "a district court may 'hear Title VII claims that either are included in an EEOC charge or are based on [reasonably related] *conduct subsequent to the EEOC charge* ....' " *Danials–Kirisits v. N.Y. State Office of Court Admin.,* No. 05–CV–800S, 2013 WL 1755663, \*15 (W.D.N.Y. Apr.24, 2013) (quoting *Butts v. City of N.Y. Dep't of Hous.,* 990 F.2d 1397, 1401 (2d Cir.1993)) ("Thus, a reasonably related claim

applies only to alleged discriminatory conduct that occurred after the EEOC charge is filed") (internal quotations omitted).

Plaintiff has fulfilled the exhaustion requirement for her retaliation claim due to her specific statement of being denied training opportunities. *See* Dkt. No. 11–3 at 2. Plaintiff's allegation of "harassment and different terms and conditions of employment" in connection with her denial of training opportunities further supports her retaliation charge. *See id.* The Court finds these allegations sufficient to exhaust this claim; and, therefore, Defendants' motion to dismiss Plaintiff's Title VII retaliation claim for lack of exhaustion is denied.

### 3. Discrimination

Defendants contend that a plaintiff's reference in an EEOC charge alleging that she filed previous discrimination complaints as a reason for retaliation does not, without other mention of discrimination, sufficiently exhaust the discrimination claim. *See* Dkt. No. 16 at 5 (citing *Shannon v. Ford Motor Co.,* 72 F.3d 678, 685 (8th Cir.1996)). While Plaintiff's *pro se* EEOC charge may be inartfully pled, liberally construing Plaintiff's statements that coworkers received benefits not afforded to her, in connection with her reference to her multiple previous discrimination charges and her national origin, the Court finds that the allegations were sufficient to exhaust this claim. *See Deravin v. Kerik,* 335 F.3d 195, 201–02 (2d Cir.2003). Specifically, Plaintiff mentioned that she has previously filed national origin discrimination charges against Defendants and that she was retaliated against for having filed those charges. *See* Dkt. No. 15–2. Thereafter, Plaintiff claims that she has been subjected to harassment and different conditions of employment, and that specifically identified coworkers have been granted training opportunities that she has not. *See id.* Liberally construed, these allegations are sufficient to withstand Defendants' motion to dismiss.

**\*6** Based on the foregoing, Defendants' motion to dismiss Plaintiff's Title VII discrimination claim for lack of exhaustion is denied.

### C. Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See*

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 95 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

*Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.

*See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly,* 550 U.S.] at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

### 1. Title VII Claims

#### a. Hostile Work Environment

"In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Gorzynski v. JetBlue Airways Co.,* 596 F.3d 93, 102 (2d Cir.2010) (quotation omitted). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* (citation omitted). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' " *Id.* (citation omitted). Moreover, the alleged hostile work environment must have been created by conduct relating to a characteristic protected by Title VII. *See* ⚠ *Gregory v. Daly,* 243 F.3d 687, 692 (2d Cir.2001).

**\*7** "Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski,* 596 F.3d at 103 (citation omitted). "When ... the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Id.* (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

It has been repeatedly held that "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The test not only looks at isolated incidents, but requires consideration of all the circumstances present in the workplace contributing to its environment, such as the amount that the alleged conduct interferes with an employee's work performance, its frequency, severity, and threatening nature. *See Harris,* 510 U.S. at 23.

Plaintiff alleges that, starting in 2007, she had been the victim of several repeated instances of noteworthy conduct. Specifically, Plaintiff claims that hangman's nooses, cans with "bullshit" painted on them, pairs of eye balls and bull's-eye targets were placed near her workstation, after she made it

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 96 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

known that this conduct offended her. *See* Dkt. No. 9 at 6–8. Plaintiff has been barricaded in her workplace, her personal items have been thrown away, and she has been hit in the head by co-workers. *See id.* Moreover, Plaintiff alleges that her car was vandalized and derogatory terms such as "spic" and "wildlife" were used towards her. *See id.*

These allegations rise above the ordinary tribulations of the workplace and are sufficient to satisfy the objective prong. *See id.* Moreover, Plaintiff's complaint sufficiently alleges that she had the subjective view that these instances were sufficiently abusive as evidenced by her multiple DHR complaints of a hostile work environment. Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for hostile work environment; and, therefore, Defendants' motion to dismiss this claim is denied.

### b. Disparate Treatment

Title VII states that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race ... or national origin." *42 U.S.C. § 2000e–2(a)(1) (2013).* To assert a prima facie Title VII disparate treatment claim, a plaintiff must establish that:

> (1) [s]he is a member of a protected class; (2)[s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3)[s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on h [er] membership in the protected class.

**\*8** *Dotson v. City of Syracuse,* No. 5:11–CV–620, 2013 WL 1293775, \*10 (N.D.N.Y. Mar.27, 2013) (citations omitted). At the pleading stage, however, a plaintiff need not establish a prima facie case, and can survive a motion to dismiss by asserting a plausible claim that "gives the defendant fair notice of the plaintiff's claim, the grounds upon which it rests and indicate[s] the possibility of discrimination." *Acosta v. City of N.Y.,* No. 11 Civ. 856, 2012 WL 1506954, \*5 (S.D.N.Y. Apr.26, 2012) (citation omitted).

To constitute a Title VII adverse employment action, there must be a "materially adverse" change in working conditions which "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, ... or other indices ... unique to a particular situation." *Giscombe v. N.Y.C. Dep't of Educ.,* No. 12 Civ. 464, 2013 WL 829127, \*5 (S.D.N.Y. Feb. 28, 2013) (citations omitted); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities, or a decision causing a significant change in benefits"). Further, a "tangible employment action in most cases inflicts direct economic harm" and "requires an official act of the enterprise" which must be done with the "official power of the enterprise," not merely harm inflicted by a co-worker. *Burlington Indus.,* 524 U.S. at 762.

The plaintiff must "raise a plausible inference that the action was taken on account of [her] race or national origin." *Acosta,* 2012 WL 1506954, at \*5; *see also Griffin v. Brighton Dental Group,* No. 09–CV–6611P, 2013 WL 1221915, \*5 (W.D.N.Y. Mar.5, 2013) ("Evidence that an individual was treated differently from other employees, standing alone, is insufficient to prove discrimination"). Evidence that the plaintiff was treated less favorably than other, similarlysituated employees who were not a member of the plaintiff's protected class supports an inference of discriminatory intent. *See Griffin,* 2013 WL 1221915, at \*6. Also, evidence that the plaintiff was subjected to offensive treatment, "such as name-calling, slurs, or bad jokes," directed at the plaintiff's membership in a protected class indicates discrimination. *Id.* (internal quotations omitted).

In the present matter, Defendants concede the first two elements, *i.e.,* that Plaintiff is a member of a protected class and that she was qualified for her position. *See* Dkt. No. 15–5 at 21. Regarding the alleged adverse employment, Plaintiff alleges that she was denied training opportunities and overtime pay that other, non-Hispanic employees were not. *See* Dkt. No. 9 at 6–7. This allegation, in connection with discriminatory comments directed towards Plaintiff—such as being called a "spic" and "wildlife," and being told to consider moving to Puerto Rico—give rise to an inference that Plaintiff suffered an adverse employment action because of her race or national origin. *See id.* Therefore, the Court

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 97 of 108

denies Defendants' motion to dismiss Plaintiff's Title VII disparate treatment claim.

### c. Retaliation

**\*9** To avoid dismissal of a Title VII retaliation claim, a plaintiff must plausibly allege that: " '(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.' " *Gordon v. Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000) (quotation omitted). "Protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). Proof of causation can be shown either indirectly through circumstantial evidence, or "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon,* 232 F.3d at 117. In order to show a retaliatory motive by means of circumstantial evidence, there must be temporal proximity between the adverse employment action and the protected activity. *See Muhammad v. Juicy Couture/Liz Clairborne, Inc.,* No. 09–Civ–8978, 2010 WL 4032735, \*6 (S.D.N.Y. July 30, 2010). "At the pleading stage, Plaintiff "need not establish [such] a prima facie case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." " *Stewart v. City of New York,* No. 11 Civ. 6935, 2012 WL 2849779, \*10 (S.D.N.Y. July 10, 2012) (quotation and other citation omitted).

When a plaintiff claims retaliation for filing previous complaints of discrimination, such complaints "are protected activity even when the underlying conduct complained of *was not in fact unlawful* so long as [the plaintiff] can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Amin v. Akozo Nobel Chems., Inc.,* 282 Fed. Appx. 958, 961 (2d Cir.2008) (internal quotations omitted).

In *Amin,* the Second Circuit found that the plaintiff met his burden of establishing retaliatory motive through evidence that he (1) repeatedly complained about discrimination and racism by employer, (2) was instructed to stop making such complaints, (3) persisted in making such complaints, and (4) was fired shortly after one such complaint. *See*

*id.* at 962. Even though the defendant claimed that the plaintiff was fired for "insubordinate behavior and difficulty in working effectively with others," the court held that the proffered reasons for the plaintiff's termination may have been pretextual, and the plaintiff fulfilled his burden of showing that "the employment decision of which he complains 'was more likely than not motivated, in whole or in part,' by unlawful reasons ." *Id.* (quotation omitted).

In the present matter, Plaintiff filed several claims of discrimination or harassment with various regulatory agencies. [2] *See* Dkt. No. 11–13 at 5–6. The Affirmative Action Office of the DEC issued a determination that probable cause existed as to Plaintiff's complaint of discriminatory treatment. *See* Dkt. No. 11–7 at 8. Moreover, as to Plaintiff's second DHR claim of retaliation, the office found that there is sufficient evidence to indicate that there is probable cause to believe that Plaintiff may have been subject to discriminatory treatment, including retaliation. *See* Dkt. No. 11–7 at 6. Plaintiff's other DHR claim was determined to not give rise to probable cause of discrimination. *See* Dkt. No. 11–11 at 2. The EEOC charge was dismissed because "most of [Plaintiff's] allegations [were] untimely (beyond 300 days) or [had] already been investigated by the NYSDHR." *See* Dkt. No. 11–2 at 2.

**\*10** While Plaintiff's alleged discrimination in these administrative complaints may not have been an actual violation of Title VII, her factual assertions, coupled with the findings of probable cause from the DHR, establish that Plaintiff acted with good faith and a reasonable belief that such violations existed. Moreover, the investigations clearly demonstrate that Defendants were aware of Plaintiff's protected activity. *See* Dkt. No. 11–8 at 8. The final two elements are satisfied by Plaintiff's termination letter. Defendants took adverse action against Plaintiff and a causal connection to the protected activity is demonstrated by the fact that she was terminated based upon "persistent and unfounded complaints that have disrupted the workplace, conduct that undermined the mission of the unit, insubordination, and time and attendance concerns." *See* Dkt. No. 15–3 at 2. Moreover, Plaintiff was terminated twenty-one days after filing her last complaint with DEC's Affirmative Action Office, and while this civil action was ongoing. *See* Dkt. No. 11–13 at 6.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged that her termination was, at least in part, due to her filing of previous discrimination complaints; and,

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 98 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

therefore, denies Defendants' motion to dismiss the Title VII retaliation claim for failure to state a claim.

#### 4. HRL Claims

##### a. Discrimination and Retaliation

Discrimination and retaliation "claims under the HRL are evaluated using the same analytical framework used in Title VII actions." Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir.2012). Accordingly, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims for failure to state a cause of action is denied.

##### b. Aid and Abet

As explained below, Plaintiff has sufficiently pled that Defendants Tupaj and Garneau aided and abetted prohibited conduct in violation of HRL § 296(6). See infra Part (F)(2). Therefore, Defendants' motion to dismiss Plaintiff's HRL aid and abet claim for failure to state a cause of action is denied.

#### 5. Equal Protection

An equal protection violation requires a plaintiff to allege that "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations...." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir.2000) (citations omitted). To establish an inference of discriminatory motive, the plaintiff must sufficiently plead "that other similarly situated individuals—who are outside of the protected class to which the plaintiff belongs—have been treated differently." Faccio v. Landry, No. 1:10–CV–785, 2012 WL 3637412, *3 (N.D.N.Y. Aug. 22, 2012); see also Village of Willobrook v. Olech, 528 U.S. 562, 563, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (recognizing equal protection claims where there is no rational basis for the difference in treatment between similarly situated individuals).

**\*11** Plaintiff indicates several incidents where she was allegedly treated differently from similarly situated individuals. First, Plaintiff was put on sick leave notification while other, nonHispanic employees were not. See Dkt. No. 9 at 9. Second, Plaintiff alleges that other, nonHispanic coworkers were afforded training opportunities that she was not. See id. at 7. Third, Plaintiff alleges that Defendants limited her overtime in spite of her seniority, while other

nonHispanic employees with less seniority were afforded overtime. See id. at 10.

Defendants failed to provide any explanation for the instances Plaintiff has alleged she was treated differently from similarly situated coworkers. See Dkt. No. 11–13 at 21–22. At this stage in the litigation, Plaintiff's allegations are sufficient to state a plausible equal protection claim. Accordingly, Defendants' motion to dismiss the Section 1983 equal protection claim for failure to state a claim is denied.

### D. Statute of Limitations

#### 1. Title VII Claims

In New York, an employee must file an EEOC charge within 300 days [3] after the alleged unlawful employment action occurred. See 42 U.S.C. § 2000e–5(e)(1). If a plaintiff files an EEOC charge that is timely as to any incident of discrimination, the continuing violations exception treats any related "incident of discrimination in furtherance of an ongoing policy of discrimination" as timely as well, "even if they would be untimely standing alone." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir.1993), abrogated in part on other grounds by Kasten v. Saint–Gobain Performance Plastics Corp., —— U.S. ——, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). The continuing violations exception requires showing "specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests." Id. (internal citations omitted); see also Askew v. New York, No. 1:09–CV–553, 2013 WL 450165, *7 (N.D.N.Y. Feb. 6, 2013) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir.1997)) ("[T]he mere allegation of the existence of such a policy would be sufficient to withstand a challenge for failure to state a claim ...."). The exception does not apply, however, to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." Id.; but see Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (applying the continuing violations doctrine to "serial violations").

Hostile work environment claims are treated with a different approach because "[t]heir very nature involves repeated conduct." Nat'l R.R. Passenger Corp., 536 U.S. at 115, 117 (2002) ("It does not matter, for purposes of [Title VII], that

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 99 of 108

some of the component acts of the hostile work environment fall outside the statutory time period"). Hostile work environment claims are judged by the cumulative affect of individual acts which may not be themselves actionable, but together amount to a one "unlawful employment practice." *See* 42 U.S.C. § 2000e–5(e)(1). To file a timely hostile work environment claim, the plaintiff need only show that one of the contributing acts occurred within the 300 day statutory requirement. *See* Nat'l R.R. Passenger Corp., 536 U.S. at 117.

**\*12** Plaintiff has listed several alleged instances of discriminatory or retaliatory conduct in the workplace starting after Defendant Tupaj assumed a supervisory role in early 2007. *See* Dkt. No. 9 at 5–8; Dkt. No. 11–8 at 3. Plaintiff alleges discriminatory conduct from at least nine named co-workers. *See* Dkt. No. 9 at 5–8. The alleged conduct includes, among others, comments about Plaintiff's national origin; co-workers placing objects near Plaintiff's work station that she considered offensive; requiring Plaintiff to provide extended notice for sick leave; denying Plaintiff from participating in training opportunities; and Defendant Tupaj's refusal to address Plaintiff's seniority after her transfer to Albany. *See id.* Plaintiff alleges that after she was transferred from Ray Brook to Albany, the same type of discriminatory conduct continued to occur because she "had made it known that [this conduct] offended her when she was assigned to Ray Brook." *See* Dkt. No. 9 at 7.

Plaintiff asserts that this conduct was the result of a policy to tolerate, condone, and encourage such conduct established and implemented by Defendants Tupaj and Gerould and that Defendant DEC "fostered the pervasively hostile work environment by failing to take action to remedy the situation and neglecting to provide diversity training." *See* Dkt. No. 9 at 8. This alleged discriminatory policy of the DEC is sufficient to invoke the continuing violations exception at the pleading stage. Plaintiff's transfer from Ray Brook to Albany does not establish a new, distinct continuing violation because the alleged conduct, the supervisors, and the alleged policy of the DEC remained essentially the same at each location. *See* Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994) (finding a continuing violation even after plaintiff's three-year absence because the plaintiff "suffered the same kinds of harassment ... under the aegis of some of the same supervisory personnel").

Based on the foregoing, the Court denies Defendants' motion to dismiss the discriminatory conduct contributing to the alleged Title VII violations occurring before July 22, 2011.

### 2. HRL Claims

New York has adopted the continuing violation doctrine for HRL violations, *see* Fleming v. Verizon N.Y., Inc., 419 F.Supp.2d 455, 465 (S.D.N.Y.2005). Since Plaintiff has alleged a continuing pattern of illegal conduct under the HRL, Defendants' motion to dismiss Plaintiff's HRL claims accruing before October 24, 2009 is denied.

### 3. Equal Protection

In their reply brief, Defendants asserted a statute of limitations defense for Plaintiff's equal protection claim. *See* Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez., 341 Fed. Appx. 722, 724 (2d Cir.2009) ( "A district court enjoys broad discretion [ ] to consider arguments made for the first time in a reply brief"). Section 1983 claims arising in New York are subject to a three-year statute of limitations. *See* Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir.2002); N.Y.C.P.L.R. § 214 (McKinney 2013).

**\*13** While Plaintiff's failure to include dates of events listed in her complaint does not lead to dismissal of her claims at the pleading stage, the previously adjudicated DHR complaints provide a timeline for the conduct. *See* Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir.2007) ("The pleading requirements in the Federal Rules of Civil Procedure ... do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses"). Defendants contend that conduct that was adjudicated in the August 2008 and October 2008 DHR complaints occurred prior to the three year limitation for Section 1983 claims. Although Defendants correctly state that Section 1983 claims in New York are governed by a three-year statute of limitations, Defendants fail to address the continuing violation doctrine.

"Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " Bermudez v. City of N.Y., 783

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 100 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

F.Supp.2d 560, 574 (S.D.N.Y.2011) (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001)). In the present matter, since it is unclear whether the alleged conduct would constitute a continuing violation and because this argument was first raised in Defendants' reply thereby depriving Plaintiff an opportunity to respond to the argument, the Court finds that dismissal on this ground is inappropriate at this time. *See Allen v. Egan,* 303 F.Supp.2d 71, 79 (D.Conn.2004) ("Determining whether the events comprising the basis for [plaintiff's] claim are part of a single, continuing course of conduct is fact-intensive, and therefore inappropriate at this stage of the proceedings. Defendants may, of course, re-assert this defense in a properly supported motion under Rule 56 of the Federal Rules of Civil Procedure"); *Bloom v. N.Y. City Bd. of Educ.,* No. 00 Civ. 2728, 2003 WL 1740528, *10 (S.D.N.Y. Apr. 2, 2003) (denying motion to dismiss as premature where the plaintiff alleged a continuing violation and set forth at least one timely adverse employment action alleged to be discriminatory).

Based on the foregoing, Defendants' motion to dismiss Plaintiff's equal protection claim as untimely is granted in part and the events adjudicated in the two 2008 DHR claims are dismissed with regards to Plaintiff's equal protection claim.

**E. Eleventh Amendment Immunity**

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to both state agencies and officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.

*See, e.g., Daisernia v. State of N.Y.,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (citations omitted). Further, "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) (citations omitted). Although this immunity bars recovery of "retroactive monetary relief" against a state, it does not shield against claims seeking "prospective injunctive relief." *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

*1. Section 1983 Claims*

**\*14** Plaintiff is seeking "all forms of relief recoverable under [Section 1983] including back pay, front pay and compensatory damages." *See* Dkt. No. 9 at 15. Plaintiff has asserted Section 1983 equal protection claims against the DEC and Defendant Martens in his official capacity as head of the DEC. *See id.* at 3. Plaintiff does not indicate whether Defendants Gerould and Tupaj are being sued in their individual or official capacities. *See id* . Defendants ask this Court to infer that Plaintiff's failure to specifically indicate the capacity in which Defendants Gerould and Tupaj are being sued should result in the determination that they are being sued in their official capacities. *See* Dkt. No. 11–13 at 20.

It is well-established that, on a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Scutti Enters., LLC. v. Park Place Entm't Corp.,* 322 F.3d 211, 214 (2d Cir.2003). To the extent that Plaintiff has brought this claim against Defendants Gerould and Tupaj in their official capacities, the claims are dismissed. To the extent that the claims are brought against these Defendants in their individual capacities, however, dismissal is inappropriate at this time. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's official capacity equal protection claims for monetary damages. Further, the Court dismisses Plaintiff's official capacity equal protection claims against Defendants Martens and DEC for monetary damages.

*2. HRL Claims*

"[T]he New York Human Rights Law includes no waiver of the state's [Eleventh Amendment] immunity to suit in federal court." *Lambert v. Office of Mental Health,* No. 97–CV–1347, 2000 WL 574193, *7 (E.D.N.Y. Apr. 24, 2000). Therefore, Defendants' motion to dismiss Plaintiff's HRL discrimination and retaliation claims due to Eleventh Amendment immunity is granted in part and Plaintiff's HRL discrimination and retaliation claims against Defendant DEC and the individual Defendants sued in their official capacities are dismissed. [4]

**F. Personal Involvement**

Defendants argue that Plaintiff failed to allege the personal involvement of Defendants Gerould and Tupaj. *See* Dkt.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 101 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

No. 11–13 at 20. Plaintiff alleges that Defendant Gerould minimized the Affirmative Action Office's finding of hostile work environment by calling it "embellished." *See* Dkt. No. 9 at 6. Plaintiff asserts that Defendant Tupaj minimized the importance of counseling memos issued to other dispatchers in response to the Affirmative Action Office's finding by calling them a "slap on the hand." *See id.* Further, Plaintiff claims that Defendant Tupaj criticized Plaintiff for requesting sick leave in advance and required her to provide doctors notes for sick leave absences, which was not required of other employees. *See id.* at 7. Plaintiff alleges that Defendant Tupaj "refused to address Plaintiff's seniority after her transfer to Albany." *See id.* at 8. Moreover, Plaintiff claims that both Defendants Tupaj and Gerould "fostered the pervasively hostile work environment by engaging in the improper conduct [themselves] and failing to take action to remedy the situation." *See id.* Defendant Fanelli is only named in the caption and nowhere in the body of the complaint. *See id.* at 1. The only mention of Defendant Martens in the complaint is as follows: "Defendant Joe Martens is the Commissioner of the Dept. of Environmental Conservation and is sued in his official capacity as head of the Dept. of Environmental Conservation ." *See id.* at 9.

**\*15** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 🚩 § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted). A defendant in a supervisory position may be found personally involved if:

> The defendant may have directly participated in the infraction, ... after learning of the [alleged constitutional] violation through a report or appeal, may have failed to remedy the wrong, ... [if he] created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, ... [or if he] was grossly negligent in managing subordinates who caused the unlawful condition.

🚩 *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (internal citations omitted). Merely naming a defendant as a party to the action without any further indication of participation in constitutional violations is insufficient pleading for purposes of personal involvement. *See Jaffer v. Chem. Bank,* No. 93 CIV. 8459, 1994 WL 392260, \*3 (S.D.N.Y. July 26, 1994) (citations omitted).

### 1. Equal Protection

Plaintiff claims that both Defendants Tupaj and Gerould —who were in supervisory positions during the relevant time periods—knew of the alleged discriminatory conduct against Plaintiff and that each of them failed to take adequate action to remedy the conduct of Plaintiff's coworkers. *See* Dkt. No. 9 at 6–8. Rather than relying on a "formulaic recitation" of the elements of the claim as Defendants suggest, Plaintiff provided specific factual allegations of instances where the Defendants failed to take adequate remedial measures. *See id.* at 6 (noting the lack of action after the Affirmative Action Bureau's probable cause finding of discriminatory conduct). These factual allegations, coupled with the allegation of condoning and fostering a pervasively discriminatory workplace, sufficiently plead Defendants Tupaj and Gerould's personal involvement. However, since Plaintiff only mentions Defendants Martens and Fanelli in the list of parties and the caption, Defendants' motion to dismiss the 🚩 Section 1983 equal protection claim for lack of personal involvement is granted as to Defendants Martens and Fanelli. *See Jaffer,* 1994 WL 392260, at \*3 (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted") (citations omitted).

### 2. HRL Aid and Abet

While an individual employee is not ordinarily subject to suit under the HRL, "[u]nder the aiding and abetting provision of NYHRL, an individual employee who actually participates in the conduct giving rise to a discrimination claim may be held personally liable." *Miotto v. Yonkers Pub. Sch.,* 534 F.Supp.2d 422, 427 (S.D.N.Y.2008); *see also* 🚩 N.Y. EXEC. LAW § 296(6) (McKinney 2013) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article"). In claims regarding the actions of a supervisor, a plaintiff need not allege that the said supervisor personally carried out the discriminatory conduct. 🚩 *See Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F.Supp.2d 376, 384 (S.D.N.Y.1999). "Rather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL 🚩 § 296(6)." *Id.*

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 102 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

**\*16** As the analysis for personal involvement under HRL § 296(6) is essentially the same as a Section 1983 equal protection claim, the Court finds that Plaintiff has sufficiently pleaded Defendants Gerould and Tupaj's personal involvement. As such, the Court denies Defendants' motion to dismiss Plaintiff's HRL aid and abet claim.

## G. Duplicative Claims

A Section 1983 claim may not "be brought to vindicate rights conferred only by a statute that contains its own enforcement structure, such as Title VII." *Alvarado v. Metro. Transp. Auth.,* No. 07 Civ. 3561, 2012 WL 1132143, *16 (S.D.N.Y. Mar. 30, 2012). Although Title VII claims are not cognizable against individuals, individuals may be held liable under Section 1983 for certain discriminatory acts. *See Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir.2004); *see also Gierlinger v. N.Y. State Police,* 15 F.3d 32, 34 (2d Cir.1994) ("A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct violation of a constitutional right"). Thus, claims against individual defendants, "sued in their individual capacities under § [ ] 1983, are not automatically dismissable." *Id.*

Since Plaintiff has withdrawn her Title VII claims against the individual Defendants, her equal protection claims against Defendants Gerould and Tupaj in their individual capacities are not duplicative of her Title VII claims. *See* Dkt. No. 15–5 at 25 n. 5. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 equal protection claims against Defendants Gerould and Tupaj as duplicative of her Title VII claims is denied.

## H. Election of Remedies

"Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action ... unless such person had filed a complaint hereunder or with any local commission on human rights." N.Y. EXEC. LAW § 297(9) (McKinney 2013). Plaintiff incorrectly argues that the election of remedies doctrine seeks to prevent only identical claims. *See* Dkt. No. 15–5 at 28. To the contrary, "[c]laims need not be identical in order to be barred by the state or city election of remedies provision." *Rosario v. N.Y.C. Dep't of Educ.,* No. 10 Civ. 6160, 2011 WL 1465763, *2 (S.D.N.Y.

Apr. 15, 2011) ("Since the underlying facts of the claim [ ] brought before the NYSDHR are almost identical to those alleged in this case, the plaintiff's state law claims are barred pursuant to NYSHRL § 297(9)").

Plaintiff filed discrimination claims with the DHR on or about August 27, 2008, October 8, 2008, and March 30, 2010. *See* Dkt. Nos. 11–5, 11–6, 11–9. The factual allegations in these claims are set out in Part II(A) of this opinion. *See infra* Part II(A). Since these allegations have been previously adjudicated by the DHR, Defendants' motion to dismiss Plaintiff's HRL claims insofar as they relate to the factual allegations listed in Part II(A) is granted. [5]

## I. Personal Jurisdiction over Defendant Gerould

**\*17** Rule 4 of the Federal Rules of Civil Procedure states that an individual may be served in a judicial district of the United States by "following state law for serving a summons ... in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e). Rule 308 of the New York Civil Practice Law and Rules ("CPLR") states that an individual may be served:

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business....

N.Y. C.P.L.R. § 308(2) (McKinney 2013); *see also* N.Y. C.P.L.R. § 308(6) (" '[A]ctual place of business' shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business"). Additionally, service may be effected by "delivering a copy of the summons and of the complaint to the individual personally." FED. R. CIV. P. 4(e) (2)(A). The purpose of the service requirements is "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank*

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 103 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

*& Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* 🚩 *Durant v. Traditional Invs., Ltd.,* No. 88 CIV. 9048, 1990 WL 33611,*3 (S.D.N.Y. Mar.22, 1990)* ("[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service").

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." 🚩 *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Under 🚩 Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may assert insufficiency of process by motion. "The burden is on the plaintiff to establish that its service was not insufficient. If the court determines that it was insufficient, the court may, but is not required to, dismiss the action. Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Sajimi v. City of New York,* No. 07–CV–3252, 2011 WL 135004, *3 (E.D.N.Y. Jan. 13, 2011)* (internal citations omitted).

In the present matter, summonses were issued by the Court on October 25, 2012. *See* Dkt. No. 3. Further, the record indicates that, on November 16, 2012, Plaintiff attempted to serve Defendant Gerould at the Albany office, and this service was accepted by Jonathan Binder, a senior attorney with Defendant DEC. *See* Dkt. No. 5 at 6. On that same date, Plaintiff served the New York State Attorney General. *See id.* at 1. According to Defendant Gerould's affidavit, however, he was transferred from the Central Office in Albany to the Avon Office in April of 2011. *See* Dkt. No. 11–12 at ¶ 2. As such, Defendant Gerould claims that service was improper because the Albany Office was no longer his "actual place of business." N.Y. C.P.L.R. § 308(2).

 *18 As Defendants correctly point out, the term "actual place of business" has been defined as a place where the defendant is regularly physically present or regularly transacts business. *See Sajimi,* 2011 WL 135004, at *3 (citation omitted). Although Defendant Gerould undoubtedly would have been properly served between May 2007 and April 2011 when he worked for the DEC out of the Albany Office, service was not proper on November 16, 2012— one year and eight months after he had been transferred to the Avon Office. *See Pierce v. Village of Horseheads Police Dept.,* 107 A.D.3d 1354, 1355–56, 970 N.Y.S.2d 95 (3d Dept.2013)* (citations omitted); 🚩 *Lange v. Town*

*of Monroe,* 213 F.Supp.2d 411, 420–21 (S.D.N.Y.2002). As such, Plaintiff failed to properly serve Defendant Gerould and the Court does not have personal jurisdiction over him. Since service was not made within 120 days of filing the complaint, the Court must decide whether to dismiss the complaint against Defendant Gerould or whether Plaintiff should be provided with an extension of time to effect proper service. [6]

Rule 4 provides, in relevant part:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

However, even, as here, "where good cause does not exist, courts remain free to exercise their discretion in extending the time for service." *Feingold v. Hankin,* 269 F.Supp.2d 277 (S.D.N.Y.2003); *see also* 🚩 *Zapata v. City of New York,* 502 F.3d 192, 197 (2d Cir.2007)* ("[A] district court may grant an extension in the absence of good cause, but it is not required to do so" (citation omitted)). In determining whether a discretionary extension is appropriate in the absence of good cause, courts consider the following four factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Beauvoir v. U.S. Secret Service,* 234 F.R.D. 55, 58 (E.D.N.Y.2006)* (citations omitted); *see also Feingold,* 269 F.Supp.2d at 277 (citation omitted). With respect to the first factor, " '[c]ourts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis.' *Id.* (citations omitted). Indeed, this factor alone may be sufficient to justify

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 104 of 108

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

extending the time for service. *See id.* (citation omitted); *see also* Advisory Committee Notes to Fed. R. Civ. Proc. 4(m) ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action ...").

**\*19** In the present matter, the first, second and fourth factors all weigh in favor of granting an extension to serve. First and most important, many of Plaintiff's claims against Defendant Gerould would be time barred because of the applicable statute of limitations. Second, it is apparent that Defendant Gerould had actual notice of the action, which he admits in his affidavit in support of the motion to dismiss. *See* Dkt. No. 11–12 at ¶ 5. The third factor weighs against Plaintiff because Defendant Gerould first raised this issue in the December 28, 2012 motion to dismiss the original complaint. However, the Court also finds that Defendant Gerould would not be prejudiced by an extension of time to serve him and that a fair balance of the four factors favors granting Plaintiff a discretionary extension under Rule 4(m). As such, Plaintiff will be given thirty days in which to effect service upon Defendant Gerould and Defendants' motion to dismiss on this ground is denied. If Plaintiff fails to effect service within thirty days of the filing date of this Memorandum–Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.

## J. Supplemental Jurisdiction

Defendants assert that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state HRL claims because all federal claims should be dismissed. *See* Dkt. No. 11–13 at 22. Since not all of Plaintiff's federal claims have been dismissed, Defendants' motion for this Court to decline supplemental jurisdiction is denied.

## K. Leave to Re-plead

Rule 15 of the Federal Rules of Civil Procedure states that a court should freely grant leave to re-plead "when justice so requires." FED. R. CIV. P. 15(2). It is "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.' " *Harrison v. Enventure Capital Group, Inc.,* 666 F.Supp. 473, 479 (W.D.N.Y.1987) (quoting *Nagler v. Admiral Corporation,* 248 F.2d 319, 322 (2d Cir.1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.,* 924 F.2d 472, 477 (2d Cir.1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so.

*See O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir.2002) (citing *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995)).

The amended complaint before the Court is Plaintiff's second pleading. *See* Dkt. No. 9. As discussed, the majority of claims dismissed were on substantive grounds and not due to inadequate pleading. First, Plaintiff voluntarily withdrew her Title VII claims against the individual Defendants. *See* Dkt. No. 15–5 at 25 n. 5. Second, Plaintiff's equal protection claim for events previously adjudicated in two 2008 DHR claims are dismissed for reasons of statutory limitations. Third, several of Plaintiff's claims against Defendants in their official capacities are precluded by the Eleventh Amendment. Fourth, portions of Plaintiff's HRL claims are dismissed based on the election of remedies doctrine, not due to insufficient pleading. As to Plaintiff's failure to plausibly allege Defendants Martens and Fanelli's personal involvement, Plaintiff has failed to provide the Court with any reasons to grant leave to re-plead. Moreover, Defendants would be prejudiced due to the length of time this action has already been pending and this issue was brought to Plaintiff's attention in Defendants' motion to dismiss the original complaint. Although Plaintiff filed an amended complaint in response to the motion, she failed to remedy this defect despite being placed on notice through Defendants' motion.

**\*20** Based on the foregoing, the Court denies Plaintiff's request for leave to re-plead.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint is **GRANTED in part** and **DENIED** in part in accordance with this Memorandum–Decision and Order; [7] and the Court further

**ORDERS** that Plaintiff's request for leave to re-plead is **DENIED;** and the Court further

**ORDERS** that Plaintiff shall have **THIRTY (30) DAYS** from the filing date of this Memorandum–Decision and Order to

Serrano v. New York State Dept. of Environmental Conservation, Not Reported in...

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 105 of 108

effect service on Defendant Gerould and file proof of such service with the Court; and the Court further

**ORDERS** that, if Plaintiff fails to effect service on Defendant Gerould within **THIRTY (30) DAYS** of the filing date of this Memorandum–Decision and Order, Defendant Gerould will be dismissed from this action, without further order of the Court.

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6816787

## Footnotes

1    Although the EEOC charge states that the discrimination took place on March 16, 2012, this is apparently an error and the parties have treated the EEOC charge as filed on or about this date since no other indication of a date is included on the charge.

2    In March 2008, Plaintiff filed a discrimination charge with the DEC's Affirmative Action Office. In October 2008, Plaintiff filed hostile work environment and retaliation claims with DHR. On March 30, 2010, Plaintiff filed discrimination and retaliation charges with DHR. On May 18, 2012, Plaintiff filed a discrimination charge with the EEOC. On January 4, 2013, Plaintiff filed a hostile work environment and discrimination complaint with DEC's Affirmative Action Office.

3    The EEOC charge does not have a date on it and the parties have indicated that it was issued either on or around May 18, 2012 or sometime before May 2, 2012. Defendants argue that July 22, 2011 is the cutoff date for the statute of limitations. *See* Dkt. No. 11–13 at 18.

4    Plaintiff's HRL aid and abet claims against Defendants Tupaj and Gerould in their individual capacities are not dismissed on this ground.

5    This dismissal is only applicable to the HRL claims and does not have any impact on Plaintiff's Title VII or equal protection claims.

6    The Court notes that on May 28, 2013, Plaintiff apparently served Defendant Gerould with a summons and the amended complaint. *See* Dkt. No. 15–4. As Defendant correctly points out, this service was not effected within 120 days of filing the complaint. Rule 4(m) and the relevant case law, however, clearly articulate that the availability of a plaintiff to serve the complaint beyond the 120 day limit is a privilege that must be granted by the Court. *See* *Efaw v. Williams,* 473 F.3d 1038, 1041 (9th Cir.2007). As such, without first obtaining permission from the Court, Plaintiff's attempted service of the complaint on Defendant Gerould on May 28, 2013 was improper.

7    Plaintiff's remaining claims are Title VII retaliation, hostile work environment, and disparate treatment against Defendants Martens and DEC; Section 1983 equal protection claims against Defendants Gerould and Tupaj, individually; and HRL § 296(6) aid and abet claims against Defendants Gerould and Tupaj relating to events not mentioned in the 2008 DHR complaints.

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 106 of 108

Jaffer v. Chemical Bank, Not Reported in F.Supp. (1994)

1994 WL 392260
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Shahsultan JAFFER, Plaintiff,

v.

CHEMICAL BANK, Stephen Donnelly, Hatter,
Donovan & McFaul; Margaret Taylor, individually
and as Judge of the Civil Court of the City of New
York, Small Claims Part, Administrative Office of
the Courts, City of New York, State of New York,
and "John & Jane Does" 1 Through 99, Defendants.

No. 93 CIV. 8459 (KTD).
|
July 26, 1994.

**Attorneys and Law Firms**

Shahsultan Jaffer, pro se.

Barry, McTiernan & Moore, New York City by Suzanne M. Halbardier, for Chemical Bank, Stephen Donnelly, and Hatter, Donovan & McFaul.

Paul A. Crotty, Corp. Counsel of the City of New York, New York City by Bonnie Mussman, Susan Hartzell, for defendant City of New York.

G. Oliver Koppell, Atty. Gen. of the State of New York, New York City by Carolyn Cairns Olson, for New York State and Judge Margaret Taylor.

*MEMORANDUM & ORDER*

KEVIN THOMAS DUFFY, District Judge:

**\*1**  Pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, plaintiff Jaffer ("Jaffer") claims that the defendants have deprived her of constitutional rights, in particular, access to the courts, the freedom to contract, due process and equal protection. Defendants Chemical Bank ("Chemical"), Stephen Donnelly ("Donnelly"), Hatter, Donovan & McFaul ("the Hatter firm") move to dismiss plaintiff Jaffer's complaint ("Jaffer") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1), 12(b)(6) and

12(c) of the Federal Rules of Civil Procedure. Defendant, the City of New York ("City"), moves to dismiss Jaffer's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants the Honorable Margaret Taylor, ("Judge Taylor"), the New York State Office of Court Administration ("OCA") and the State of New York, ("the State") move to dismiss Jaffer's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motions are granted.

*Facts*

Jaffer purchased a study course entitled "How to Buy a Dollar for Forty–One Cents" for $535.84 at a seminar in February, 1992. Jaffer charged this purchase to her Chemical Master Card. Apparently, the study course was missing two items. Jaffer notified Mr. Art Bob Carmano of this by letter and requested a full refund. Jaffer then wrote to Chemical Bank to credit her account for the full amount of the study course. Chemical did so conditionally, and requested that Jaffer supply Chemical with a copy of the purchase contract and the applicable law stating that anything bought at a seminar can be cancelled within five days. On May 2, 1992, Jaffer outlined what she believed was the applicable law, but was unable to supply a copy of the contract.

The seller of the study course, NuTech Enterprises, Inc., ("NuTech") was willing to refund the cost of the course if the course items received by Jaffer were returned to NuTech. According to NuTech, however, the merchandise was never returned and, consequently, Jaffer's Master Card account was re-debited.

Plaintiff Jaffer then brought suit against Chemical in Small Claims Court, New York County. Stephen Donnelly, of the firm Hatter, Donovan & McFaul represented Chemical at a hearing held before Judge Margaret Taylor on August 4, 1993. After hearing witnesses from both sides and reviewing submitted documents, Judge Taylor ruled in favor of Chemical Bank. On August 10, 1993 Jaffer filed a Notice of Motion to Vacate the Judgment and for the Recusal of Judge Taylor. Jaffer submitted a supporting affidavit alleging fraud, illegality, and attorney and/or Court misconduct. Judge

Case 1:22-cv-01372-GTS-ML    Document 4    Filed 03/28/23    Page 107 of 108

Jaffer v. Chemical Bank, Not Reported in F.Supp. (1994)

Taylor denied Jaffer's motion to vacate on September 20, 1993. Subsequently, Jaffer filed a Notice of Findings of Fact and Conclusions of Law which was opposed by Chemical Bank. On October 19, 1993, Judge Taylor ruled that such findings of fact were unnecessary.

**\*2** Instead of appealing her case within the State's judicial system, Jaffer instituted this action in the Southern District of New York alleging civil rights violations pursuant to 42 U.S.C. §§ 1983, 1983, 1985, 1986 and 1988 and the Constitution and laws of the United States in December, 1993. Specifically, Jaffer alleges six causes of action, namely: (1) Constitutional and Civil Rights violations; (2) State Action; (3) Bad Faith and Tort Abuse of Process; (4) Fraud, Deceit and Bad Faith; (5) Intentional Infliction of Emotional Distress; and, (6) Breach of Fiduciary Duty.

### Discussion

This court has no subject matter jurisdiction in this instance. The jurisdiction possessed by this court is strictly limited. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923). As such, the district courts have no power to review state court proceedings. The only permissible review is by the superior state court and or the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, (1983). In this instance, Jaffer was dissatisfied with Judge Taylor's decision on the merits of her case. In response to this adverse ruling, Jaffer sued not only Chemical Bank, but Chemical's lawyer Donnelly and his law firm, the Hatter firm, Judge Taylor and the City and the State and its agency the OCA in the Southern District of New York. [1]

Jaffer's claims against the New York State also must fail on an additional jurisdictional ground. The Eleventh Amendment bars federal courts from adjudicating § 1983 suits for legal or equitable relief brought by citizens against unconsenting states and agencies of such states. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974). The State has not consented to this suit. *See Dube v. State University of New York,* 900 F.2d 587, 594 (2d Cir.1990), *cert. denied,* 501 U.S. 1211 (1991); *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir.1977). Thus,

plaintiff's claims against the State, and the OCA are barred on this ground as well. Furthermore, as Jaffer seeks money damages against Judge Taylor in her official capacity, the State itself, in particular its Treasury, is the real party in interest. *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464 (1945). Thus, the suit against Judge Taylor is, in essence, a suit against the State, and again, cannot be maintained. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989).

Although Jaffer's claims clearly fail in this court on jurisdictional grounds, they also fail on a number of other grounds as well. First, any allegation against Judge Taylor must fail as judges are immune for acts performed in their judicial capacity. *Mireles v. Waco,* 112 S.Ct. 286, 288 (1991). *See also Stump v. Sparkman,* 435 U.S. 349, 356 (1978). Here, Jaffer claims that Judge Taylor's adjudication of her case was unconstitutional. Indeed, "few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as the Supreme Court recognized when it adopted the doctrine in *Bradley v. Fisher,* 13 Wall. 335 (1872)." *Pierson v. Ray,* 386 U.S. 547, 553–54 (1967). Accordingly, Jaffer's claims against Judge Taylor would necessarily fail even if this court did have subject matter jurisdiction.

**\*3** Second, Jaffer also fails to state a valid cause of action against the City of New York. While *pro se* complaints are generally construed liberally for the purpose of Rule 12(b) (6) motions, *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Elliot v. Bronson,* 872 F.2d 20, 21 (2d Cir.1989), civil rights claims that are conclusory and factually unsupported may be dismissed. *See Thomas v. Beth Israel Hosp.,* 710 F.Supp. 935, 942 (S.D.N.Y.1989). Indeed, the City is only referred to once, and peripherally, in Jaffer's complaint and no allegation is made against it. When a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted. *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981); *Rodriguez v. Chandler,* 641 F.Supp. 1292, 1294, n. 1 (S.D.N.Y.1986), *aff'd,* 841 F.2d 1117 (2d Cir.1988).

**Jaffer v. Chemical Bank, Not Reported in F.Supp. (1994)**

Case 1:22-cv-01372-GTS-ML   Document 4   Filed 03/28/23   Page 108 of 108

Third, even given the most liberal interpretation, Jaffer does not allege the existence of any policy or custom giving rise to a deprivation by the City of New York. Absent such an official policy or custom, a municipality or municipal corporation may not be held liable under 42 U.S.C. § 1983. *Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). Thus, on these grounds as well, Jaffer's claims against the City must be dismissed.

Fourth, with regard to the private parties named as defendants in this action, the Complaint fails to support any allegation that these defendants acted under the color of state law to deprive Jaffer of her federal rights as required by 42 U.S.C. § 1983. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). Chemical, Donnelly and the Hatter firm are participants in a private state court litigation. They are not working on behalf of the State or under color of State law and, consequently, are not subject to this suit for this reason as well as for the reasons discussed above.

For the foregoing reasons, the defendants' motion to dismiss Jaffer's complaint is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1994 WL 392260

---

### Footnotes

1    While this complaint cannot survive defendants' Rule 12(b)(6), I believe it may be useful to discuss the other grounds upon which this action would falter. Jaffer is a *pro se* plaintiff who has brought at least one similar suit in this district. *See Jaffer v. Stone, et al.,* S.D.N.Y. 93 Civ 1865 (Patterson, J.) (Opinion and Order dated April 7, 1993). Hopefully, a somewhat detailed discussion of the legal issues presented may aid Jaffer in weighing the merits of bringing such suits in the future.

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.